IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN<br><br>    Plaintiff,<br><br>vs.<br><br>ADAM SHARP, TERRANCE O'REILLY,<br>MARGARET ESQUENET, NATIONAL ACADEMY<br>OF TELEVISION ARTS AND SCIENCES, ACADEMY<br>OF TELEVISION ARTS AND SCIENCES<br><br>    Defendants | Case No.:<br><br><br>**COMPLAINT FOR ABUSE OF PROCESS<br>AND MISCONDUCT BY ATTORNEYS**<br><br>**JURY TRIAL DEMANDED** |

   Pro Se non-attorney Jason Goodman ("Goodman") alleges as follows, upon actual knowledge with respect to himself and his own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. This civil action is for abuse of process and misconduct by attorneys pursuant to 22 U.S. Code § 7102 and New York Judiciary Law - JUD § 487.

2. Defendants acted outside the scope of their legal authority and in violation of their respective fiduciary and other legal and ethical obligations.  Defendants acted maliciously and with wrongful intent in a manner and for a purpose for which the law was not designed, in order to exert pressure on Plaintiff and cause him to refrain from broadcasting during the 2020 U.S. Presidential election.

3. Defendants continue to abuse the law and conduct themselves in a manner and for a purpose for which the law was not designed, to exert pressure on Plaintiff by

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 1

disrupting his business operations and to coerce him into discontinuing broadcasts of news, information, opinion, parody, and other first amendment protected activity.

## PARTIES

4.  Plaintiff – Pro se Plaintiff Jason Goodman is a New York citizen, owner, sole stockholder and singular employee of Multimedia System Design, Inc ("MSD") with its primary place of business at 252 7th Avenue Apartment No. 6S, New York, NY 10001.  Goodman is the creator of the social media property Crowdsource the Truth and producer and host of talk show video content broadcast on the internet. Goodman is the sole owner of all Crowdsource the Truth branded intellectual property ("IP") and does not have a "work for hire" or any other IP sharing contract with MSD or any other party.

5.  Defendant – Adam Sharp is a Connecticut citizen, President and CEO of The National Academy of Television Arts and Sciences ("NATAS") a 501(c)(6) tax-exempt business association, and owner and CEO of Sharp Things, LLC a privately owned for profit political, social media strategic consulting company having its primary place of business in Stamford, CT.

6.  Defendant Terry O'Reilly is a Pennsylvania citizen and Chairman of the Board of trustees of NATAS a 501(c)(6) tax-exempt business association and the President and CEO of Pittsburgh Community Broadcasting Corporation, an independent, locally owned, and community-supported public media organization.

7.  Defendant – The National Academy of Television Arts and Sciences, Inc., is a New York 501(c)(6) not-for-profit corporation with its principal place of business at 450 Park Avenue South, Third Floor, New York, New York 10016.

8. Defendant – Academy of Television Arts & Sciences, is a California not-for-profit corporation with its principal place of business at 5220 Lankershim Boulevard, North Hollywood, California 91601.

9. Defendant – Margaret Esquenet ("Esquenet") is a Maryland citizen and an Attorney with FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP ("Finnegan") having its primary place of business at 901 New York Avenue NW Washington, DC 20001.  Esquenet represents Defendants in THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES, v MULTIMEDIA SYSTEM DESIGN, INC. Case 1:20-cv-07269 ("NATAS v MSD")

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 22 U.S. Code § 7102 and New York Judiciary Law - JUD § 487.

11. This Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of New York pursuant to 22 U.S. Code § 7102 and New York Judiciary Law - JUD § 487 because Plaintiff is being harmed in this District; Defendants are domiciled in this District; Defendant's agent can be found in this District; Defendant is conducting business in this District; and Defendant is violating the Plaintiff's rights in this District.

## LEGAL RESPONSIBILITIES OF NONPROFIT BOARDS OF DIRECTORS

12. New York case law precedent has made the responsibilities of being on a nonprofit board essentially the same as being on a corporate board of directors with some

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 3

important differentiating factors. These areas of legal responsibility govern the actions of nonprofit board members.

