IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN | Case No.: 1:21-cv-10627-VEC |
| Plaintiff, | |
| vs. | **PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS** |
| ADAM SHARP, TERRANCE O'REILLY, FRANK SCHERMA, MARGARET ESQUENET, NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., | **JURY TRIAL DEMANDED** |
| Defendants | |

Pro Se Plaintiff Jason Goodman ("Goodman") alleges as follows, upon actual knowledge with respect to himself and his own acts, and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1. This civil action is for abuse of process in violation of 47 U.S. Code § 230, unjust enrichment in violation of 26 U.S. Code § 501(c)(6), and misconduct by attorneys pursuant to NYCL - JUD § 487.

2. Defendants Adam Sharp ("Sharp"), Terrance O'Reilly, ("O'Reilly "), Frank Scherma, ("Scherma"), and Margaret Esquenet ("Esquenet") acted outside the scope of their legal authority and in violation of their fiduciary, legal and ethical obligations to the tax-exempt non-profit corporations that employ them and U.S. Taxpayers subsidizing their corporate activities and violated the laws by which the corporations are organized by suing Multimedia System Design, Inc., ("MSD") without proper authority of the board of trustees or board chairmen O'Reilly and Scherma.

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 1

3. Defendants used regularly issued civil process to compel plaintiff to remove videos he had offered to remove for free. Defendants Sharp and Esquenet failed to inform NATAS and ATAS board chairmen, or the requisite quorum of trustees, before activating the legal process for their ulterior purpose to do financial harm to Goodman. Defendants calculated this economic attack despite knowing 47 U.S. Code § 230 expressly indemnifies a provider of interactive computer services like MSD, from being treated as the publisher of information, which in this case was Goodman.

4. The action against MSD was without economic or social excuse or justification, except as a financial attack on Goodman. The defendants acted with an ulterior motive seeking financial and political gain for themselves that is outside the legitimate ends of the process and had a corresponding detrimental effect on the plaintiff who has suffered actual and special damages. Rather than suing Goodman for his allegedly wrongful acts, defendants conspired to abuse the civil legal process and financially overwhelm Goodman and deprive him of his rights by suing MSD.

5. Defendants National Academy of Television Arts and Sciences, ("NATAS") and Academy of Television Arts and Sciences ("ATAS") acted outside the scope of their tax-exempt status and legal authority when they participated as plaintiffs in a civil suit in violation of the laws under which they are organized and without the knowledge and consent of the required members of the board of trustees.

6. Defendants collectively and severally acted maliciously and with wrongful intent, in a manner and for a purpose for which the law was not designed, to block plaintiff from

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 2

---

**Deleted:** refrain

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

broadcasting during the 2020 U.S. Presidential election, damage his business, and destroy his public reputation for their own unjust financial and political enrichment.

7.  Defendant Sharp acted outside the scope of his legal authority and in violation of his fiduciary and other legal and ethical obligations when he failed to disclose his ownership of a private for-profit company Sharp Things, LLC ("Sharp Things") in mandatory public IRS 990 filings for NATAS.

8.  Defendants engaged in collusion with intent to deceive the Court in violation of New York Consolidated Laws, Judiciary Law - JUD § 487 by falsely stating on the record that Sharp Things was inactive while this action commenced.

9.  Defendants engaged in deceit and collusion with intent to deceive the Court in violation of NYCL- JUD § 487 by falsely claiming Goodman violated a stipulated order of protection ("SOP") when their own associate Samuel Eichner ("Eichner") violated the SOP with comments published to the public on the ECF docket on May 15, 2021, *See THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., et al., v. MULTIMEDIA SYSTEM DESIGN, INC. ECF No. 69.*

10. Defendants conspired with one another and additional non-parties to abuse regularly issued legal process and deprive Plaintiff of his right to due process and a fair trial.

11. Defendants abused regularly issued legal process and conducted themselves in a manner and for a purpose for which the law was not designed.

12. Defendants had an ulterior motive to disrupt Plaintiff's business operations and force him to stop broadcasts of news, information, opinion, parody, and other first

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 3

| | |
|---|---|
| **Deleted:** Defendants continue to abuse the law and conduct | |
| **Deleted:** , | |
| **Deleted:** exert pressure on Plaintiff by disrupting his | |
| **Deleted:** to coerce | |
| **Deleted:** into discontinuing | |
| **Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION | |

amendment protected activity and to deprive him of other rights for their own unjust enrichment and personal inurement.

**PARTIES**

13. Plaintiff – Pro se Plaintiff Jason Goodman is a New York citizen and the sole owner of all Crowdsource the Truth ("CSTT") intellectual property ("IP"). Goodman also owns Multimedia System Design, Inc ("MSD") a New York corporation with its primary place of business in New York, NY 10001.

14. Defendant – Adam Sharp is a Connecticut citizen, President and CEO of The National Academy of Television Arts and Sciences ("NATAS") a 501(c)(6) tax-exempt business association, and owner and CEO of Sharp Things, LLC a privately owned for profit political social media strategic consulting company having its primary place of business in Stamford, CT.

15. Defendant Terry O'Reilly is a Pennsylvania citizen and Chairman of the Board of trustees of NATAS a 501(c)(6) tax-exempt business association and CEO of Pittsburgh Community Broadcasting Corporation, an independent, locally owned, and community-supported public media organization.

16. Defendant – Frank Scherma is a California Citizen and the CEO and Chairman of the board of ATAS a 501(c)(6) tax-exempt business association.

17. Defendant – The National Academy of Television Arts and Sciences, Inc., is a New York 501(c)(6) not-for-profit corporation with its principal place of business in New York, New York 10016.

