UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON GOODMAN

        *Plaintiff*,

  v.

ADAM SHARP, TERRANCE O'REILLY, FRANK
SCHERMA, MARGARET ESQUENET, THE
NATIONAL ACADEMY OF TELEVISION ARTS
AND SCIENCES, INC., AND ACADEMY OF
TELEVISION ARTS & SCIENCES,

        *Defendants*.

21-cv-10627 (VEC)

-----------------------------------------------------------------------------------------------------------------

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

-----------------------------------------------------------------------------------------------------------------

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

*Attorneys for Defendants Frank Scherma,*
*Margaret Esquenet, and Academy of*
*Television Arts & Sciences*


B. Brett Heavner, Esq. (*pro hac vice*)
Mary Kate Brennan, Esq.
901 New York Avenue NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
b.brett.heavner@finnegan.com
marykate.brennan@finnegan.com

GORDON REES SCULLY MANSUKHANI, LLP

*Attorneys for Defendants Adam Sharp, Terrance*
*O'Reilly, and National Academy of Television Arts*
*& Sciences*


Brian E. Middlebrook, Esq.
John T. Mills, Esq.
One Battery Park Plaza, 28th Floor
New York, New York 10004
Telephone: (212) 269-5500
Facsimile: (212) 269-5505
bmiddlebrook@grsm.com
jtmills@grsm.com

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 2

      A.    The Academies' Infringement Case Against MSD ............................... 2

      B.    Goodman's Frivolous Claims Against Defendants................................ 4

III.  LEGAL STANDARDS ................................................................................. 6

      A.    Standard for Dismissal Under Fed. R. Civ. R. 12(b)(1) For Lack Of
            Subject Matter Jurisdiction ................................................................... 6

      B.    Standard for Dismissal Under Fed. R. Civ. P. 12(b)(1) For Lack Of
            Standing ................................................................................................. 7

      C.    *Noerr-Pennington* Doctrine ................................................................ 8

      D.    Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)........................ 8

IV.   ARGUMENT ................................................................................................ 9

      A.    This Court Lacks Subject Matter Jurisdiction ..................................... 10

            i.    *The Amended Complaint Fails to Assert A Federal Question*................ 10

            ii.   *The Parties Lack Diversity*............................................................ 11

      B.    Goodman Lacks Standing To Bring The Claims Set Forth In His Amended
            Complaint............................................................................................. 13

      C.    The *Noerr-Pennington* Doctrine Bars Goodman's Claims.................. 15

      D.    Goodman's Amended Complaint Fails To State A Claim For Relief ................. 17

            i.    *Collateral Estoppel Bars Goodman's Claims*........................... 17

            ii.   *Goodman's CDA Claim Fails Because The CDA Does Not Provide
                  Immunity For Intellectual Property Claims*.............................. 19

            iii.  *Goodman Fails To State A Claim Under U.S.C. § 501(c)(6)* .................. 20

            iii.  *Goodman Fails To State A Claim Pursuant To Judiciary Law §
                  487*....................................................................................... 21

            iv.   *Goodman Fails To State A Claim Against Sharp, Scherma, Or
                  O'Reilly In Their Individual Capacities* .................................. 22

i

V.      THE AMENDED COMPLAINT LACKS SUFFICIENT FACTS TO
        ESTABLISH PERSONAL JURISDICTION OVER DEFENDANT SCHERMA .......... 23

VI.     DISMISSAL WITH PREJUDICE IS WARRANTED ...................................................... 24

VII.    CONCLUSION ............................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdul Hakim Bey v. United States Legislature*,
 No. 17-CV-7569, 2017 WL 6611052 (S.D.N.Y. Oct. 25, 2017)............................................10

*Academies v. MSD*,
 551 F. Supp. 3d at 418 ........................................................................................ *passim*

*Airlines Reporting Corp. v. S & N Travel, Inc.*,
 58 F.3d 857 (2d Cir. 1995)................................................................................................12

*Al -Ahmed v. Twitter, Inc.*,
 No. 20-CV-4982 (VEC), 2021 WL 3604577 (S.D.N.Y. Aug. 11, 2021) ..............................24

*Allen v. Wright*,
 468 U.S. 737 (1984)..............................................................................................................7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................................................................9, 21

*Atl. Recording Corp. v. Project Playlist, Inc.*,
 603 F. Supp. 2d 690 (S.D.N.Y. 2009)............................................................................19, 20

*Ball v. Metallurgie Hoboken–Overpelt, S.A.*,
 902 F.2d 194 (2d Cir. 1990)...............................................................................................23

*Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*,
 No. 06-cv-2652 (JGK), 2009 WL 884515 (S.D.N.Y. Mar. 31, 2009)...............................8, 16

*Bay Shore Union Free Sch. Dist. v. Kain*,
 485 F.3d 730 (2d Cir. 2007)...............................................................................................10

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*,
 692 F.3d 42 (2d Cir. 2012).................................................................................................12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).........................................................................................................9, 21

*Bell v. Jendell*,
 980 F. Supp. 2d 555 (S.D.N.Y. 2013)....................................................................................9

*Berdeaux v. OneCoin Ltd.*,
 No. 19-CV-4074 (VEC), 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021)...............................23

*Black Lives Matter v. Town of Clarkstown*,
354 F. Supp. 3d 313 (S.D.N.Y. 2018)...................................................................7

*Caidor v. Onondaga Cnty.*,
517 F.3d 601 (2d Cir. 2008)...................................................................9

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)...................................................................8

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)...................................................................7

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chi.*,
93 F.3d 1064 (2d Cir. 1996)...................................................................13

*Cortlandt Street Recovery Corp. v. Hellas Telecomms., S.a.r.l.*,
790 F.3d 411 (2d Cir. 2015)...................................................................7

*Dickerson v. Mut. of Am.*,
703 F. Supp. 2d 283 (S.D.N.Y. 2010)...................................................................21

*DirecTV, Inc. v. Lewis*,
No. 03-cv-6241 (CJS), 2005 WL 1006030 (W.D.N.Y. Apr. 29, 2005)...................................................................16

*Doctor's Associates, Inc. v. Distajo*,
66 F.3d 438 (2d Cir. 1995)...................................................................12

*Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*,
436 F.3d 754 (S.D.N.Y. 2020)...................................................................8, 15, 16

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016)...................................................................20

*EZ Tag Corp. v. Casio Am., Inc.*,
861 F. Supp. 2d 181 (S.D.N.Y. 2012)...................................................................25

*Backer ex rel. Freedman v. Shah*,
788 F.3d 341 (2d Cir. 2015)...................................................................14, 15

*Gibbons v. Malone*,
703 F.3d 595 (2d Cir. 2013)...................................................................9

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)...................................................................2

*Gmurzynska v. Hutton*,
257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004)...................................................................23

iv

*Herrick Co., Inc. v. SCS Commc'ns, Inc.*,
   251 F.3d 315 (2d Cir. 2001)................................................................12