(1) Duty of Care

Board directors, trustees and executives are obliged to give the same care and concern to their board responsibilities as any reasonable ordinary person would. Board members legal obligations to the entity include monitoring the nonprofit's activities and actively working with other trustees to adhere only to the organization's authorized tax-exempt purpose.  Board directors should be able to read and understand financial reports and be willing to question expenditures particularly in cases where there is reasonable suspicion of prohibited activity.

(2) Duty of Loyalty

Board directors, trustees and executives must always place financial and other interests of the non-profit entity ahead of their own.  All board members, trustees, and executives are required to publicly disclose any conflicts of interests or potential conflicts such as activities in the private for-profit sector.  Board members, trustees and executives must not use their positions with the tax-exempt entity as a means for personal or commercial gain.

(3) Duty of Obedience

Board directors, trustees, and executives must ensure that the nonprofit is abiding by all applicable laws and regulations and doesn't engage in illegal or unauthorized prohibited activities. The organization must carry out its mission in accordance with the authorized organizational purpose ratified in the articles of incorporation for which the entity is granted nonprofit status.

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 4

13. Unlike their counterparts in for profit corporations, board members, trustees, executives, employees, or any other agents of tax-exempt corporations are legally bound to act only in furtherance of the authorized organizational purpose for which the entity has been granted tax exempt status.  Activities that do not support the authorized organizational purpose are considered prohibited activities and no board member or any other agent may engage in any such activity in the name of the non-profit pursuant to IRC 501(c)(6) under any circumstance.

14. Additionally, a strict inurement prohibition prevents a tax-exempt organization, its board members, trustees, executives, employees, or agents from using income or assets of the entity to excessively benefit an individual that has a close relationship with the tax-exempt organization or can exercise significant influence over it. Inurement is not limited to pecuniary benefits but rather any tangible benefit whatsoever including personal, political, or any other benefit.

## DEFENDANTS AND THEIR WRONGFUL ACTS

15. Defendant Sharp is the President and CEO of NATAS and simultaneously acts as Director, Chief Executive and Agent of Record for Sharp Things, LLC a privately-owned for-profit Connecticut Limited Liability Corporation.

16. Sharp has failed to disclose his personal ownership of, or income from Sharp Things, LLC in NATAS public filings.

17. Defendant Sharp wrongfully used his role as CEO of the non-profit in furtherance of his own personal political goals and those of his private, for-profit business.  Sharp did so knowingly and in violation of IRS Code and applicable state and Federal laws.

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 5

18. Sharp became CEO of NATAS in May of 2018.  At the time of this writing, no NATAS public 990 filings have been made for 2019 or 2020.

19. Prior to becoming President and CEO of NATAS, Sharp was employed at Twitter, initially as Head of Government and non-profits.  Later Sharp's job description changed to Head of News Government and Elections.  By any measure, Sharp presents himself as an expert in these fields and should be extremely familiar with the legal and ethical requirements of an executive in his position.

20. On January 29, 2011, The New York Times said Sharp was "the human embodiment of Twitter" (https://www.nytimes.com/2011/01/30/us/politics/30twitter.html)

21. On September 30, 2011, a New York magazine article reported on Sharp's direct negotiation with Barack Obama's closest advisors in organizing the historic first "Twitter Town Hall" in which the President of the United States publicly communicated via the nascent digital platform for the first time ever. (https://nymag.com/news/media/twitter-2011-10/)

22. Twitter stock began publicly trading later in 2013.  The initial public offering made many Twitter executives, which Sharp was at the time, exceedingly wealthy, despite the company's inability to operate profitably until two years after Sharp's departure. https://www.cnn.com/2019/02/07/tech/twitter-earnings-q4/index.html

23. A photograph on the front page of Sharp Things, LLC's website www.sharpthings.io shows Defendant Sharp in direct personal communication with Barack Obama, advertising Sharp's unusually close relationship with the former President.

24. In October 2020, shortly after Sharp's malicious YouTube complaint against the Jason Goodman YouTube channel, Twitter suspended The New York Post's Twitter

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 6

account ("@NYPOST") in direct response to the Newspaper's publication of contents from a laptop attributed to Hunter Biden, the cocaine addicted son of then candidate Joe Biden.  The information on the laptop has subsequently been corroborated by firsthand testimony from decorated U.S. Navy officer Anthony Bobulinski.  Despite the newsworthiness and veracity of this information, Twitter acted in furtherance of its own political interest, just as Sharp has, to block unfavorable but true information and to suppress protected first amendment activities by perceived political opponents.