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 4

---

**Deleted:** , owner, sole stockholder

**Deleted:** singular employee of

**Deleted:** at 252 7th Avenue Apartment No. 6S,

**Deleted:** Goodman is the creator of the social media property Crowdsource the Truth and producer and host of talk show video content broadcast on the internet. Goodman is the sole owner of all Crowdsource the Truth branded intellectual property ("IP") and does not have a "work for hire" or any other IP sharing contract with MSD or any other party.

**Deleted:** ,

**Deleted:** the President and

**Deleted:** at 450 Park Avenue South, Third Floor,

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

18. Defendant – Academy of Television Arts & Sciences, is a California not-for-profit corporation with its principal place of business in N Hollywood, California 91601.

19. Defendant – Margaret Esquenet ("Esquenet") is a Maryland citizen and an Attorney with FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP ("Finnegan") having its primary place of business in Washington, DC 20001. Esquenet and her associates at Finnegan represent d`       efendants in THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES, v MULTIMEDIA SYSTEM DESIGN, INC. Case 1:20-cv-07269 ("NATAS v MSD")

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction over this action pursuant to 47 U.S. Code § 230, 26 U.S. Code § 501 and New York Judiciary Law - JUD § 487.

21. This Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of New York pursuant to 47 U.S. Code § 230, 26 U.S. Code § 501 and New York Judiciary Law - JUD § 487 because the plaintiff is being harmed in this District; Defendants are domiciled in this District; Defendant's agent can be found in this District; Defendant is conducting business in this District; and Defendant is violating the Plaintiff's rights in this District.

**LEGAL RESPONSIBILITIES OF NONPROFIT BOARDS OF DIRECTORS**

22. Unlike their counterparts in for profit corporations, board members, trustees, executives, employees, or any other agents of tax-exempt corporations are legally bound to act only in furtherance of the authorized organizational purpose for which

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 5

| **Deleted:** at 5220 Lankershim Boulevard, North |
| **Deleted:** at 901 New York Avenue NW |
| **Deleted:** represents Defendants |
| **Deleted:** 22 |
| **Deleted:** 7102 |
| **Deleted:** 22 |
| **Deleted:** 7102 |
| **Deleted:** Plaintiff |
| **Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION |

the entity has been granted tax exempt status.  Activities that do not support the authorized organizational purpose are considered prohibited activities and no board member or any other agent may engage in any such activity in the name of the non-profit pursuant to 26 U.S. Code § 501(c)(6) under any circumstance.

23. New York case law precedent has made the responsibilities of being on a nonprofit board essentially the same as being on a corporate board of directors with some important differentiating factors. These areas of legal responsibility govern the actions of nonprofit board members.

**Deleted:** of

(1) Duty of Care

Board directors, trustees and executives are obliged to give the same care and concern to their board responsibilities as any reasonable ordinary person would. Board members legal obligations to the entity include monitoring the nonprofit's activities and actively working with other trustees to adhere only to the organization's authorized tax-exempt purpose.  Board directors should be able to read and understand financial reports and be willing to question expenditures particularly in cases where there is reasonable suspicion of prohibited activity.

(2) Duty of Loyalty

Board directors, trustees and executives must always place financial and other interests of the non-profit entity ahead of their own.  All board members, trustees, and executives are required to publicly disclose any conflicts of interests or potential conflicts such as activities in the private for-profit sector.  Board

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 6

members, trustees and executives must not use their positions with the tax-exempt

entity as a means for personal or commercial gain.

(3) Duty of Obedience

Board directors, trustees, and executives must ensure that the nonprofit is abiding

by all applicable laws and regulations and doesn't engage in illegal or

unauthorized prohibited activities. The organization must carry out its mission in

accordance with the authorized organizational purpose ratified in the articles of

incorporation for which the entity is granted nonprofit status.

24. Additionally, a strict inurement prohibition prevents a tax-exempt organization, its

board members, trustees, executives, employees, or agents from using income or

assets of the entity to excessively benefit an individual that has a close relationship

with the tax-exempt organization or can exercise significant influence over it.

Inurement is not limited to pecuniary benefits but rather any tangible benefit

whatsoever including personal, political, or any other benefit.

**DEFENDANTS AND THEIR WRONGFUL ACTS**

25. Defendant Sharp is the President and CEO of NATAS and Director, CEO and Agent

of Record for Sharp Things, LLC a privately-owned for-profit Connecticut Limited

Liability Corporation that claims on its website www.sharpthings.io to operate "at the

intersection of media, politics and technology". Sharp was an executive at Twitter

from 2010 through 2016 and is a self-proclaimed "political operative".

26. Sharp has failed to disclose his personal ownership of, or income from Sharp Things,

LLC in NATAS public IRS 990 filings as required by the tax-exempt laws under

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT
BY ATTORNEYS - 7

---

**Formatted:** Font: 10 pt

**Formatted:** Font: 10 pt

**Formatted:** Font color: Black

**Deleted:** <#>Unlike their counterparts in for profit corporations, board members, trustees, executives, employees, or any other agents of tax-exempt corporations are legally bound to only act in furtherance of the authorized organizational purpose for which the entity has been granted tax exempt status. Activities that do not support the authorized organizational purpose are considered prohibited activities and no board member or other agent may engage in any such activity in the name of the non-profit pursuant to IRC 501(c)(6) under any circumstance.¶

**Deleted:** simultaneously acts as

**Deleted:** Chief Executive

**Deleted:** .

**Deleted:** filings

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

which NATAS and ATAS are organized.  Evidence in the public domain indicates Sharp may have active business relationships with numerous well known politicians including Andrew Cuomo, Barack Obama and Joe Biden.