*Herrick v. Grindr LLC*,
   765 F. App'x 586 (2d Cir. 2019) ...........................................11, 19, 20

*Johnson v. Priceline.com, Inc.*,
   711 F.3d 271 (2d Cir. 2013)...................................................................9

*Johnson v. Secure Pawn Shop*,
   No. 19-CV-8832, 2019 WL 6619307 (S.D.N.Y. Dec. 3, 2019), *appeal
   dismissed*, No. 19-4270, 2020 WL 3272971 (2d Cir. May 7, 2020) ......................11

*Keiler v. Harlequin Enters. Ltd.*,
   751 F.3d 64 (2d Cir. 2014).....................................................................9

*Kofinas v. Fifty-Five Corp.*,
   2021 WL 603294 (S.D.N.Y. Feb. 16, 2021) ........................................22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 ........................................................................................24

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................7, 14

*Mahmood v. Rsch. in Motion, Ltd.*,
   905 F. Supp. 2d 498 (S.D.N.Y. 2012)...........................................18, 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)...................................................................23

*Mosha v. Facebook Inc.*,
   No. 20-CV-2608 (JGK), 2021 WL 230180 (S.D.N.Y. Jan. 22, 2021) ...................20

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
   386 F.3d 107 (2d Cir. 2004)....................................................................7

*Nash v. Lee Memorial Health Sys.*,
   2005 WL 2043642 (M.D. Fl. Aug. 25, 2005) .......................................11

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
   No. 20-cv-7269 (VEC) (S.D.N.Y. Sept. 4, 2020) ............................ *passim*

*Orozco v. Fresh Direct, LLC*,
   No. 15-CV-8226 (VEC), 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016).............22

*Phoenix Four, Inc. v. Strategic Rsch. Corp.*,
   446 F. Supp. 2d 205 (S.D.N.Y. 2006)..................................................12

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*,
219 F.3d 92 (2d Cir. 2000) ................................................................16

*Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus.*,
508 U.S. 49 (1993) ...............................................................................8

*PS US LLC v. Moulding*,
No. 21-CV-1049 (VEC), 2021 WL 5597152 (S.D.N.Y. Nov. 30, 2021) ............................6, 7

*Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*,
896 F.2d 674 (2d Cir. 1990) .................................................................8

*Romanella v. Hayward*,
114 F.3d 15 (2d Cir. 1997) .................................................................12

*Ruotolo v. City of N.Y.*,
514 F.3d 184 (2d Cir. 2008) ...............................................................24

*Scherer v. Equitable Life Assurance Soc'y of U.S.*,
347 F.3d 394 (2d Cir. 2003) ...............................................................13

*Starr v. Sony BMG Music Entm't*,
592 F.3d 314 (2d Cir. 2010) ...............................................................21

*Suarez v. Marcus*,
No. 20-CV-11051, 2021 WL 603048 (S.D.N.Y. Feb. 12, 2021) ...............................10

*Sykes v. Bank of Am.*,
723 F.3d 399 (2d Cir. 2013) .................................................................9

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ...............................................................24

*Tongkook Am., Inc. v. Shipton Sportswear Co.*,
14 F.3d 781 (2d Cir. 1994) .................................................................13

*United States v. Vazquez*,
145 F.3d 74 (2d Cir. 1998) ..................................................................7

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,
454 U.S. 464 (1982) ..........................................................................13

*Young Advocs. for Fair Educ. v. Cuomo*,
359 F. Supp. 3d 215 (E.D.N.Y. 2019) ............................................13, 15

**Federal Statutes**

17 U.S.C. § 512(g)(2)(C) ...............................................................................................16

28 U.S.C. § 1291 ...........................................................................................................19

28 U.S.C. § 1331 ...........................................................................................................10

28 U.S.C. § 1332 .....................................................................................................11, 13

U.S. Code § 230 ..................................................................................................... *passim*

U.S. Code § 501 ..................................................................................................... *passim*

**State Statutes**

N.Y. Judiciary Law § 487 ...................................................................................... *passim*

**Rules**

F.R.E. 408 .......................................................................................................................4

Fed. R. Civ. P. 4(e) ....................................................................................................1, 23

Fed. R. Civ. P. 12(b)(1) ..................................................................................................6

Fed. R. Civ. P. 12(b)(2) ............................................................................................2, 23

Fed. R. Civ. P. 12(b)(6) ............................................................................................8, 11

Local Civil Rule 6.3 .......................................................................................................19

## I.    INTRODUCTION

Defendants Adam Sharp, Terrance O'Reilly, Frank Scherma,[1] Margaret Esquenet, The National Academy of Television Arts and Sciences, Inc. ("NATAS"), and Academy of Television Arts & Sciences ("ATAS") (collectively, the "Defendants") jointly and severally move to dismiss all claims against them set forth in the Amended Complaint of Plaintiff Jason Goodman ("Plaintiff" or "Goodman").[2]    Goodman, the sole owner and employee of Multimedia System Design, Inc. d/b/a "Crowdsource the Truth" ("MSD"), filed this frivolous action in retaliation against Defendants because NATAS and ATAS (together, the "Academies") rightfully sought to enforce their intellectual property rights in another case adjudicated before this Court. *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, No. 20-cv-7269 (VEC) (S.D.N.Y. Sept. 4, 2020) ("*Academies v. MSD*").    Although Goodman may be unhappy with the default judgment that was entered against MSD in *Academies v. MSD*, such discontent does not create a viable cause of action against any of the Defendants.

As this Court has held, MSD "traffics in wild conspiracy theories," (*id.*, 551 F. Supp. 3d 408, 417 (S.D.N.Y. 2021)), and Goodman's Amended Complaint is merely another example. Goodman's baseless claims should be dismissed in their entirety for a variety reasons, namely:  (1) this Court lacks subject matter jurisdiction over the matter because the Amended Complaint does not assert any viable federal causes of action and the parties are not diverse;  (2) Goodman has failed to satisfy the requirements of Article III standing, as the Amended Complaint is wholly

---

[1] Defendant Scherma has not been served with the summons or Amended Complaint in a manner compliant with Fed. R. Civ. P. 4(e).  Declaration of Mary Kate Brennan ("Brennan Decl."), ¶ 4.  Goodman also has not requested a waiver of service on behalf of Defendant Scherma.  *Id.*, ¶ 5.  Without waiving any arguments, including personal service and personal jurisdiction (*see supra*), in the interest of judicial economy and efficiency, Defendant Scherma respectfully joins all Defendants in seeking dismissal of the Amended Complaint in its entirety without leave to amend.