25. On January 8, 2021, amid controversial claims of election tampering, including allegations citing Twitter's suppression of Biden's laptop, Twitter permanently suspended the account of then U.S. President Donald Trump ("@realDonaldTrump"). Throughout its history, Twitter has engaged in numerous overt demonstrations of a corporate culture willing to bend or even break laws and ethical norms to suppress political opposition.  Sharp played a key role in forming that corporate culture in his six years at Twitter during its formative days.

26. During congressional testimony in or around November 2020, former Twitter CEO Jack Dorsey called the removal of @NYPOST a "total mistake" affirming the legitimacy of claims made by the newspaper and his own company's illegitimate removal of the content.  Dorsey fell short of attributing the mistake to any specific individual or ascribing a motive to the action.

27. As the keynote speaker at Millennium Alliance's 2017 Digital Marketing Transformation Assembly, Sharp made the public declaration that his professional background is as a "Political Operative" among other things.  (https://youtu.be/yB-

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 7

IvtJ56NE). In NATAS v MSD Defendant characterizes this claim as a false statement made by Plaintiff and wrongfully seeks redress on the false basis that it is defamatory.

28. On or around August 2020, Adam Sharp acting on his own accord without consent or knowledge of the NATAS Board or consideration of fair use pursuant to the Digital Millennium Copyright Act ("DMCA"), and in direct contravention of his legal obligations as CEO of the non-profit entity, filed a complaint with YouTube alleging a video created by Plaintiff infringed on NATAS copyright and diluted its trademark by displaying a substantially modified parody image of an EMMY Award.

29. Irrespective of the merits of the claim, Sharp was aware he selected the most aggressive approach available and would be damaging the Plaintiff, causing him to lose access to YouTube live broadcasting and disrupting his ability to conduct normal business.  Sharp's claim should have been given extraordinarily careful consideration because it would damage a company operating in the very business space that Defendant's tax-exempt entity is organized to protect and encourage.

30. It is not disputed that Sharp is an industry leading expert in the field of social media. Outside his role as NATAS CEO and owner of Sharp Things, LLC, in his capacity as a private individual Sharp operates a YouTube channel called the Roger Sharp Archive https://www.rogersharparchive.com/.  The site features sixty-seven videos that chronicle the broadcasting career of Sharp's deceased father, EMMY Award winning newsman Roger Sharp.  Sharp does not own the copyrights to any of this material but alleges fair use reproduction in a disclaimer published on the site.

*"Description – A non-commercial archive of work by late ABC and CBS television newsman Roger Sharp (1935-1986), compiled and maintained by his son Adam.  All*

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 8

*broadcast clips are the intellectual property of their respective networks and/or stations and are believed to be used here under the fair use and library/archive exceptions to U.S. copyright law.  If you are the proper copyright holder of any of these works and object to my use of them, please contact me."*

(https://www.youtube.com/user/rogersharparchive/about)

31. The disclaimer on The Roger Sharp Archive demonstrates that Sharp has a clear understanding of copyright law as it pertains to the use of visual media and potential consequences of posting protected material on social media platforms.  Notably, Sharp also requests the courtesy of contact prior to any legal action should a dispute arise.  Sharp specifically and maliciously denies Plaintiff that very same courtesy.

**32.** Sharp was aware his complaint to YouTube alleging copyright infringement would disable Plaintiff's ability to broadcast and would have an immediate negative impact on Plaintiff's normal business operations.  Sharp would have known that the initial complaint disabled Plaintiff's ability to broadcast on YouTube from August through November, up to and including the 2020 Presidential election.

33. Sharp deliberately penalized Plaintiff because Plaintiff is a popular conservative social media influencer.  Like his comrades at Twitter, Sharp was willing to engage in unethical and even illegal action to stop perceived political opponents from broadcasting during the period leading up to the 2020 Presidential election.