27. Fed. R. Civ. P. Rule 17(b)(2) states that a corporation can only have the capacity to sue or be sued "by the law under which it was organized".  This inherently excludes cases in which a CEO in ongoing violation of tax-exempt laws for failure to disclose his private for-profit activities as required commences legal action for the entity.

28. Sharp exceeded his legal authority as CEO of the tax-exempt entity when he failed to obtain the required consent of the board of trustees and proceeded to sue without the knowledge of chairmen O'Reilly and Scherma.

29. Upon learning of this legal action, O'Reilly and Scherma failed in their roles as board chairmen to ensure that corporate tax-exempt funds were used only in the best financial interests of the tax-exempt corporations and only for authorized tax-exempt purposes.

30. Defendants will fail to produce minutes from board meetings or any communications indicating the required number of trustees had the opportunity to weigh the value of Goodman's pre-action settlement offer versus the cost of suing in view of the financial interests of the tax-exempt entities as required.

31. In violation of the laws by which tax-exempt NATAS and ATAS are organized, defendant Sharp unilaterally acted on behalf of ATAS without the knowledge or consent of board chairman and CEO Frank Scherma.

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 8

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

32. During a phone call in January 2022, Scherma told Goodman he was unaware of him or the NATAS v MSD lawsuit and was not represented by Esquenet or Finnegan and that Sharp had no legal authority to act on behalf of ATAS.

33. Defendants Sharp and Esquenet engaged in collusion intended to deceive the Court and did not legally represent ATAS as claimed when they sued MSD.

34. In violation of the laws by which NATAS and ATAS are organized, defendant Scherma became a co-conspirator when he failed to discontinue ATAS participation in NATAS v MSD and failed to obtain consent from the ATAS board of trustees to proceed with ATAS as a co-plaintiff in the ongoing abuse of process.

35. Defendant Sharp wrongfully used his role as CEO of the non-profit for personal inurement in furtherance of his own personal political goals and those of his private, for-profit business.  Sharp did so knowingly and in violation of fiduciary, ethical and legal obligations to the tax-exempt corporations NATAS and ATAS.

<!-- Deleted: IRS Code and applicable state and Federal laws -->

36. Sharp became CEO of NATAS in May of 2018.  At the time of this writing, to the best of plaintiff's knowledge, no NATAS public 990 filings have been made with the IRS, New York Attorney General or Secretary of State for 2019, 2020 or 2021.

<!-- Deleted: or -->

37. Prior to becoming President and CEO of NATAS, Sharp was employed at Twitter as Head of Government and non-profits.  Sharp later became Head of News Government and Elections.  He has publicly stated that he is a political operative.  He maintains an active for-profit business that is as a tool for political operatives and their objectives. Sharp presents himself as an expert in all these fields and should be familiar with the legal and ethical requirements of an executive in his position.

<!-- Deleted: , initially -->
<!-- Deleted: Later Sharp's job description changed to -->
<!-- Deleted: By any measure, -->
<!-- Deleted: extremely -->
<!-- Deleted: DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION -->

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 9

38. On January 29, 2011, The New York Times said Sharp was "the human embodiment of Twitter" (https://www.nytimes.com/2011/01/30/us/politics/30twitter.html)

**Deleted:** (https://www.nytimes.com/2011/01/30/us/politics/30twitter.html)

39. On September 30, 2011, a New York magazine article reported on Sharp's direct negotiation with Barack Obama's closest advisors in organizing the historic first "Twitter Town Hall" in which the President of the United States publicly communicated via the nascent digital platform for the first time ever. (https://nymag.com/news/media/twitter-2011-10/)

40. Twitter stock began publicly trading later in 2013.  The initial public offering made many Twitter executives, which Sharp was at the time, exceedingly wealthy, despite the company's inability to operate profitably until two years after Sharp's departure. https://www.cnn.com/2019/02/07/tech/twitter-earnings-q4/index.html.

**Deleted:**

41. A photograph on the front page of Sharp Things, LLC's website www.sharpthings.io shows Defendant Sharp in direct personal communication with Barack Obama, advertising Sharp's unusually close relationship with the former President.

42. In October 2020, shortly after Sharp's malicious YouTube complaint against the Jason Goodman YouTube channel, Twitter suspended The New York Post's Twitter account ("@NYPOST") in direct response to the Newspaper's publication of contents from a laptop attributed to Hunter Biden, the cocaine addicted son of then candidate Joe Biden.  The information on the laptop has subsequently been corroborated by firsthand testimony from decorated U.S. Navy officer Anthony Bobulinski.  Despite the newsworthiness and veracity of this information, Twitter acted in furtherance of

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 10

its own political interest, just as Sharp has, to block unfavorable but true information and to suppress protected first amendment activities by perceived political opponents.

43. On January 8, 2021, amid controversial claims of election tampering, including allegations citing Twitter's suppression of Biden's laptop, Twitter permanently suspended the account of then U.S. President Donald Trump ("@realDonaldTrump"). Throughout its history, Twitter has engaged in numerous overt demonstrations of a corporate culture willing to bend or even break laws and ethical norms to suppress political opposition.  Sharp played a key role in forming that corporate culture in his six years at Twitter during its formative days.

44. During congressional testimony in or around November 2020, former Twitter CEO Jack Dorsey called the removal of @NYPOST a "total mistake" affirming the legitimacy of claims made by the newspaper and his own company's illegitimate removal of the content.  Dorsey fell short of attributing the mistake to any specific individual or ascribing a motive to the action.

45. As the keynote speaker at Millennium Alliance's 2017 Digital Marketing Transformation Assembly, Sharp claimed his professional background was as a "Political Operative" among other things.  The statement remains online published on Sharp Things' YouTube channel (https://youtu.be/yB-IvtJ56NE).