[2] It is unclear from the Amended Complaint which causes of action are being asserted against which Defendants. Solely for the purposes of this Motion, Defendants assume that each cause of action is asserted against each Defendant.

devoid of any allegation that Goodman suffered any concrete harm or injury in fact; (3) the *Noerr-Pennington* doctrine precludes Goodman's claims; and (4) Goodman has failed to allege specific facts showing a plausible basis for relief against any Defendant.   Moreover, Goodman has also failed to plead sufficient facts that this Court may exercise personal jurisdiction over Defendant Scherma under Fed. R. Civ. P. 12(b)(2).   For the following reasons, Defendants respectfully request that the Amended Complaint be dismissed with prejudice and without leave to amend.

## II.   STATEMENT OF FACTS

### A.   The Academies' Infringement Case Against MSD

As acknowledged by Goodman in his Amended Complaint, he is the sole owner of MSD. Amended Complaint (Dkt. 41), ¶ 13.  In September 2020, the Academies sued MSD in response to its infringing use of an image depicting the Academies' EMMY Statuette.  *Academies v. MSD*, Academies' Complaint (Dkt 1).[3]  On or about June 12, 2020, two weeks before the Daytime EMMY Awards Show aired on CBS, MSD posted its own award show—entitled "Crony Awards"—on YouTube and other platforms.  *Id.*, ¶ 29.  The show honored countries that refused to lock down and/or otherwise minimized the COVID-19 pandemic.  *Id.*  To market its "Crony Awards" show via social media, MSD, without authorization, created and used an image depicting the EMMY Statuette's winged figure but replaced the Statuette's atom with a depiction of the SARS-CoV-2 virus, as illustrated by the CDC (the "Infringing Image").  *Id.*, ¶ 30.

The Academies exercised their rights under the Digital Millennium Copyright Act ("DMCA") by issuing a copyright violation notice to YouTube to regarding the Infringing Image. *Id.*, ¶ 34.  MSD responded by filing a DMCA counter notification and refused to withdraw it,

---

[3] The Court may take judicial notice of the pleadings filed in *Academies v. MSD* to establish the fact of such litigation and filings.  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quotations omitted).

which would compel YouTube to reinstate the Infringing Image.  *Id.*, ¶ 40.  Accordingly, the Academies filed suit to protect their copyright and trademark rights.  *Id.*, ¶¶ 36-44.

In response, MSD filed a partial motion to dismiss, answer, and counterclaims.  *Academies v. MSD*, MSD's Motion to Dismiss (Dkt. 11) and MSD's Answer and Counterclaims (Dkt. 12).  Eventually, MSD filed an amended answer and counterclaims for tortious interference, declaratory judgment, anti-SLAPP, malicious prosecution/abuse of process, and misrepresentation of infringement.  *Id.*, MSD's Amended Answer and Counterclaims (Dkt. 45).  The Academies then moved to dismiss and/or strike MSD's counterclaims.  *Id.*, Academies' Motion to Dismiss (Dkt. 46).  The Court denied MSD's partial motion to dismiss, holding that the Academies were entitled to enforce their copyright and trademark rights against MSD.  *Academies v. MSD*, 551 F. Supp. 3d at 418.

Shortly thereafter, MSD's counsel withdrew from representing MSD.  *Academies v. MSD*, Motion to Withdraw and Order Granting Motion (Dkts. 100 and 103).  Despite numerous opportunities to do so, MSD did not engage new counsel as Ordered by this Court.  *Id.*, Order to Show Cause (Dkt. 131) and November 14, 2021 Memo Endorsement (Dkt. 134).  In response, MSD's owner, Goodman, filed a motion for leave to intervene on February 3, 2022.  *Id.*, Notice of Motion to Intervene (Dkt. 148).  On February 4, 2022, the Court denied Goodman's motion, holding that "his interests are already adequately represented in the suit" and MSD's "inability now to retain counsel does not alter that fact."  *Id.*, Memo Endorsement Denying Motion to Intervene (Dkt. 151), p. 16.  On February 22, 2022, the Court issued an order entering final default judgment and permanent injunction against MSD and awarding the Academies attorneys' fees and costs.  *Id.*, Default Judgment Order (Dkt. 157).

**B.      Goodman's Frivolous Claims Against Defendants**

On or about December 5, 2021, with the possibility of a default judgement being entered against MSD, Goodman sent a *quid pro quo* letter to Defendant O'Reilly, a member of the Board of NATAS.  Brennan Decl., ¶ 2, Ex. A.  In sum, Goodman threatened that if the Academies did not withdraw their lawsuit against MSD, Goodman would file a lawsuit against Defendants.  *Id*. Thereafter, on December 9, 2021, Goodman emailed Defendant Esquenet and reiterated his threat that if the Academies did not withdraw their lawsuit against MSD, he would file a lawsuit against Defendants.[4]  *Id.*, ¶ 3, Ex. B.

Not receiving a favorable response, and in anticipation of entry of default judgment against MSD in *Academies v. MSD* (discussed *supra*), on December 13, 2021, Goodman filed his Complaint in this action.  Complaint (Dkt. 1).  Thereafter, Goodman contacted Defendant Scherma, Chairman and CEO of ATAS, threatening to also name him as a defendant.  On February 18, 2022, Defendants moved to dismiss Goodman's Complaint.  (Dkt. 23.)  After superfluous motion practice (*see* Memo Endorsement (Dkt. 37)), Goodman filed an Amended Complaint on March 15, 2022.  In addition to amending his causes of action, Goodman also named Defendant Scherma.

Although Goodman acknowledges that the Academies' actions against MSD were legitimate (*see* Amended Complaint, ¶ 47 ("Plaintiff does not deny Sharp was within his rights to file a claim. . . .")), the Amended Complaint is merely a frivolous attempt by Goodman to reopen *Academies v. MSD*, where default was entered against MSD.  *Academies v. MSD*, Default Judgment Order (Dkt. 157); *see also* Amended Complaint, ¶¶ 3-12, 67-68.  In addition to asserting

---

[4] To the extent (if at all) Defendants' discussion may implicate F.R.E. 408, Defendants are compelled to do so because of Goodman's extensive (and factually inaccurate) discussion in his Complaint.  Amended Complaint, ¶¶ 32, 55-56.

allegations wholly unrelated to his claims against Defendants (*see* Amended Complaint, ¶¶ 25-26, 37-45, 69-72), Goodman challenges Defendants' actions in connection with the filing and prosecution of the *Academies v. MSD* litigation.  *See id.*, ¶¶ 3-4, 46-56; 67-68.  Goodman's inappropriate attempt to relitigate *Academies v. MSD* through this case is highlighted by his recent filing of a Motion Complying With Order 156 and Seeking Clarification from the Court and an Extension of Time to File Certification ("Motion for Clarification") (Dkt. 45).  In sum, Goodman objected to this Court's order issued in *Academies v. MSD* sanctioning him for violating the protective order in that case (*Academies v. MSD*, Sanctions Order (Dkt. 156)).  *Id.*  Goodman also improperly seeks to relitigate the Sanctions Order through his Amended Complaint.  Amended Complaint, ¶¶ 9, 57-60.  In ruling on Goodman's Motion for Clarification, this Court held, "Goodman's request for clarification of an order issued in another case is inappropriate here." Memo Endorsement (Dkt. 46).  Indeed, Goodman's entire action against Defendants is inappropriate.