34. After Plaintiff submitted an appropriate appeal to YouTube, counterclaiming parody fair use, negotiations between Plaintiff and Defendant Margaret Esquenet began.

35. In an initial phone call, prior to any legal action, Plaintiff offered to voluntarily remove all occurrences of the alleged infringement if the Defendants would withdraw

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 9

their malicious and unnecessary YouTube complaint.  Irrespective of the merits of the complaint, it was damaging Plaintiff's regular business operations and its withdrawal was a mandatory prerequisite to any equitable and timely settlement of the dispute over the contested parody image.  Esquenet refused immediately without consulting Sharp or the NATAS board, demanding Plaintiff first withdraw the counterclaim. This illogical demand would have caused Plaintiff to permanently abandon his rights to any counterclaim and would leave his YouTube channel inactive until the period after the 2020 election.  Conversely, if Defendant withdrew their initial complaint as requested, they would not have forfeited any rights.  Defendant could have submitted a new complaint if Plaintiff failed to perform as promised and Defendant still retained the right to sue, something they quixotically chose to do without exploring the zero-cost solution.  No good faith effort was made by Defendant to entertain Plaintiff's good faith offer.  Moreover, Defendant has repeatedly deceived the court claiming they had no choice but to sue which is untrue, incorrect and indefensible.

36. On or around August 23, 2021, Plaintiff inadvertently included Ms. Esquenet and numerous other individuals on an email response intended only for Goodman's friend non-party Larry Klayman ("Klayman"). The message included an email address Defendant alleges violated a stipulated order of protection.  On or around August 24, 2021, Defendant sent a letter to the court (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 108) falsely claiming Plaintiff had violated the stipulated order of protection and provoking a show cause hearing which threatened money sanctions against Goodman (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 112).

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 10

37. At the abusive show cause hearing on October 25, 2021, the unrepresented Plaintiff was questioned by Esquenet.  Simultaneously, Judge Valerie Caproni berated and demeaned the Plaintiff in part by expressing her extrajudicial bias that he was "like Qanon" as she accused him of lying under oath, claiming his testimony did not "square" with his actions.  Although Plaintiff Goodman testified truthfully and to his best recollection, upon further consideration, he now recalls details with better clarity.

38. During a public Zoom teleconference with Judge Caproni on or around May 10, 2021, the order of protection was initially violated by Ms. Esquenet's colleague Samuel Eichner ("Eichner").  Eichner violated the order, stating in the public hearing, *"Your Honor, it was an e-mail working**[REDACTED]**@gmail.com. That is the e-mail address of the person who notified the television academies of the image."* (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 69 page 42 line 22).

39. The transcript reveals what Plaintiff could not specifically recall during a tense cross examination.  Mr. Eichner's comments placed the email address in the public domain for months before Goodman sent the email to Klayman.  Defendant made no effort whatsoever to have it redacted from the transcript, but instead made an overt and deceptive effort to ensnare the unrepresented Plaintiff in a damaging procedural trap.

40. Ms. Esquenet had a fiduciary and ethical obligation to be accountable for her own team's irresponsible failures.  Instead, she relied on false claims to blame Goodman, increasing these proceedings with a vexatious show cause hearing that inflated her client's costs and wasted judicial resources.  On information and belief, Plaintiff alleges this was another deliberate deception intended to penalize Plaintiff financially and further unfairly damage his ability to retain legal representation.

41. Defendants will fail to demonstrate that the voluntary choice to proactively sue Plaintiff was in the financial best interest of the tax-exempt organization.  Defendants have no evidence that any trustee or executive even considered the best interest of the tax-exempt entity before proceeding with the suit.

42. Financing of this legal action is outside the purview of the tax-exempt entity's authorized organizational purpose.  Defendants will fail to demonstrate that the unnecessary lawsuit is not a prohibited activity.  These allegations should be referred to the IRS for immediate investigation including revocation of the tax-exempt status of the entity and criminal prosecution of any individual party to the violation.

43. Sharp's abuse of process was not intended to cure the alleged injury of copyright infringement, but rather was initiated in violation of 22 U.S. Code § 7102(1) and (3)(C) to coerce Plaintiff by forcing him to refrain from broadcasting on YouTube during the 2020 Presidential election and financially damage his business.