46. On or around August 2020, Sharp acting without consent or knowledge of the boards of trustees or consideration of fair use pursuant to the Digital Millennium Copyright Act ("DMCA"), filed a complaint with YouTube alleging a video created by Goodman infringed on NATAS copyright and diluted its trademark.

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 11

**Deleted:** made the public declaration that

**Deleted:** is

**Deleted:** (https://youtu.be/yB-IvtJ56NE). In NATAS v MSD Defendant characterizes this claim as a false

**Deleted:** made by Plaintiff and wrongfully seeks redress

**Deleted:** the false basis that it is defamatory.

**Deleted:** Adam

**Deleted:** on his own accord

**Deleted:** NATAS Board

**Deleted:** and in direct contravention of his legal obligations as CEO of the non-profit entity,

**Deleted:** Plaintiff

**Deleted:** by displaying a substantially modified parody image of an EMMY Award

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

47. Plaintiff does not deny Sharp was within his rights to file a claim, but it is empirically untrue to say it was his only choice.  As a social media expert, Sharp would be aware he selected the most aggressive approach available and it would likely harm plaintiff, terminating access to live broadcasting and disrupting normal business operations.

48. Sharp's claim should have been given extraordinarily careful consideration because it could damage a company operating in the business space that NATAS is organized to protect and nurture.  It cannot be denied that Sharp could have chosen to contact Goodman first and ask to remove the disputed image without filing a complaint.

49. Outside his role as NATAS CEO and owner of Sharp Things, in his capacity as a private individual Sharp operates a YouTube channel called the Roger Sharp Archive ("RSA") http://www.rogersharparchive.com.  Approximately sixty-seven videos chronicle the broadcasting career of Sharp's deceased father, Roger Sharp.  Sharp does not own the copyrights to this material but alleges fair use in a disclaimer published on the site. *"Description – A non-commercial archive of work by late ABC and CBS television newsman Roger Sharp (1935-1986), compiled and maintained by his son Adam.  All broadcast clips are the intellectual property of their respective networks and/or stations and are believed to be used here under the fair use and library/archive exceptions to U.S. copyright law.  If you are the proper copyright holder of any of these works and object to my use of them, please contact me."* (https://www.youtube.com/user/rogersharparchive/about)

50. The disclaimer demonstrates that Sharp has a clear understanding of copyright law and the consequences of posting disputed material on social media platforms.

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 12

---

**Deleted:** Irrespective of the merits of the claim,

**Deleted:** would be damaging the Plaintiff, causing him to lose

**Deleted:** YouTube
**Deleted:** his ability to conduct
**Deleted:**

**Deleted:** would
**Deleted:** very
**Deleted:** Defendant's tax-exempt entity
**Deleted:** encourage.¶
**Deleted:** is not disputed
**Deleted:** is an industry leading expert in the field of social media. …
**Deleted:** , LLC

**Deleted:** https
**Deleted:** /. The site features
**Deleted:** that
**Deleted:** EMMY Award winning newsman
**Deleted:** any of
**Deleted:** reproduction

**Formatted:** Font: Italic
**Deleted:** (https://www.youtube.com/user/rogersharparchive/about)…
**Deleted:** on The Roger Sharp Archive
**Deleted:** as it pertains to
**Deleted:** use of visual media and potential
**Deleted:** protected

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

Notably, Sharp requests the courtesy of contact prior to legal action should a dispute

arise.  Sharp specifically and maliciously denies Plaintiff that very same courtesy.

51. Sharp was aware his complaint to YouTube alleging copyright infringement had a

high likelihood of resulting in punishment up to and including disabling Plaintiff's

YouTube channel.  In YouTube's terminology this type of complaint is expected to

result in one "strike" in a "three strikes you're out" system.  The least damage

expected from one strike is the loss of live broadcasting and uploading of new video.

52. Sharp was aware his action would have an immediate negative impact on Plaintiff's

normal business operations and would be likely to stop plaintiff from broadcasting.

53. Statements in the description and disclaimer on the RSA indicate that Sharp was

aware copyright complaints against a user could result in the removal of content and

could restrict or eliminate the violator's future access to YouTube.

54. On information and belief, plaintiff alleges Sharp deliberately misused a properly

served civil procedure for an ulterior motive and improper purpose to penalize

plaintiff because he is a popular conservative social media influencer and Sharp did

not want him broadcasting.  Like his comrades at Twitter, Sharp was willing to

engage in unethical and even illegal action to stop perceived political opponents from

broadcasting during the period leading up to the 2020 Presidential election.

55. After plaintiff submitted an appropriate appeal to YouTube, counterclaiming parody

fair use, negotiations between plaintiff and defendant Margaret Esquenet began.

56. In a phone call prior to any legal action, plaintiff offered to remove all occurrences of

the alleged infringement if defendants withdrew their unnecessary YouTube

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT
BY ATTORNEYS - 13

**Deleted:** also

**Deleted:** any

**Deleted:** would disable Plaintiff's ability to broadcast and would have an immediate negative impact on Plaintiff's normal business operations. Sharp would have known that the initial complaint disabled Plaintiff's ability to broadcast on YouTube from August through November, up to and including the 2020 Presidential election.