For myriad reasons, Goodman's Amended Complaint must be dismissed with prejudice and without leave to amend.  Foremost, this Court lacks subject matter jurisdiction over the claims asserted in the Amended Complaint.  First, the Amended Complaint fails to specify how this Court has subject matter jurisdiction over Goodman's claims.  This is unsurprising because Goodman cannot do so—there is no federal question before the Court, the parties are not diverse, and, even assuming the parties were diverse, the amount in controversy is jurisdictionally insufficient. Second, Goodman lacks standing to bring this lawsuit because the Amended Complaint is wholly devoid of any allegation that he suffered any concrete harm or injury in fact.

Even if the Court had subject matter jurisdiction over this matter (which it does not), none of Goodman's causes of action against any Defendant could survive this motion to dismiss.

Goodman's first cause of action, brought under the Communications Decency Act ("CDA"), must be dismissed because even if it could be brought as an affirmative claim (which it cannot, *see infra* at p. 19), the grant of immunity under the CDA does not provide immunity for intellectual property claims. 47 U.S.C. § 230(e)(2). Goodman's second cause of action fails to state a claim for relief because 56 U.S.C. § 501(c)(6) merely provides a list of tax-exempt organizations and does not give rise to a cause of action (*see infra* at p. 20). Goodman's third cause of action seeks treble damages under N.Y. Judiciary Law § 487 even though Goodman has not plausibly alleged any damage whatsoever. *Id.*, ¶ 65. As detailed below, all three fatally flawed claims should be dismissed.

Further, the Amended Complaint must be dismissed against all of the individual defendants at least because they were not acting in their personal capacities but as representatives of their respective organizations. Moreover, Goodman fails to adequately plead that the Court has personal jurisdiction over Defendant Scherma.

In sum, for several separate and independent reasons, as discussed more fully herein, Defendants respectfully urge the court to dismiss the Amended Complaint in its entirety with prejudice and without leave to amend.

## III.   LEGAL STANDARDS

### A.   Standard for Dismissal Under Fed. R. Civ. R. 12(b)(1) For Lack Of Subject Matter Jurisdiction

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and moves to dismiss on other grounds as well, the Court must generally consider the Rule 12(b)(1) motion first." *PS US LLC v. Moulding*, No. 21-CV-1049 (VEC), 2021 WL 5597152, at *1 (S.D.N.Y. Nov. 30, 2021) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

A facial Fed. R. Civ. P. 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  To resolve a facial Fed. R. Civ. P. 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction.  *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  In reviewing a Fed. R. Civ. P. 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); *see also PS US LLC*, 2021 WL 5597152, at *1 ("[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn." (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

## B.     Standard for Dismissal Under Fed. R. Civ. P. 12(b)(1) For Lack Of Standing

Standing derives from the case-or-controversy requirement of Article III.  *Allen v. Wright*, 468 U.S. 737, 750–51 (1984).  Because a plaintiff's standing goes to the subject matter jurisdiction of the court, the appropriate vehicle to dismiss a cause of action for lack of standing is Fed. R. Civ. P. 12(b)(1).  *See Cortlandt Street Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–417 (2d Cir. 2015).

Standing to bring suit in federal court under Article III is an "irreducible constitutional minimum" consisting of three elements:  1) injury in fact, 2) causation, and 3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  To maintain a lawsuit, a plaintiff must satisfy each of the elements of the standing inquiry, or the court lacks subject matter jurisdiction. *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313 (S.D.N.Y. 2018).  Where standing is challenged at the pleadings stage, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *United States v.*

*Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (internal quotation marks omitted).  The Second Circuit requires that district courts consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal.  *See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

###   C.      *Noerr-Pennington* Doctrine

The First Amendment guarantees "the right of the people . . . to petition the Government for redress of grievances."  U.S. CONST. amend. I.  This right to petition—*i.e.*, *Noerr-Pennington* immunity—extends to protect a party's right to access the courts.  *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).  Although originally developed in the antitrust context, courts now apply the *Noerr-Pennington* doctrine more broadly.  *See Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc*., No. 06-cv-2652 (JGK), 2009 WL 884515, at *6 (S.D.N.Y. Mar. 31, 2009) ("The doctrine has also been extended to areas outside of the antitrust arena, and has specifically been held to immunize trademark holders from liability for, *inter alia,* sending pre-litigation demand letters and filing lawsuits.").  Good faith litigation to protect a valid copyright falls within the protection of the *Noerr-Pennington* doctrine.  *Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*, 436 F.3d 754 (S.D.N.Y. 2020); *see also Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 63–66 (1993) (holding an action to protect a valid copyright falls within the protection of the *Noerr-Pennington* doctrine).  Courts also have held that the doctrine bars claims brought under Judiciary Law § 487.  *See*, *e.g.*, *Louie's Seafood Rest., LLC v. Brown*, 199 A.D.3d 790, 793, 157 N.Y.S.3d 509, 512 (2d Dep't 2021) (holding that the *Noerr– Pennington* doctrine applied to a Section 487 claim).

###   D.      Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."

*Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).   A complaint need not "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).   On a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff.   *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).   "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.   A court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Where, as here, a plaintiff proceeds *pro se*, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).   However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law."   *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

## IV.   ARGUMENT

For the reasons and under the authorities detailed herein, the Amended Complaint should be dismissed its entirety. Because any further attempts to amend the complaint would be futile, Defendants also respectfully request that the Amended Complaint be dismissed with prejudice and without leave to amend.

## A.        This Court Lacks Subject Matter Jurisdiction

As aforementioned, the Amended Complaint fails to sufficiently set forth how this Court has subject matter jurisdiction over the claims asserted in it.  Although Goodman makes the conclusory statement that "[t]his Court has subject matter jurisdiction over this action pursuant to 47 U.S. Code § 230, 26 U.S. Code § 501 and New York Judiciary Law - JUD § 487" (Amended Complaint, ¶ 20), this Court lacks subject matter jurisdiction over the case because the Amended Complaint does not involve a federal question, the parties are not diverse, and it fails to satisfy the $75,000 amount-in-controversy threshold.  *See generally id.*

### i.        The Amended Complaint Fails To Assert A Federal Question

To invoke the Court's federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  An action arises under federal law if the cause of action "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734–35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (internal quotation marks omitted)).  Importantly, "[m]ere invocation of federal-question jurisdiction, without any facts demonstrating a federal-law claim, does not create federal-question jurisdiction." *Suarez v. Marcus*, No. 20-CV-11051, 2021 WL 603048, at *2 (S.D.N.Y. Feb. 12, 2021) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188–89 (2d Cir. 1996)).