44. As an attorney and counsel to Defendants, Esquenet had a fiduciary and ethical obligation to inform her clients of the laws that govern their ability to sue.  Pursuant to Fed. R. Civ. P. Rule 17(b)(2) a corporation may only sue in accordance with "the law under which it was organized".  The Defendant's tax-exempt corporation is organized pursuant to IRC 501(c)(6) and as such, is prohibited from engaging in activity that does not "advance the arts and sciences of television, and [to] foster creative leadership in the television industry for artistic, cultural, educational, and technological progress" as ratified in Defendant's articles of incorporation.  Defendant will fail to demonstrate that the lawsuit could advance the television industry in any way.  In fact, it contradicts the tax-exempt entity's authorized

purpose.  The mere threat of legal action chills first amendment activity and hurts the artistic and cultural development of parody as a form of expression in television by creating the impression that endeavors in that area put the creator at risk.

45. Defendant Terry O'Reilly as chairman of the board of directors has also failed to uphold his fiduciary and other legal obligations by failing to shield the tax-exempt entity from the personally motivated, prohibited activities of CEO Sharp.  Irrespective of O'Reilly's knowledge of these facts at the outset, upon learning of Sharp's misdeeds, O'Reilly has failed to rectify these defects by terminating NATAS v MSD and instead has joined Sharp and Esquenet in perpetuating this abuse of process.

## INJURY TO THE PUBLIC AND PLAINTIFF

46. Defendant's decision to complain to YouTube and then to sue rather than seek rapid, no cost settlement, harms taxpayers whose funds subsidize the activities of the Defendants.  The decision to proactively sue Plaintiff when a clear path to a zero-cost solution was available constitutes prohibited activity and is a violation of IRS code.

47. The mere threat of a lawsuit such as NATAS v MSD damages the public's ability to engage in free, first amendment protected discourse including the use of parody.  By sending a public signal that the Defendants will challenge and financially punish attempts at parody it finds unfavorable, Defendants have violated their mandate of promoting development and leadership in the broadcast television industry, countermanding the essential purpose for which they are granted tax-exempt status. Lawsuits of this nature have a chilling effect on public discourse, discouraging others from freely exercising their first amendment rights and discouraging leadership. Because Plaintiff uses video broadcasting as the medium to exercise his First

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 13

Amendment rights, Defendant had a special obligation to handle this matter in a way that would not damage the television or broadcast industry and would allow them to act in accordance with their authorized organizational tax-exempt purpose.

48. Defendant Sharp is a social media and political expert who knew his actions would damage Plaintiff's ability to broadcast during the 2020 presidential election.

49. Sharp's personal political disposition favored President Joe Biden.

50. Sharp and his past associates have a public track record of acting out against their perceived political enemies.

51. Sharp wrongfully used his position of power as the CEO of NATAS to harm Plaintiff's ability to participate in public discourse pertaining to the 2020 election and harmed the public by denying them access to Plaintiff's broadcasts.

52. In violation of IRC 501(c)(6) Defendants used tax-exempt funds to pay legal fees and other expenses related to a lawsuit intended to further Sharp's own personal political interests and benefit his private, for-profit company, Sharp Things, LLC.

53. In violation of New York Judiciary Law - JUD § 487, Margaret Esquenet deceived the court in the course of litigation, during NATAS v MSD falsely stating that Sharp was no longer a political operative and his private, for-profit company Sharp Things, LLC was no longer active.  Documentation on file with the Connecticut Secretary of State proves this statement to be false.  **(EXHIBIT A)**

54. When officers of the court engage in deceit it has the effect of undermining public confidence in the legal system and is inherently damaging to the service of justice.  In this case, it also violates JUD § 487 which makes it a misdemeanor for attorneys to engage in such deception.

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 14

55. Margaret Esquenet additionally deceived the court claiming Plaintiff accused the deceased father of Defendant Sharp of being involved in CIA mind control experiments involving drugs and torture.  No such statement whatsoever was made by Plaintiff.  This purely fabricated deception was an underhanded and deliberate attempt by Esquenet to smear Plaintiff and cause the court and the public to believe he was associated with loathsome and dangerous "conspiracy theories".