**Formatted:** Font: Bold

**Deleted:** penalized Plaintiff

**Deleted:** Plaintiff

**Deleted:** .

**Deleted:** Plaintiff

**Deleted:** Plaintiff

**Deleted:** Defendant

**Deleted:** an initial

**Deleted:** .

**Deleted:** Plaintiff

**Deleted:** voluntarily

**Deleted:** the Defendants would withdraw

**Deleted:** malicious and

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

complaint and restored plaintiff's business to its normal operating status.  Irrespective

of the merits of the complaint, its withdrawal was a mandatory prerequisite to any

equitable and timely settlement of the dispute.  Had Goodman withdrew his appeal as

demanded, he would have forfeited all rights and been left with no remedy.  The

reverse was not true for defendants.  Esquenet refused the offer immediately without

consulting Sharp or the NATAS or ATAS boards of trustees, and demanded Plaintiff

first withdraw the counterclaim.  This illogical demand would have caused Plaintiff to

permanently abandon his rights to appeal and would leave his YouTube channel

inactive until the period after the 2020 election.  Conversely, if Defendant withdrew

their initial complaint, no remedy would be lost.  No good faith effort was made by

defendant to entertain plaintiff's good faith offer.  Defendant has repeatedly deceived

the court claiming they had "no choice" but to sue which is untrue and indefensible.

Defendants failed to evaluate the financial interest of their tax-exempt corporations

when considering Goodman's offer and voluntarily chose to proactively sue in

violation of the tax-exempt laws by which they are organized.

57. On or around August 23, 2021, Plaintiff inadvertently included Ms. Esquenet and

numerous other individuals on an email response intended only for Goodman's friend

non-party Larry Klayman ("Klayman"). The message included an email address

defendants allege violated the SOP.  On or around August 24, 2021, Defendant sent a

letter to the court (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 108)

claiming Plaintiff violated the SOP and provoking a show cause hearing (*See* NATAS

v MSD 1:20-cv-07269-VEC-OTW ECF No. 112).

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT
BY ATTORNEYS - 14

---

**Deleted:** .

**Deleted:** it was damaging Plaintiff's regular business operations and …

**Deleted:**  over the contested parody image.

**Deleted:** board, demanding

**Deleted:** any counterclaim

**Deleted:** as requested, they

**Deleted:** not have forfeited any rights. Defendant could have submitted a new complaint if Plaintiff failed to perform as promised and Defendant still retained the right to sue, something they quixotically chose to do without exploring the zero-cost solution.

**Deleted:** Defendant

**Deleted:** Plaintiff's

**Deleted:** Moreover,

**Deleted:** , incorrect

**Deleted:** Defendant alleges

**Deleted:** a stipulated order of protection.

**Formatted:** Font: Italic

**Deleted:** falsely

**Deleted:** had

**Deleted:** stipulated order of protection

**Deleted:** which threatened money sanctions against Goodman

**Formatted:** Font: Italic

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

58. During a teleconference that took place on April 30, 2021 at 2:00 PM defendant Esquenet's associate Eichner said, *"Your Honor, it was an e-mail [REDACTED]@ [REDACTED].com. That is the e-mail address of the person who notified the television academies of the image."* Even though this conference was between the parties and judge Caproni, its contents including the unredacted email address were published to the public on the docket on May 15, 2021 and remain there as of this filing. (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 69 page 42 line 22).

59. The transcript reveals what Goodman could not recall during interrogation at the show cause hearing. Eichner's comments placed the email address in the public domain for months before Goodman allegedly exposed it. Defendant made no effort whatsoever to have it redacted from the transcript, but instead made an overt and deceptive effort to ensnare the unrepresented plaintiff in a damaging show cause trap.

60. Rule 3.3 of the D.C. Bar Association of which Esquenet is a member addresses Candor Toward the Tribunal. Rule 3.3(d) states in part "a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." Esquenet had an ethical obligation to be accountable for her own team's irresponsible failures and alert the Court that it was Eichner that violated the SPO not Goodman.

61. Financing of this legal action is outside the purview of the tax-exempt entity's authorized organizational purpose. Defendants will fail to demonstrate that the unnecessary lawsuit is not a prohibited activity. These allegations should be referred

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 15

---

**Deleted:** <#>At the abusive show cause hearing on October 25, 2021, the unrepresented Plaintiff was questioned by Esquenet. Simultaneously, Judge Valerie Caproni berated and demeaned the Plaintiff in part by expressing her extrajudicial bias that he was "like Qanon" as she accused him of lying under oath, claiming his testimony did not "square" with his actions. Although Plaintiff Goodman testified truthfully and to his best recollection, upon further consideration, he now recalls details with better clarity.¶

**Deleted:** <#>public Zoom

**Deleted:** <#>with Judge Caproni on or around May 10, 2021, the order of protection was initially violated by Ms.

**Deleted:** <#>colleague Samuel

**Deleted:** <#>("Eichner"). Eichner violated the order, stating in the public hearing

**Deleted:** <#>working

**Deleted:** <#>gmail.

**Formatted:** Font: Not Italic

**Formatted:** Font: Not Italic

**Deleted:** Plaintiff

**Deleted:** specifically

**Deleted:** a tense cross examination. Mr.

**Deleted:** sent the email to Klayman.

**Deleted:** Plaintiff

**Deleted:** procedural

**Deleted:** Ms.

**Deleted:** a fiduciary and

**Deleted:** . Instead, she relied on false claims to blame

**Deleted:** ; increasing these proceedings with a vexatious show cause hearing that inflated her client's costs and wasted judicial resources. On information and belief, Plaintiff alleges this was another deliberate deception intended to penalize Plaintiff financially and further unfairly damage his ability to retain legal representation.

**Deleted:** <#>Defendants will fail to demonstrate that the voluntary choice to proactively sue Plaintiff was in the financial best interest of the tax-exempt organization. Defendants have no evidence that any trustee or executive even considered the best interest of the tax-exempt entity before proceeding with the suit.¶

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

to the IRS for immediate investigation including revocation of the tax-exempt status

of the entity and criminal prosecution of any individual party to the violation.