Here, the Amended Complaints fails to allege any facts "suggesting that federal question jurisdiction is proper." *Abdul Hakim Bey v. United States Legislature*, No. 17-CV-7569, 2017 WL 6611052, at *2 (S.D.N.Y. Oct. 25, 2017) (citation omitted).  Although Goodman attempts to assert

claims under 47 U.S.C. § 230 and 26 U.S.C. § 501(c)(6), neither creates a viable cause of action.[5]

First, Section 230 could only serve as an affirmative defense (which it cannot here), not a cause of action. *See*, *e.g.*, *Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir. 2019) (discussing how Section 230 provides immunity to service providers from certain causes of action). Second, Section 501(c) simply provides a list of tax-exempt organizations. It also does not provide a cause of action. *See*, *e.g.*, *Nash v. Lee Memorial Health Sys.*, 2005 WL 2043642, at *5 (M.D. Fl. Aug. 25, 2005) (holding that "Plaintiff's claims in relation to Section 501(c)(3) must fail" because Section 501(c)(3), like Section 501(c)(6), "merely lists the requirements an entity must satisfy in order to qualify for tax-exempt status" and does not "create private contractual or vested rights. (internal citation omitted)). Therefore, the Court lacks federal question jurisdiction. *See Johnson v. Secure Pawn Shop*, No. 19-CV-8832, 2019 WL 6619307, at *2 (S.D.N.Y. Dec. 3, 2019) ("[The] [p]laintiff invokes the Court's federal-question jurisdiction. . . . Those allegations do not suggest any claim arising under federal law. [The] [p]laintiff therefore cannot invoke federal-question jurisdiction."), *appeal dismissed*, No. 19-4270, 2020 WL 3272971 (2d Cir. May 7, 2020).

## ii. The Parties Lack Diversity

With respect to any state law claims that may be referenced in the Amended Complaint (such as N.Y. Judiciary Law § 487), the Court lacks subject matter jurisdiction over these claims because there is not complete diversity among the parties' citizenship. A federal court may exercise diversity jurisdiction over a civil action between citizens of different states where the amount-in-controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). Under Section 1332, "diversity jurisdiction exists over civil actions (1) between 'citizens of different States' and

---

[5] Although Defendants respectfully submit that the Amended Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, in the event the Court finds subject matter jurisdiction, these causes of actions must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (*see infra*).

(2) between 'citizens of a State and citizens or subjects of a foreign state.'" *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (quoting 28 U.S.C. § 1332). Diversity jurisdiction "is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Id.* "Therefore, in a case with multiple defendants, if a single defendant is from the same state as the plaintiff, the district court loses diversity jurisdiction over the entire action." *Phoenix Four, Inc. v. Strategic Rsch. Corp.*, 446 F. Supp. 2d 205, 212 (S.D.N.Y. 2006) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005)). Courts are to "strictly construe the diversity statute." *Romanella v. Hayward*, 114 F.3d 15, 16 (2d Cir. 1997) (citing *Healy v. Ratta*, 292 U.S. 263 (1934)).

Here, Goodman concedes the parties are not diverse. Goodman pleaded that he is a New York citizen. Amended Complaint, ¶ 13. He also pleaded that NATAS "is a New York 501(c)(6) not-for-profit corporation." *Id.*, ¶ 17. NATAS is a corporation, "and courts treat corporations as entities having the status of citizens." *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 861 (2d Cir. 1995). For diversity purposes, a corporation "is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). Here, NATAS is a New York not-for-profit corporation with its principal place of business in New York City. Amended Complaint, ¶ 17. NATAS is therefore a New York citizen for diversity purposes. *Bayerische Landesbank*, 692 F.3d at 48. Accordingly, there is no diversity jurisdiction. *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show 'complete diversity' – that is, that it does not share citizenship with any defendant.").

Although the Court need not reach the next point, Goodman also failed to plead that the amount-in-controversy exceeds the sum or value of $75,000. *See generally* Amended Complaint. Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, . . . between . . . citizens of different States." 28 U.S.C. § 1332(a). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). Here, the Amended Complaint is silent on the amount-in-controversy.[6] *See generally* Amended Complaint. It must therefore be dismissed.

## B.     Goodman Lacks Standing To Bring The Claims Set Forth In His Amended Complaint

The standing requirement "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Accordingly, standing is not measured by the intensity of the litigant's interest or the fervor of his or her advocacy, nor can it be asserted based on mere setback to the plaintiff's interests. *See Young Advocs. for Fair Educ. v. Cuomo*, 359 F. Supp. 3d 215 (E.D.N.Y. 2019). If a litigant, like Goodman, cannot satisfy the first element necessary to establish standing—injury in fact—let

---

[6] To the extent the Amended Complaint vaguely references "damages," Defendants have demonstrated "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold" (*Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)) because the Amended Complaint is wholly devoid of any allegation that Goodman suffered any concrete harm or injury in fact (*see infra*). Rather, the "legal impossibility of recovery" here is "so certain as to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (quoting *Tongkook*, 14 F.3d at 785) (alteration in original).

alone the subsequent two elements, the case must be dismissed.  *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 343 (2d Cir. 2015).

For the purposes of standing, an injury cannot be "conjectural" or "hypothetical."  *Lujan*, 504 U.S. at 560.  Goodman, however, pleads nothing more than imaginary injuries.  In his Amended Complaint, Goodman speculates that the Academies filed their lawsuit against MSD to "block [him] from broadcasting during the 2020 U.S. Presidential election, damage his business, and destroy his public reputation for their own unjust financial and political enrichment." Amended Complaint, ¶ 6.  Goodman also baldly alleges that "Defendants had an ulterior motive to disrupt Plaintiff's business operations and force him to stop broadcasts of news, information, opinion, parody, and other first amendment protected activity."  *Id.*, ¶ 12.  But Goodman fails to plead any facts in support of his meritless conclusion; rather, unambiguously, the Academies sued MSD because of its harmful use of the Infringing Image.  As sole owner and employee of MSD, Goodman conceded the purpose of the Academies' lawsuit in MSD's dismissal arguments. *Academies v. MSD*, 551 F. Supp. 3d at 420 (MSD "does not dispute that the Television Academies have valid copyrights for the Emmy Statuette or that [it] copied the Emmy Statuette," however, it argued that its use was not infringing . . .).  Goodman's disingenuous mischaracterization of the *Academies v. MSD* matter in the Amended Complaint fails to establish "a concrete and particularized invasion of a legally protected interest."  *Backer*, 788 F.3d at 343.