56. Margaret Esquenet further deceived the court when she claimed Plaintiff violated a stipulated order of protection when it was her own associate who violated the order.

57. Defendant's actions have directly damaged Plaintiff in numerous ways.  Plaintiff's ability to broadcast on YouTube correlates to his ability to earn income.  Defendant's successful efforts to terminate Plaintiff's broadcasts correspond to a steady decline in Plaintiff's income since the initiating event.

58. Plaintiff has incurred substantial legal fees because of Defendant's abuse of process.  Defendant maliciously sued, not to cure the alleged injury, but rather to coerce Plaintiff into hiring a lawyer and expending financial resources on the defense.

59. Despite taking initial action against the "Jason Goodman" YouTube channel, owned by the natural person who is Plaintiff in this matter, Defendant chose to sue Plaintiff's corporation.  Plaintiff alleges this was done to force him to hire an attorney and punish him financially.  The alleged infringement pertains to intellectual property that is solely owned by Plaintiff, and no other entity.  Defendant did not have standing to sue MSD but chose to do so anyway to avoid a pro se defense, and to deliberately cause financial harm through forced legal fees.

**FIRST CLAIM FOR RELIEF**

Dismissal of NATAS v MSD pursuant to 22 U.S. Code § 7102

60.     Plaintiff repeats and realleges every allegation set forth above

61.     The alleged infringement was in fact a parody and should be considered a "derivative work" as defined in Chapter 1 subsection 101 of the US Copyright Act. The alterations to the original mark are substantial and transformative and ascribe new meaning to the derivative work. The changes themselves were described as "gross" even in the initial email communication that identified the disputed parody.

62.     Merriam-Webster's dictionary defines the word gross as "glaringly noticeable" and "immediately obvious" among other things. There is clear evidence that a reasonable person could not mistake the derivative work for the original mark due to the substantial and transformative alterations made by Plaintiff as a part of Plaintiff's first amendment protected commentary and criticism of television award shows, recipients of the awards and those who bestow them upon undeserving recipients. The image is a parody and is clearly recognized by members of the public as such. The parody image is unmistakably and immediately understood to be substantially different than the copyright protected trademark held by Defendants. Plaintiff did not need authorization to use the image and Defendant acted maliciously in suing under the false pretense of protecting a trademark.

63.     Plaintiff created the parody image as part of his critical commentary on the state of corporate owned news media and its role in disseminating information about Covid-19 and other topics of public interest. Defendant's role in promoting and supporting these corporate entities and awarding them and their employees makes them a valid target for criticism, commentary, and even ridicule or parody, no matter how odious the

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 16

commentary may be.  It need not matter if the commentary is overtly spoken or subtly implied, nor does it require the commentary or criticism be understood by Defendant.

64.     Defendant falsely alleged Plaintiff used the image in conjunction with an award show.  But there were no awards, no recipients, and no actual awards show.  The entire event was a parody of a real awards show and an offense to Defendant on many levels as they have previously plead.  This offense at Plaintiff's criticism is the true motive for their lawsuit and again belies their authorized organizational purpose, making NATAS v MSD a prohibited activity and necessitating its immediate dismissal with prejudice.

## SECOND CLAIM FOR RELIEF

### New York Judiciary Law - JUD § 487. Misconduct by attorneys

65. New York Judiciary Law - JUD § 487 defines misconduct by attorneys.  Although New York Case law precedent has recognized this cause of action almost exclusively for Plaintiff's seeking redress for their own attorneys misdeeds, the law clearly refers to "An attorney or counselor who:" is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" finding that attorney "guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action." In this case, Plaintiff is the party injured by Defendants' attorney's deceit and seeks treble damages in this instant civil action.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor on each claim for relief set forth above and award him relief including, but not limited to, the following:

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 17

A.  An Order declaring that Plaintiff's use of the alleged infringing image was fair use under the parody exception and did not dilute Defendants' rights in its EMMY Statuette Design and does not constitute copyright infringement, trademark dilution, trademark infringement, or unfair competition under federal and/or state law and that initiation of NATAS v MSD was an abuse of process intended to coerce Plaintiff to cease broadcasting.