62. Sharp's abuse of process was not intended to cure the alleged injury of copyright

infringement, but rather the ulterior purpose of stopping Plaintiff from broadcasting

on YouTube during the 2020 Presidential election and damaging his business.

63. As an attorney and counsel to defendants, Esquenet had an ethical obligation to

inform her clients of the laws that govern their ability to sue.  Pursuant to Fed. R. Civ.

P. Rule 17(b)(2) a corporation may only sue in accordance with "the law under which

it was organized".  The Defendant's tax-exempt corporation is organized pursuant to

26 U.S. Code § 501(c)(6) and is prohibited from engaging in activity that does not

"advance the arts and sciences of television, and [to] foster creative leadership in the

television industry for artistic, cultural, educational, and technological progress" as

ratified in Defendant's articles of incorporation.

64. Defendant will fail to demonstrate that the lawsuit could advance the television

industry in any way.  In fact, it contradicts the tax-exempt entity's authorized

purpose.  The mere threat of legal action chills first amendment activity and hurts the

artistic and cultural development of parody as a form of expression in television by

creating the impression that endeavors in that area put the creator at risk.

65. Defendant Terry O'Reilly as chairman of the board of trustees has also failed to

uphold his fiduciary and other legal obligations by failing to shield the tax-exempt

entity from the personally motivated, prohibited activities of CEO Sharp.  Irrespective

of O'Reilly's knowledge of these facts at the outset, upon learning of Sharp's

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT
BY ATTORNEYS - 16

---

**Deleted:** was initiated in violation

**Deleted:** 22 U.S. Code   7102(1) and (3)(C) to coerce

**Deleted:** by forcing him to refrain

**Deleted:** financially damage

**Deleted:** Defendants

**Deleted:** a fiduciary and

**Deleted:** IRC

**Deleted:** as such,

**Deleted:** directors

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

misdeeds, O'Reilly failed to rectify these defects and instead joined Sharp and

Esquenet in perpetuating this abuse of process.

66. Defendant Frank Scherma as chairman of the board of trustees and CEO of ATAS has

also failed to uphold his fiduciary and other legal obligations by failing to shield the

tax-exempt entity from the personally motivated, prohibited activities of Sharp.

Irrespective of Scherma's knowledge of these facts at the outset, upon learning of

Sharp's misdeeds, he failed to rectify the issue by terminating ATAS involvement or

obtaining board consent and instead has joined Sharp, Esquenet and O'Reilly in

perpetuating this abuse of process in violation of his own personal legal obligations

and the laws by which the tax-exempt entities are organized.

### INJURY TO THE PUBLIC AND PLAINTIFF

67. Defendant's decision to complain to YouTube and then to sue rather than seek rapid,

no cost settlement, harms taxpayers whose funds subsidize the activities of the

Defendants.  The decision to proactively sue MSD when a clear path to a zero-cost

settlement with Goodman was available constitutes prohibited activity and is an abuse

of regularly issued civil legal process.

68. The mere threat of a lawsuit such as NATAS v MSD damages the public's ability to

engage in free, first amendment protected discourse including the use of parody.  By

sending a public signal that the defendants will challenge and financially punish

attempts at parody it finds unfavorable, Defendants have violated their mandate of

promoting development and leadership in the broadcast television industry,

countermanding the essential purpose for which they are granted tax-exempt status.

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT
BY ATTORNEYS - 17

---

Deleted: has

Deleted: by terminating NATAS v MSD

Deleted: has

Deleted: Plaintiff

Deleted: solution

Deleted: a violation

Deleted: IRS code

Deleted: Defendants

Deleted: DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

Lawsuits of this nature have a chilling effect on public discourse, discouraging others from freely exercising their first amendment rights and discouraging leadership. Because Plaintiff uses video broadcasting as the medium to exercise his First Amendment rights, Defendant had a special obligation to handle this matter in a way that would not damage the television or broadcast industry and would allow them to act in accordance with their authorized organizational tax-exempt purpose.

69. Defendant Sharp is a social media and political expert who knew his actions would damage Plaintiff's ability to broadcast during the 2020 presidential election.

70. Sharp's personal political disposition favored President Joe Biden.

71. Sharp and Twitter have a track record of malicious action against political opponents.

72. Sharp wrongfully used his position of power as the CEO of NATAS to harm Plaintiff's ability to participate in public discourse pertaining to the 2020 election and harmed the public by denying them access to Plaintiff's broadcasts.

73. In violation of 26 U.S. Code § 501(c)(6) Defendants used tax-exempt funds for legal fees and other expenses related to a lawsuit intended to further Sharp's own personal political interests and benefit his private, for-profit company, Sharp Things, LLC.

74. In violation of New York Judiciary Law - JUD § 487, Margaret Esquenet deceived the court in the course of litigation, during NATAS v MSD falsely stating that Sharp was no longer a political operative and his private, for-profit company Sharp Things, LLC was no longer active.  Documentation on file with the Connecticut Secretary of State proves this statement to be false.  **(EXHIBIT A)**

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 18

Deleted: his past associates

Deleted: public

Deleted: acting out

Deleted: their perceived

Deleted: enemies

Deleted: IRC

Deleted: to pay

Formatted: Font color: Black

Deleted: DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

75. When officers of the court engage in deceit it undermines public confidence in the legal system and is inherently damaging to the service of justice. It also violates JUD § 487 which makes it a misdemeanor for attorneys to engage in deception.

76. Margaret Esquenet additionally deceived the court claiming Plaintiff accused the deceased father of Defendant Sharp of being involved in CIA mind control experiments involving drugs and torture.  No such statement whatsoever was made by Plaintiff.  This purely fabricated deception intended to smear Plaintiff and cause the court and public to believe he was associated with loathesome "conspiracy theories".

77. Defendant's actions have directly damaged Plaintiff's ability to broadcast on YouTube and earn income.  Defendant's efforts to terminate Plaintiff's broadcasts correspond to a steady decline in Plaintiff's income since the initiating event.

78. Plaintiff has incurred substantial legal fees and suffered loss of business, loss of reputation and loss of income because of Defendant's abuse of process.

**ABUSE OF PROCESS**

Abuse of process, an intentional tort, is defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process (Curiano v. Suozzi, 63 NY2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324; Board of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assn., 38 NY2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278).

The four elements of abuse of process are

(1) regularly issued legal process, civil or criminal, compelling performance or forbearance of some act,

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 19

(2) the person activating the process was moved by an ulterior purpose to do harm, without economic or social excuse or justification,

(3) the person activating the process sought some collateral advantage or [*4] corresponding detriment to the plaintiff that is outside the legitimate ends of the process, and

(4) actual or special damage, (Board of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO, 38 NY2d 397, 380 NYS2d 635, 343 NE2d 278 (1975).

Ulterior purpose - the third element of this cause of action - is the intent to cause harm without excuse or justification, (Curiano v Suozzi, 63 NY2d 113, 480 NYS2d 466, 469 NE2d 1324 (1984); Board of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO, 38 NY2d 397, 380 NYS2d 635, 343 NE2d 278 (1975). Even where defendant acts out of spite or with a malicious motive this is not alone sufficient to sustain a cause of action for abuse of process, Curiano v Suozzi, supra; Place v Ciccotelli, 121 AD3d 1378, 995 NYS2d 348 (3d Dept 2014); Liss v Forte, 96 AD3d 1592, 947 NYS2d 270 (4th Dept 2012).

Even though the Court found the defendants' rights were infringed, and the lawsuit justified, even if for a malicious purpose, defendants' rights would have been infringed by Goodman, not MSD.  Despite the Court's finding that there was a valid excuse and justification for defendants to sue to protect their rights, there was no excuse or justification to sue MSD for content provided by Goodman except the ulterior motive and express intent to cause harm to Goodman.

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 20

**Formatted:** Indent: Left:  0.5", First line:  0.5",  No bullets or numbering

**Deleted:** coerce Plaintiff into hiring a lawyer and expending financial resources on the defense.

**Deleted:** <#>Despite taking initial action against the "Jason Goodman" YouTube channel, owned by the natural person who is Plaintiff in this matter, Defendant chose to sue Plaintiff's corporation.  Plaintiff alleges this was done to force him to hire an attorney and punish him financially.  The alleged infringement pertains to intellectual property that is solely owned by Plaintiff, and no other entity. Defendant did not have standing to sue MSD but chose to do so anyway to avoid a pro se defense, and to deliberately cause financial harm through forced legal fees.¶
¶

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

**FIRST CLAIM FOR RELIEF**

1

2

~~47~~ **U.S. Code § 230 Indemnifies Other Parties for Content Published By Goodman**

3

79.    Plaintiff repeats and realleges every allegation set forth above

4

80.    Because Esquenet is an attorney, she should have known NATAS and ATAS

5

could not sue MSD for information provided by Goodman pursuant to 47 U.S. Code §

6

230(c)(1) which states "No provider or user of an interactive computer service shall be

7

treated as the publisher or speaker of any information provided by another information

8

content provider."  Section 230 considers both MSD to be a provider and a user of

9

interactive computer services and also recognizes Goodman, even in his role as CEO of

10

MSD, to be a separate legal entity, an information or content provider.  Section 230

11

expressly indemnifies MSD from being treated as publisher of that information or held

12

liable for its content.  There was no excuse or justification apart from an improper

13

purpose and intent to cause harm by suing MSD rather than suing Goodman himself.

14

81.    Esquenet knew or should have known that suing MSD compelled Goodman to

15

hire counsel at tremendous ongoing cost.  Esquenet could have also reasonably calculated

16

that this would be likely to deplete financial resources and over time, decrease

17

Goodman's ability to defend his rights.  Esquenet calculated this in a deceitful manner in

18

violation of the Rules of Professional Conduct Rule 3.3(d) which says, "In an ex parte

19

proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer

20

that will enable the tribunal to make an informed decision, whether or not the facts are

21

adverse."  Esquenet had a legal and ethical obligation to inform the Court and her clients

22

23

24

25

26

27

28

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT
BY ATTORNEYS - 21

---

**Deleted:** Dismissal of NATAS v MSD pursuant to 22

**Deleted:** 7102

**Formatted:** Font: Bold

**Deleted:** <#>The alleged infringement was in fact a parody and should be considered a "derivative work" as defined in Chapter 1 subsection 101 of the US Copyright Act. The alterations to the original mark are substantial and transformative and ascribe new meaning to the derivative work. The changes themselves were described as "gross" even in the initial email communication that identified the disputed parody.¶
Merriam-Webster's dictionary defines the word gross as "glaringly noticeable" and "immediately obvious" among other things. There is clear evidence that a reasonable person could not mistake the derivative work for the original mark due to the substantial and transformative alterations made by Plaintiff as a part of Plaintiff's first amendment protected commentary and criticism of television award shows, recipients of the awards and those who bestow them upon undeserving recipients. The image is a parody and is clearly recognized by members of the public as such. The parody image is unmistakably and immediately understood to be substantially different than the copyright protected trademark held by Defendants. Plaintiff did not need authorization to use the image and Defendant acted maliciously in suing under the false pretense of protecting a trademark.¶
Plaintiff created the parody image as part of his critical commentary on the state of corporate owned news media and its role in disseminating information about Covid-19 and other topics of public interest. Defendant's role in promoting and supporting these corporate entities and awarding them and their employees makes them a valid target for criticism, commentary, and even ridicule or parody, no matter how odious the commentary may be. It need not matter if the commentary is overtly spoken or subtly implied, nor does it require the commentary or criticism be understood by Defendant.¶
Defendant falsely alleged Plaintiff used the image in conjunction with an award show. But there were no awards, no recipients, and no actual awards show. The entire event was a parody of a real awards show and an offense to Defendant on many levels as they have previously plead.  This offense at Plaintiff's criticism is the true motive for their lawsuit and again belies their authorized organizational purpose, making NATAS v MSD a prohibited activity and necessitating its immediate dismissal with prejudice.¶

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

about substantial defects in their claims that should have prevented the tax-exempt

entitles and their offices from participating in the abuse of process.

## SECOND CLAIM FOR RELIEF

### Defendants Violated 26 U.S. Code § 501(c)(6)

82.    Sharp acted unilaterally in his role as CEO and failed to adhere to his personal

legal obligations to the tax-exempt NATAS that employs him by choosing to sue MSD.

83.    Sharp violated the laws by which tax-exempt corporations are governed and was

personally inured by abusing the regular legal process to sue MSD for an ulterior motive

and in pursuit of his own personal, political, and financial goals.

84.    When defendants ignored Goodman's no cost settlement offer, failed to hold a

board meeting to weigh the option and chose to sue MSD without excuse or reason aside

from the ulterior motive to harm Goodman, they violated the laws by which their tax-

exempt corporate entitles are organized.

85.    Each trustee and employee are legally bound to ensure they only act in the

financial best interest of the tax-exempt entity.  Defendants will fail to prove refusal to

test Goodman's no-cost, pre-action settlement offer was in their tax-exempt corporations'

best financial interest.  The action was a malicious abuse of process intended to harm

plaintiff and inure Sharp and Esquenet in violation of 26 U.S. Code § 501(c)(6).

### THIRD CLAIM FOR RELIEF

### New York Judiciary Law - JUD § 487. Misconduct by attorneys

86. New York Judiciary Law - JUD § 487 defines misconduct by attorneys.  New York

Case law precedent recognizes this cause of action almost exclusively for Plaintiff's

**Formatted:** Indent: Left:  0.5"

**Deleted:** NYCL,

**Deleted:**

**Deleted:** Although

**Deleted:** has recognized

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

seeking to redress their own attorneys misdeeds, but the law refers to "An attorney or

counselor who:" is "guilty of any deceit or collusion, or consents to any deceit or

collusion, with intent to deceive the court or any party;" finding that attorney "guilty

of a misdemeanor, and in addition to the punishment prescribed therefor by the penal

law, he forfeits to the party injured treble damages, to be recovered in a civil action."

87. The meaningful parties being deceived in this instance are the Court and the tax-

exempt NATAS and ATAS.  Through this deceit harm has come to Goodman.  It has

financially damaged his wholly owned corporation and his ability to broadcast and

earn a living.  It has damaged Goodman's reputation and subjected him to sanctions.

88. In this case, plaintiff is the party most grievously injured by defendants' collusion and

deceit.  Goodman seeks treble damages in this action both for the legal and other

expenses he has borne and the loss of business and reputation due to defendants' acts.

89. Esquenet deceived the Court when she said on the record that Sharp's privately-

owned for-profit company was inactive.  Esquenet said this in furtherance of her

collusion with Sharp to hide his ulterior political motive and disguise their malicious

intent.  Esquenet knew that it could be fatal to the case if the Court learned the CEO

of tax-exempt NATAS had a politically partisan, for-profit consulting firm that might

be motivating improper decisions.  Esquenet deceived the Court in her effort to help

maliciously and intentionally harm Goodman in violation of NYCL – JUD § 487.

## PRAYER FOR RELEIF

Plaintiff requests that this Court enter judgment in his favor on each claim for relief set

forth above and award him relief including, but not limited to, the following:

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT
BY ATTORNEYS - 23

---

**Deleted:** for

**Deleted:** clearly

**Deleted:** In this case, Plaintiff is the party injured by Defendants' attorney's deceit and seeks treble damages in this instant civil action.

**Deleted:** WHEREFORE,

**Formatted:** Indent: Left:  0.5", First line:  0"

**Deleted:** DEFENDANT'S APPLICATION FOR A SHOW CAUSE HEARING SEEKING TO COMPEL PLAINTIFF TO UNDERGO PSYCHOLOGICAL EVALUATION

A.  An Order declaring that defendant abused civil process by suing a provider of interactive computer services for information provided by another provider, Goodman, and vacating all sanctions and judgements resulting from the abuse.

B.  An Order demanding the Defendants compensate Plaintiff for special damages attributed to the abuse of process including but not limited to legal fees incurred by Goodman in defending the abuse of process and loss of business that resulted from defendants' malicious abuse of process.

C.  An Order declaring false statements by Margaret Esquenet made to the court during litigation and on the public record violated NYCL - JUD § 487 and awarding Plaintiff treble damages for legal fees, loss of recurring revenue from monthly subscribers, loss of business opportunities, damage to reputation and any other relief as determined by the court.

D.  An Order referring these allegations to the IRS for an immediate investigation of Defendants for violating IRC 501(c)(6) and other state and federal laws.

E.  Any further relief as the Court may deem just and appropriate.

Signed this 27th day of February 2022

Respectfully submitted,

_____

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

PROPOSED AMENDED COMPLAINT FOR ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 24