Moreover, Goodman also alleges that the Academies' decision to enforce their rights against the Infringing Image and bring suit against MSD rather than seek "rapid, no cost settlement harms taxpayers whose funds subsidize the activities of the Defendants."  Amended Complaint, ¶ 67; *see also id.*, ¶ 68 (alleging that Defendants have violated their mandate of promoting development and leadership in the broadcast television industry).  Goodman, however, as sole

14

owner and employee of MSD with no connection to the Academies or other Defendants whatsoever, cannot plausibly allege any injury as a result of this conduct.  Rather, a plain reading of the Amended Complaint makes clear that the "injuries" Goodman alleges are nothing more than a "mere setback to [his] interests," which is insufficient to confer standing.  *See Young Advocs. for Fair Educ.*, 359 F. Supp. 3d at 215.  It is evident that Goodman has failed to allege any injury I fact, and the Amended Complaint must be dismissed in its entirety on this basis alone.

Although the Court need not continue its standing analysis, even if Goodman had properly pleaded an injury in fact (which he did not), he also failed to establish the second prong—"a causal connection between the invasion and the alleged injury."  *Backer*, 788 F.3d at 343.  Goodman's Amended Complaint does not, because it cannot, connect the Academies' efforts to enforce their intellectual property rights with his unsubstantiated claims of coercive attempts to stop him from broadcasting entirely.  *See* Amended Complaint, ¶¶ 6, 47, 62.  Rather, the Academies' lawsuit specifically sought redress from MSD's unlawful use of the Infringing Image.  Because there is no injury in fact and no causation, it would be impossible for Goodman to be "redressed by a favorable decision," and thus he fails to establish the third prong necessary for standing.  *Backer*, 788 F.3d at 343.  Accordingly, the Court should dismiss Goodman's Amended Complaint in its entirety.

### C.    The *Noerr-Pennington* Doctrine Bars Goodman's Claims

In the event that this Court should find that Goodman has standing to bring suit against Defendants (which he does not), the Amended Complaint still must be dismissed because it centers on prelitigation and litigation activities in the *Academies v. MSD* matter which are protected by the *Noerr-Pennington* doctrine.  First, the doctrine applies not just to filed infringement claims, but also to prelitigation activities such as "threat letters."  *Downtown Music Publ'g LLC*, 436 F.3d at 762–63.  Here, the Academies' DMCA takedown notice to YouTube is not only a prelitigation activity, but the direct antecedent to the Academies' lawsuit against MSD, which was filed to

enforce the DMCA takedown notice pursuant to 17 U.S.C. § 512(g)(2)(C) (requiring copyright owner to "file[] an action seeking a court order to restrain the subscriber from engaging in infringing activity" to avoid reposting).   Accordingly, the Academies prelitigation conduct in serving the DMCA takedown notice is protected by the *Noerr-Pennington* doctrine.   *Downtown Music Publ'g LLC*, 436 F.3d at 762–63; *Barbarian Rugby Wear, Inc.* 2009 WL 884515, at *3; *DirecTV, Inc. v. Lewis*, No. 03-cv-6241 (CJS), 2005 WL 1006030, at *5 (W.D.N.Y. Apr. 29, 2005) (granting Rule 12 motion to dismiss where "[t]he Court finds that prelitigation activities, such as those engaged in here, are protected by the *Noerr-Pennington* doctrine.").

The Academies' litigation against MSD also is protected by the *Noerr-Pennington* doctrine and no exceptions apply.   First, the Academies' suit against MSD is not a "sham" litigation because it is not objectively baseless or an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process, as opposed to the outcome of that process, as an anticompetitive weapon. *Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 100– 01 (2d Cir. 2000).   This Court's refusal to dismiss the Academies' lawsuit confirms the legitimacy of the Academies' intellectual property infringement case against MSD.   *Academies v. MSD*, 551 F. Supp. 3d at 429.   To the contrary, however, this Court's dismissal of MSD's counterclaims against the Academies reveals that the instant litigation, rather than the Academies' litigation against MSD, is a "sham" litigation. *See id.*

Second, the Academies' suit against MSD is not subject to the "corruption" exception, "which applies only where a party has stepped beyond the bounds of zealous advocacy and engages in conduct alleged to be criminal, not just deceptive or unethical." *Louie's Seafood Rest.*, 157 N.Y.S.3d at 512.   While Goodman asserts that Defendants engaged in an elaborate scheme adverse to a tax-exempt entity, nothing could be further from the truth.   As stated by this Court:

16

> In June 2020, MSDI used an image of the Emmy Award Statuette holding a model of the COVID-19 virus as part of a video honoring countries that downplayed the seriousness of the COVID-19 pandemic. Plaintiffs, The National Academy of Television Arts and Sciences, Inc. ("NATAS") and Academy of Television Arts & Sciences ("ATAS") (collectively, the "Television Academies"), owners of the Emmy Statuette design, took exception and sued.

*Academies v. MSD*, 551 F. Supp. 3d at 417.  Because the *Noerr-Pennington* doctrine applies and neither of its exceptions do, Goodman's Amended Complaint should be dismissed in its entirety.

### D.    Goodman's Amended Complaint Fails To State A Claim For Relief

The Amended Complaint is also subject to dismissal because it fails to allege sufficient facts for the Court to determine whether some recognized legal theory exists on which relief could be awarded.   Guised as a "civil action for abuse of process . . . unjust enrichment . . . and misconduct by attorneys," Goodman's Amended Complaint (to the extent comprehensible) postures that the Academies (and by extension the other Defendants) should not have sued MSD regarding the Infringing Image.   Amended Complaint, ¶¶ 2-4, 64, 67-68.   This argument contravenes this Court's rulings in *Academies v. MSD* confirming the legitimacy of the Academies' litigation.[7]  Not only did this Court deny MSD's partial motion to dismiss and grant the Academies' motion to dismiss MSD's counterclaims (*Academies v. MSD*, 551 F. Supp. 3d 408), it refused to permit Goodman to intervene in that lawsuit.   *Academies v. MSD*, Memo Endorsement Denying Motion to Intervene.

### i.    *Collateral Estoppel Bars Goodman's Claims*

The doctrine of collateral estoppel bars Goodman's claims in their entirety and warrants dismissal of the Amended Complaint for failure to state a claim.  As set forth above, in *Academies*

---

[7] Regarding the Academies' copyright claims, this Court held that "Defendant's motion to dismiss Plaintiffs' copyright infringement claim is denied because Defendant's use was not, as a matter of law, either *de minimis* or fair use." *Academies v. MSD*, 551 F. Supp. 3d at 425.  This Court also denied MSD's motion to dismiss the Academies' trademark claims, holding that "considering the eight *Polaroid* factors together, the Court concludes that Plaintiffs have plausibly alleged a probability of confusion." *Id.* at 429.

*v. MSD*, this Court granted the Academies' motion and dismissed MSD's counterclaims, finding that MSD believed "the best defense is a poorly thought out offense." *Academies v. MSD*, 551 F. Supp. 3d at 417.   Moreover, this Court denied Goodman leave to intervene in that action and entered default judgment against MSD.   Without merit, Goodman has brought a separate suit seeking to relitigate his defenses to the claims asserted against MSD and evade dismissal of MSD's counterclaims.

"To be barred by collateral estoppel, an issue must be identical with one actually litigated, actually decided, and necessary to the holding in a previous action." *Mahmood v. Rsch. in Motion, Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002)).   A central inquiry into whether the doctrine applies is whether the party against whom collateral estoppel is asserted seeks to relitigate an issue decided in a previous action, or argues that the issue should have a different result.   *Id.*   Such is the case here.   A plain reading of the Amended Complaint makes clear that Goodman does nothing more than seek to relitigate MSD's defenses and counterclaims which were previously rejected by this Court. *Academies v. MSD*, 551 F. Supp. 3d 408; *see*, *e.g.*, Amended Complaint ¶¶ 12, 55, 64, 68 (attempting to relitigate MSD's failed parody defense, yet this Court has already held that MSD's argument that "its use of the Emmy Statuette constitutes parody is unavailing." *Academies v. MSD*, 551 F. Supp. 3d at 423).

While Goodman attempts to artfully plead the Amended Complaint here to achieve a different result, it is clear that the issues for which Goodman seeks adjudication herein are "identical" to those that were resolved in the *Academies v. MSD* litigation.   Procedurally, Goodman cannot overturn this Court's rulings (1) denying MSD's motion to dismiss, (2) entering default judgment against MSD, and (3) issuing the Sanctions Order against Goodman, by filing a new

lawsuit.  Had MSD wished to contest the Court's findings, it should have brought a timely motion to reconsider under Local Civil Rule 6.3 or take an appeal from a final judgment in that case.[8]  28 U.S.C. § 1291.  Thus, the Amended Complaint fails to state a claim because it is barred by the doctrine of collateral estoppel.  *Mahmood*, 905 F. Supp. 2d at 502.

ii. *Goodman's CDA Claim Fails Because The CDA Does Not Provide Immunity For Intellectual Property Claims*

Goodman's first cause of action is brought under 47 U.S.C. § 230, the CDA.  To the extent intelligible, Goodman asserts that Section 230 of the CDA immunizes the MSD from the claims brought by the Academies.  Amended Complaint, ¶ 80.  First, if MSD had wished to make this argument, it should have done so at the appropriate time in *Academies v. MSD*, not here.  Thus, MSD waived this argument a long time ago.  Second, Goodman fundamentally misconstrues the law.

"Congress enacted the CDA . . . primarily to protect minors from exposure to obscene and indecent material on the Internet."  *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 699 (S.D.N.Y. 2009).  Yet, Congress was concerned about not impeding the Internet's development and "made the legislative judgment to effectively immunize providers of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others."  *Id.* (internal citation omitted).  Three requirements must be met for immunity: "(1) the defendant must be 'a provider or user of an interactive computer service'; (2) 'the claim is based on information provided by another information content provider' and (3) 'the claim would treat the defendant as the publisher or speaker of that information.'"  *Herrick*, 765 F. App'x at 589 (quoting *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016)).  The Academies' claims against MSD in *Academies v. MSD* were based on content created by MSD

---

[8] Goodman filed a notice of appeal on March 20, 2022 (Dkt. 158).

and Goodman, not another "information content provider." *Id*. Thus, MSD fails to meet the second requirement to qualify for immunity under Section 230.

Even if MSD qualifies for immunity (which it does not), Goodman fails to recognize that Section 230(e)(2) provides an intellectual property claim carve-out. 47 U.S.C. § 230(e)(2) ("No effect on intellectual property law. Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."). Stated simply, "Section 230(c)(1) does not provide immunity for either federal or state intellectual property claims." *Atl. Recording Corp.*, 603 F. Supp. 2d at 704. Here, the Academies' claims against MSD were grounded in intellectual property law and therefore do not implicate Section 230 immunity. *Id.*; *see also Mosha v. Facebook Inc.*, No. 20-CV-2608 (JGK), 2021 WL 230180, at *3 (S.D.N.Y. Jan. 22, 2021) (holding that a plaintiff "can bring a copyright claim unimpeded by the CDA"); *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 273 (S.D.N.Y. 2016) (holding that Section 230(e)(2) precludes immunity from Lanham Act claims). Goodman's first claim therefore fails as a matter of law.

### iii.    *Goodman Fails To State A Claim Under U.S.C. § 501(c)(6)*

Next, Goodman attempts to articulate a claim under U.S.C. § 501(c)(6). Yet, Section 501(c)(6) of the Internal Revenue Code merely provides for tax exemption of business leagues, chambers of commerce, real estate boards, boards of trade and professional football leagues, which are not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual. *See* U.S.C. § 501(c)(6); *IRS*, *Business Leagues*, https://www.irs.gov/charities-non-profits/other-non-profits/business-leagues. It does not create a cause of action. Thus, Goodman's second claim for relief must be dismissed against all Defendants because it fails to state a claim. *See Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 290 (S.D.N.Y. 2010) ("Notwithstanding the deference accorded to *pro se* plaintiffs, they remain subject to the

20

general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*.").

### iii.   Goodman Fails To State A Claim Pursuant To Judiciary Law § 487

Similarly, Goodman's assertion of New York's Judiciary Law § 487 is unavailing. Section 487 imposes civil and criminal liability on any attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Judiciary Law § 487. To establish liability under Section 487, the plaintiff must show that the defendant acted with intent to deceive him or her or the court. *See Gillen v. McCarron*, 126 A.D.3d 670, 671, 6 N.Y.S.3d 253 (2d Dep't 2015); *Cullin v. Spiess*, 122 A.D.3d 792, 793, 997 N.Y.S.2d 460 (2d Dep't 2014); *Dupree v. Voorhees*, 102 A.D.3d 912, 913, 959 N.Y.S.2d 235 (2d Dep't 2013). "Allegations regarding an act of deceit or intent to deceive must be stated with particularity." *Palmieri v. Perry, Van Etten, Rozanski & Primavera, LLP*, 200 A.D.3d 785, 787 (2d Dep't 2021) (internal citation omitted).

Here, Goodman's conclusory allegations are insufficient to state a cause of action alleging a violation of Judiciary Law § 487 by any Defendants and must be dismissed. *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 179, 149 N.E.3d 888, 892 (2020) (entering judgment as a matter of law for defendants on a Judiciary Law § 487(1) claim where plaintiffs failed to allege that defendants engaged in deceit or collusion during a prior intellectual property lawsuit.). While Goodman has sprinkled the words "deceit" and "collusion" throughout the Amended Complaint, such conclusory statements are insufficient to meet the pleading standard. *See Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions."); *Orozco v. Fresh Direct, LLC*, No. 15-CV-8226 (VEC), 2016 WL 5416510, at *2 (S.D.N.Y. Sept. 27, 2016) (citing *Iqbal*, 556 U.S. at 678) ("Although for the purposes of a motion to dismiss we must take all of the factual

21

allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").   The only allegation that Goodman asserts to support his claim under Judiciary Law § 487 is that Defendant Esquenet "deceived the court when she said on the record that Sharp's privately-owned for-profit company was inactive."  Amended Complaint, ¶ 89.  That naked assertion is insufficient to demonstrate that any of the Defendants engaged in any deceit or collusion.   Therefore, Goodman's insufficiently pled claim brought under Section 487 must be dismissed.

> **iv.** **Goodman Fails To State A Claim Against Sharp, Scherma, Or O'Reilly In Their Individual Capacities**

Goodman's Amended Complaint also fails to state a claim against Defendant Sharp (President of NATAS), Defendant Scherma (Chairman and CEO of ATAS), or Defendant O'Reilly (Board Chair of NATAS) in their individual capacities.  *See* Amended Complaint, ¶¶ 14-16.  While the allegations made against all Defendants are entirely unclear and subject to dismissal for the reasons set forth above, the Amended Complaint is devoid of any allegation that Defendants Sharp, Scherma, or O'Reilly engaged in any conduct that is beyond the scope of their duties and responsibilities as President of NATAS, Chairman and CEO of ATAS, and Board Chair of NATAS, respectively.  *See Kofinas v. Fifty-Five Corp.*, 2021 WL 603294, at *7 (S.D.N.Y. Feb. 16, 2021) (citing *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 50 (1st Dep't 2012)) ("New York principles of corporate liability shield the Board Members from liability, absent allegations of tortious conduct independent of the Board Members' actions *qua* Board Members.").  Indeed, such an allegation would be entirely implausible, as the gravamen of Goodman's Amended Complaint is the Academies' decision to bring suit and enforce the Academies' rights against the Infringing Image, not Defendants Sharp, Scherma, or O'Reilly's rights.  Goodman's decision to bring suit against Defendants Sharp, Scherma, and O'Reilly, in addition to being a clear attempt at

harassment (*see* Brennan Decl., ¶ 2, Ex. A), fails entirely and, at a minimum, the Amended Complaint must be dismissed against Defendants Sharp, Scherma, and O'Reilly in their individual capacities.

## V.   THE AMENDED COMPLAINT LACKS SUFFICIENT FACTS TO ESTABLISH PERSONAL JURISDICTION OVER DEFENDANT SCHERMA

As aforementioned, Defendant Scherma has not been served with the summons or Amended Complaint in a manner compliant with Fed. R. Civ. P. 4(e).  Brennan Decl., ¶¶ 4, 5. Although unnecessary at this time, to avoid a potential argument that Defendant Scherma waived his right to object to the court's exercise of personal jurisdiction, he respectfully submits that Goodman's Amended Complaint should be dismissed against him under Fed. R. Civ. P. 12(b)(2).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  Before discovery, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists, based upon allegations of fact which will be taken as true.  *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).   "However, conclusory allegations are not enough to establish personal jurisdiction." *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (internal quotation marks omitted), *aff'd*, 355 F.3d 206 (2d Cir. 2004); *see also Berdeaux v. OneCoin Ltd.*, No. 19-CV-4074 (VEC), 2021 WL 4267693, at *5 (S.D.N.Y. Sept. 20, 2021) (stating that a *prima facie* showing of jurisdiction "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010))).

Even construing the pleadings in the light most favorable to Goodman, the Amended Complaint fails to properly allege that this Court has personal jurisdiction over Defendant

Scherma.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir.

2013).  Goodman correctly acknowledged that Defendant Scherma is "a California citizen" in

paragraph 16 of the Amended Complaint and failed to identify any contacts whatsoever between

Defendant Scherma and New York.  Goodman's collective and conclusory allegation that

"Defendants are domiciled in this district" is manifestly insufficient for the Court to exercise

personal jurisdiction over Defendant Scherma.  Amended Complaint, ¶¶ 16, 21.  Further,

Defendant Scherma was not involved in *Academies v. MSD* in his individual capacity, the basis

for this frivolous lawsuit.  So, that allegation does not establish that Defendant Scherma has any

relevant connection to New York.  Therefore, Goodman has failed to meet his burden of showing

that this Court has jurisdiction over Defendant Scherma.  *See In re Terrorist Attacks on Sept. 11,

2001*, 714 F.3d 659, 677 (2d Cir. 2013) (holding that courts need not consider conclusory, non-

specific allegations made to support personal jurisdiction); *see also Al -Ahmed v. Twitter, Inc.*, No.

20-CV-4982 (VEC), 2021 WL 3604577, at *8 (S.D.N.Y. Aug. 11, 2021) (granting motion to

dismiss for lack of personal jurisdiction because plaintiff failed to satisfy the pleading

requirements).

## VI.    DISMISSAL WITH PREJUDICE IS WARRANTED

Goodman has now had two opportunities to present the Court with a cogent complaint

setting forth a legitimate cause of action over which this Court has jurisdiction.  He has abjectly

failed to do so.  Any further attempts to amend the complaint would be futile because Goodman

has no legitimate claims against any Defendants.  *See*, *e.g.*, *Ruotolo v. City of N.Y.*, 514 F.3d 184,

191 (2d Cir. 2008) ("Leave to amend, though liberally granted, may properly be denied for: 'undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

of the amendment, futility of amendment, etc.'" (internal citation omitted)); *EZ Tag Corp. v. Casio*

24

*Am., Inc.*, 861 F. Supp. 2d 181, 185 (S.D.N.Y. 2012) (dismissing complaint without leave to amend, holding that such amendments would be futile).  Here, additional amendments would simply be a vehicle for Goodman to harass and attempt to intimidate Defendants.  Accordingly, Defendants respectfully request that the Amended Complaint be dismissed with prejudice and without leave to amend.

## VII.    CONCLUSION

For the reasons and authorities above, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Goodman's Amended Complaint in its entirety, with prejudice and without leave to amend, together with such other and further relief as this Court may deem just, proper, and equitable.

Dated:            April 5, 2022

> Respectfully Submitted,
>
> FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
>
> *Attorneys for Defendants Frank Scherma, Margaret Esquenet, and Academy of Television Arts & Sciences*
>
> By:  */s/ Mary Kate Brennan*
>
>> B. Brett Heavner, Esq. (*pro hac vice*)
>> Mary Kate Brennan, Esq.
>> 901 New York Avenue NW
>> Washington, DC 20001
>> Telephone: (202) 408-4000
>> Facsimile: (202) 408-4400
>> b.brett.heavner@finnegan.com
>> marykate.brennan@finnegan.com
>
> GORDON REES SCULLY MANSUKHANI, LLP
>
> *Attorneys for Defendants Adam Sharp, Terrance O'Reilly and The National Academy of Television Arts & Sciences*

25

By:  _/s/ Brian E. Middlebrook_

       Brian E. Middlebrook, Esq.
       John T. Mills, Esq.
       One Battery Park Plaza, 28th Floor
       New York, New York 10004
       Telephone: (212) 269-5500
       Facsimile: (212) 269-5505
       bmiddlebrook@grsm.com
       jtmills@grsm.com