B.  An Order demanding the Defendants compensate Plaintiff for pecuniary damages attributed to the abuse of process including but not limited to legal fees and costs.

C.  An Order declaring false statements by Margaret Esquenet made to the court during the course of litigation violated New York Judiciary Law - JUD § 487 and awarding Plaintiff treble damages or any other relief as determined by the court.

D.  An Order referring these allegations to the Internal Revenue Service for an immediate investigation of Defendants for violating IRC 501(c)(6) and other applicable state and federal laws.

E.  Any further relief as the Court may deem just and appropriate.


Signed this 13th day of December 2021

Respectfully submitted,

_____

Jason Goodman, Defendant, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 18

**(EXHIBIT A)**

SECRETARY OF THE STATE OF CONNECTICUT

Annual Report

165 CAPITOL AVENUE
P.O. BOX 150470
HARTFORD, CT 06115-0470

```
FILING #0007146658 PG 1 OF 3
        VOL A-00689 PAGE 1967
   FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT
```

| | | |
|---|---|---|
| 1. | Name of Limited Liability Company: | SHARP THINGS, LLC |
| 2. | Business ID: | 1224702 |
| 3. | Report due in the month of: | March, 2020 |
| 4. | NAICS Code: | NONE |
| | Changes: | 541990 (All Other Professional, Scientific, and Technical Services) |
| 5. | This Limited Liability Company is: | DOMESTIC |
| | Fee is: | $80.00 |
| | Business Name: | SHARP THINGS, LLC |
| 6. | Mailing Address: | 50 DOWNS AVE. STAMFORD,CT 06902 |
| | Changes: | 50 DOWNS AVE. STAMFORD,CT 06902 USA |
| 7. | Principal Office Address: | 50 DOWNS AVE. STAMFORD,CT 06902 |
| | Changes: | 50 DOWNS AVE. STAMFORD,CT 06902 USA |
| 8. | Address Required in State of Formation (Foreign Limited Liability Company): | |
| | Changes: | |

FILING #0007146658 PG 2 OF 3
VOL A-00689 PAGE 1968
FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT

9.  Agent Information

    Agent Type:                                    INDIVIDUAL
    Agent Name:                               ADAM MIKAEL SHARP

    Agent's Business Address:             50 DOWNS AVE.
                                           STAMFORD,CT 06902-7803

    Agent's Residence Address:            50 DOWNS AVE.
                                           STAMFORD,CT 06902-7803

    Agent's Mailing Address:

    Agent's Business Address Changes:       50 DOWNS AVE.
                                           STAMFORD,CT 06902 USA

    Agent's Residence Address Changes:      50 DOWNS AVE.
                                           STAMFORD,CT 06902 USA

    Agent's Mailing Address Changes:        50 DOWNS AVE.
                                             STAMFORD,CT 06902 USA

    Name of person accepting appointment:
    Title:
    Signature Accepting Appointment:

    (if agent is a business also print name and title of person signing)

10. Date:                             02/11/2021

11. Email Address:                adam@sharpthings.io

12. I hereby certify and state, under penalties of false statement, that all of the information set forth on this annual report is true. I hereby electronically sign this report.
    Print Capacity:                   MEMBER / CHAIRMAN & CEO

13. Signature of Authorizer:          ADAM SHARP

Report Officers/Directors
Business ID : 1224702

```
FILING #0007146658 PG 3 OF 3
       VOL A-00689 PAGE 1969
   FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT
```

1. Full Legal Name:       ADAM MIKAEL SHARP
   Title(s):               MEMBER / CHAIRMAN & CEO
   Residence Addr:

   50 DOWNS AVE.
   STAMFORD,CT 06902

   Business Addr:

   50 DOWNS AVE.
   STAMFORD,CT 06902

   Res Changes:

   Bus Changes:

2. Full Legal Name:       CYNTHIA LYNN SHARP
   Title(s):               MEMBER
   Residence Addr:       50 DOWNS AVE.
   STAMFORD,CT 06902

   Business Addr:        50 DOWNS AVE.
   STAMFORD,CT 06902

   Res Changes:

   Bus Changes: