# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN | Case No.: 1:21-cv-10627-VEC |
| Plaintiff, | |
| vs. | **NOTICE OF MOTION SEEKING LEAVE TO FILE THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS** |
| ADAM SHARP, TERRANCE O'REILLY, FRANK SCHERMA, MARGARET ESQUENET, ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., | |
| Defendant | |

Please take notice that, upon the accompanying (i) motion seeking leave to file an amended complaint for unjust enrichment, abuse of process and misconduct by attorneys, (ii) the declaration of Jason Goodman; and (iii) proposed third amended complaint and the exhibits annexed thereto, all submitted herewith, Plaintiff Jason Goodman Pro Se, moves this court for an order pursuant to rule 15(a)(2) of the federal rules of civil procedure.

Respectfully submitted

Signed this 14th day of April 2022,

_____

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

NOTICE OF MOTION SEEKING LEAVE TO FILE THIRD AMENDED COMPLAINT FOR UNJUST
ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

JASON GOODMAN

        Plaintiff,

vs.

ADAM SHARP, TERRANCE O'REILLY,
FRANK SCHERMA, MARGARTET
ESQUENET, ACADEMY OF TELEVISION
ARTS AND SCIENCES, INC.,

        Defendants

Case No.: 1:21-cv-10627-VEC

**MOTION SEEKING LEAVE TO FILE
THIRD AMENDED COMPALINT**

      Pro Se non-attorney Jason Goodman ("Goodman") respectfully seeks leave of the Court

to strike his previous pleading at ECF No. 57 and correct an error by filing a third amended

complaint.  The attached memorandum contains the proposed third amended complaint.  Rule 15

provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court

should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Plaintiff intends to

further clarify his claims and add newly learned information.  Allowing Plaintiff to file the

Amended Complaint would serve justice and promote judicial efficiency.  There would be no

substantial or undue prejudice, bad faith, undue delay, or futility.

Signed this 14th day of April 2022

Respectfully submitted,

_____

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

MOTION SEEKING LEAVE TO FILE THIRD AMENDED COMPALINT- 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN | Case No.: 1:21-cv-10627-VEC |
|         Plaintiff, | |
| vs. | **AFFIDAVIT OF JASON GOODMAN** |
| ADAM SHARP, TERRANCE O'REILLY, FRANK SCHERMA, MARGARET ESQUENET, NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., | |
|         Defendants | |

I, Jason Goodman declare as follows:

1. This action is brought in good faith and sets forth new claims arising from newly discovered information.

2. This action is not an attempt to relitigate National Academy of Television Arts and Sciences v Multimedia System Design ("NATAS v MSD") but rather an attempt to hold Defendants accountable for their malicious acts against me, including efforts to harm me by abusing regularly issued legal process against my corporation.

3. This action alleges Defendants manipulated the circumstances, made false claims and acted in bad faith to sue my corporation for actions taken by me, in violation of New York Not-For-Proffit Law and  47 U.S. Code § 230 to specifically prevent me from defending myself and deny my the right to a legal defense and fair trial.

4. Defendants rely on false claims, unjust manipulations and extra judicial intimidation by third parties because the empirical facts and the law are unfavorable to them.

AFFIDAVIT OF JASON GOODMAN - 1

5. National Academy of Television Arts and Sciences ("NATAS") CEO Adam Sharp ("Sharp") violated state and federal law in a malicious effort to destroy my business, my public reputation and my social media presence because he disagrees with me politically.

6. Sharp conspired with multiple individuals to violate federal and state law in order to misuse tax-exempt funds to unjustly enrich his private for-profit LLC at my expense.

7. Sharp conspired with multiple individuals and tax-exempt corporations to violate laws and his duties to the tax-exempt entities that employ him by failing to disclose ownership of a private for-profit LLC and its political activities and to conceal his ulterior motive.

8. Sharp violated NATAS conflict of interest policy by failing to disclose his private, for profit, politically partisan activities and income.

9. Sharp acted outside his legal authority when he acted on behalf of the Academy of Television Arts and Sciences ("ATAS") without informing ATAS CEO and Board Chairman Frank Scherma or the board of trustees.

10. Sharp acted outside his legal authority when he made a unilateral decision to sue my corporation on behalf of NATAS without informing or consulting NATAS Board Chairman Terry O'Reilly or the board of trustees.

11. Sharp and his counsel Margaret Esquenet ("Esquenet") conspired to deceive the members of the board of trustees by failing to disclose Sharp's ownership of a private for-profit politically partisan social media consulting business and to hide his ulterior motive.

12. On a January 24, 2022 phone call ATAS CEO and Board Chairman Frank Scherma told me he had never heard of me and was unaware of any legal action against me or my company. Scherma further stated he was not represented by Finnegan or Esquenet and that Sharp had no authority to act on behalf of ATAS.

AFFIDAVIT OF JASON GOODMAN - 2

13. Scherma told me he knew Sharp but that Sharp was not at all associated with ATAS and had no legal authority to make any decisions or take actions on behalf of ATAS.

14. I told Mr. Scherma that he could become involved in Goodman v Sharp et al and asked him to have his personal attorney contact me.

15. Many hours later, I received an email from Esquenet instructing me not to contact the "Academy of Television Arts & Sciences, including its CEO Mr. Franck (sic) Scherma".

16. I wrote back informing Esquenet that Mr. Scherma told me he was not represented by her or Finnegan.  I then asked her if that had changed since the phone call.  She did not say that it had.  She reiterated that I was not to contact Mr. Scherma per her demand.

17. In an email dated March 28, 2022, attorney John Mills counsel to Sharp, O'Reilly and NATAS stated, "My firm does not represent Frank Scherma."

18. No attorney has yet filed a notice of appearance to represent Frank Scherma.

19. Contrary to defendants' false conclusions, this action is not an attempt to relitigate NATAS v MSD, nor is it retaliatory.  Defendants attempt to use their superior financial and legal resources to overwhelm me by misrepresenting facts, ignoring empirical evidence that proves their deceit and repeating false statements and legally meaningless personal insults favorable to their conclusions.

Signed this 14th day of April

2022 Respectfully submitted,

_____

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

AFFIDAVIT OF JASON GOODMAN - 3

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN<br><br>    Plaintiff,<br><br>vs.<br><br>ADAM SHARP, TERRANCE O'REILLY, FRANK SCHERMA, MARGARET ESQUENET, ACADEMY OF TELEVISION ARTS AND SCIENCES, INC.,<br><br>    Defendants | Case No.: 1:21-cv-10627-VEC<br><br><br>**PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS**<br><br>**JURY TRIAL DEMANDED** |

Pro Se Plaintiff Jason Goodman ("Goodman") alleges as follows, upon actual knowledge with respect to himself and his own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. This action is for unjust enrichment, abuse of process, and misconduct by attorneys in violation of New York Not-For-Profit Corporation Law, 47 U.S. Code § 230, and New York Consolidated Law NYCL JUD § 487.

2. Plaintiff seeks compensatory damages, in an amount not less than $180,000, and punitive damages to be determined at trial.

3. Defendants Adam Sharp ("Sharp"), Terrance O'Reilly, ("O'Reilly "), Frank Scherma, ("Scherma"), Margaret Esquenet ("Esquenet"), and Academy Of Television Arts And Sciences, Inc. ("ATAS") jointly and severally acted in cooperation with one another and other non-parties, outside the scope of their legal authority in violation of New York Not-For-Profit Corporation Law, Federal law, and their respective

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 1

fiduciary and other legal and ethical obligations, to unjustly enrich Sharp at Goodman's expense.

4. It would be against equity and good conscience to permit a wealthy corporate entity to use hundreds of thousands of dollars in tax-exempt funds and a team of legal professionals to sue a sole proprietorship in violation of 47 U.S. Code § 230 for content published by another information provider.  This is particularly egregious given the non-profit in this case is legally authorized only to promote and nurture companies in the broadcast industry, not to discretionarily sue them into oblivion.

5. Defendants conspired, communicated, and cooperated, directly or indirectly, with one another and third parties, to abuse the legal process and misuse tax-exempt funds for their own personal inurement and unjust enrichment at Goodman's expense.

6. Defendants used the law for a purpose for which it was not intended, in furtherance of an ulterior motive and to unjustly enrich themselves Goodman's expense.

7. Defendants conspired ab initio with non-party D. George Sweigert ("Sweigert") and continuously up to and including today to disrupt Goodman's daily business activities, overwhelm Goodman with frivolous legal filings, frustrate Goodman's ability to mount a legal defense and to deny Goodman's right to due process, a fair trial and impartial justice from the Court.

8. Prior to any formal legal dispute, Goodman offered to remove the alleged infringement in exchange for removal of a malicious YouTube complaint against Goodman personally.  Defendants proceeded with malicious intent, knowing the complaint would disrupt normal business and do permanent irreversible damage to

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 2

Goodman's personal property, the Jason Goodman YouTube Channel.  Goodman's Corporation had and has no claim to, or ownership of this property.  Removal of the complaint would not have prevented Defendants from accessing any of their rights or any defense.  Defendants took malicious action against Goodman personally, prior to suing his corporation, for their personal inurement and unjust enrichment.

9.   Goodman's corporation had no ownership of the Jason Goodman YouTube channel, or any intellectual property created by him and uploaded to the YouTube Channel.

10.  Goodman has alleged that non-party Sweigert was in email communication with Defendants prior to commencing their legal action against Goodman's corporation.

11.  Defendants learned of Goodman's corporation and maliciously targeted it to prevent pro se defense after formulating this strategy through cooperation with Sweigert.

12.  Defendants have jealously protected the owner of an anonymous email Goodman alleges to be Sweigert, claiming Goodman revealed confidential discovery material which was in fact not confidential at the time due to gross negligence by defendants.

13.  After their malicious YouTube complaint but prior to suing Goodman's corporation, Defendants were warned that Sweigert was provoking an expensive protracted legal battle specifically to harm Goodman, which would in turn harm their client. Defendants ignored this, failed to share the warning with board directors O'Reilly and Scherma, and declined to consider the financial best interest of the tax-exempt entities as required by New York Not-For-Profit Corporation Law.

14.  New York Not-For-Profit Corporation Law considers board directors or executives to be operating in good faith when they "rely on information, opinions, reports or

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 3

statements [from] counsel, public accountants or other persons as to matters which the directors or officers believe to be within such person's professional or expert competence" NPC § 717(b)(2).

15. No good faith effort was made to explore Goodman's well-founded warning about vexatious agitation or to consider the financial best interest of the tax-exempt entities.

16. Defendants did not consider the most expeditious or economical way to exercise the tax-exempt entitles' rights to defend their trademark as required by New York Not-For-Profit Corporation Law.  Instead, defendants acted in service of their ulterior motive and sued Goodman's corporation to damage Goodman, gain advantage for Sharp's private for-profit political consulting firm and generate fees for Esquenet.

17. Defendants used regularly issued civil process against a corporation to compel Goodman, an individual, to act.  Defendants wrongfully sought to force Goodman to remove videos which were his personal property, not owned by the corporation, while simultaneously conspiring with Sweigert to deny Goodman the right to legal defense.

18. Defendants Sharp and Esquenet violated New York Not-For-Profit Corporation Law when they failed to inform board chairman O'Reilly, or the requisite quorum of trustees, before abusing the legal process for their ulterior purpose.

19. Defendants deceived the Court when they claimed to represent ATAS and Scherma.

20. Defendants O'Rielly, Scherma, and ATAS became complicit with this conspiracy when they failed to end the unjust enrichment and abuse of process.

21. Defendants calculated their economic attack in coordination with Sweigert, with the intent to bankrupt Goodman's corporation despite knowing that 47 U.S. Code § 230

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 4

expressly indemnifies a provider of interactive computer services, such as Goodman's Corporation, from being treated as a publisher of information, in this case Goodman.

22. The action against Goodman's corporation was without economic or social excuse or justification, except as an unjust financial and legal attack on Goodman personally.  It was an artful attempt to manipulate the circumstances and the law, to sue Goodman's corporation for actions taken by Goodman.  Financially destroying the corporation was intended to financially destroy Goodman and terminate his broadcasts.  This also effectively tied Goodman's hands preventing him from defending himself pro se and depleting the corporation's finances prior to counsel's forced withdrawal.

23. Defendants gained additional advantage when Goodman's corporation's attorney was abused and intimated into withdrawing by non-party co-conspirator Sweigert.

24. Defendants ulterior motive wrongfully sought financial and political gain outside the legitimate ends of the process and had a corresponding detrimental effect on plaintiff who suffered actual and special damages in the form of lost business, lost revenue, the destruction of unrecoverable personal property and legal costs and expenses.

25. ATAS acted outside the scope of its tax-exempt status and legal authority when it participated in a civil suit in violation of the laws under which it is organized without the knowledge and consent of the board of trustees.

26. Defendants jointly and severally acted maliciously and with bad faith, in a manner and for a purpose for which the law was not designed, to block plaintiff from broadcasting during the 2020 U.S. Presidential election, damage his business, and destroy his public reputation for their own unjust financial and political enrichment.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 5

27. Defendant Sharp acted outside the scope of his legal authority and in violation of his fiduciary and other legal and ethical obligations to his non-profit employer and U.S. taxpayers when he failed to disclose ownership of a private for-profit company Sharp Things, LLC ("Sharp Things") in mandatory public IRS 990 filings.

28. Defendant Sharp acted outside the scope of his legal authority and in violation of his fiduciary and other legal and ethical obligations when he unilaterally took legal action on behalf of ATAS without the knowledge or consent of board chairman Scherma.

29. Defendants engaged in collusion with intent to deceive the Court in violation of New York Consolidated Laws, Judiciary Law - JUD § 487 by falsely stating Sharp Things was inactive at the time legal action against Goodman's corporation commenced.

30. Defendants engaged in collusion with intent to deceive the Court in violation of New York Consolidated Laws, Judiciary Law - JUD § 487 by falsely stating they legally represented ATAS and Scherma, when in fact they did not according to Scherma.

31. Defendants engaged in deceit and collusion with intent to deceive the Court in violation of NYCL- JUD § 487 by falsely claiming Goodman violated a stipulated order of protection ("SOP") when their own associate Samuel Eichner ("Eichner") violated the SOP with comments published to the public on the ECF docket on May 15, 2021, *See THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., et al., v. MULTIMEDIA SYSTEM DESIGN, INC. ECF No. 69.*

32. Defendants deceived the Court with the malicious intention of harming Goodman.

33. New York courts have held that a claim under JUD § 487 exists if there is a 'chronic and extreme pattern of legal delinquency.' Solow Management Corp. v. Seltzer, 18

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 6

AD3d 399 (1st Dept. 2005), citing to Jaroslawicz v. Cohen, 12 AD3d 160 (1st Dept. 2004); Cohen v. Law Offices of Leonard and Robert Shapiro, 18 AD3d 219 (1st Dept. 2005). Some courts have held "a single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability [under Judiciary Law Section 487]. Trepel v. Dippold, 2005 WL 1107010 (SDNY 2005).

34. Defendants conspired with one another and additional non-parties to abuse regularly issued legal process and deprive Plaintiff of his right to due process and a fair trial.

35. Defendants abused regularly issued legal process and conducted themselves in a manner and for a purpose for which the law was not designed.

36. Defendants had an ulterior motive to disrupt Plaintiff's business and force him to stop broadcasts of news, opinion, parody, and other first amendment protected activity and to deprive him of other rights for their own unjust enrichment and personal inurement in violation of New York Not-For-Profit Law, 47 U.S. Code § 230 and other laws.

### PARTIES AND NON-PARTIES

37. Plaintiff – Pro se Plaintiff Jason Goodman is a New York citizen and the sole owner of all Crowdsource the Truth ("CSTT") intellectual property ("IP"). Goodman also owns Multimedia System Design, Inc ("MSD") a New York corporation with its primary place of business in New York, NY 10001.

38. Defendant – Adam Sharp is a Connecticut citizen, President and CEO of The National Academy of Television Arts and Sciences ("NATAS") a 501(c)(6) tax-exempt business association, and owner and CEO of Sharp Things, LLC ("Sharp

Things") a privately owned for profit political social media strategic consulting company having its primary place of business in Stamford, CT.

39. Defendant Terry O'Reilly is a Pennsylvania citizen and Chairman of the Board of trustees of NATAS a 501(c)(6) tax-exempt business association and CEO of Pittsburgh Community Broadcasting Corporation, an independent, locally owned, and community-supported public media organization.

40. Defendant – Frank Scherma is a California resident and the CEO and Chairman of the board of ATAS a 501(c)(6) tax-exempt business association.  Scherma is also President and co-founder of Radical Media, Inc. a company whose website lists their primary address at 435 Hudson St. 6th Floor New York, NY 10014.

41. Defendant – The National Academy of Television Arts and Sciences, Inc., is a New York 501(c)(6) not-for-profit corporation with its principal place of business in New York, New York 10016.

42. Defendant – Academy of Television Arts & Sciences, is a California not-for-profit corporation with its principal place of business in N Hollywood, California 91601.

43. Defendant – Margaret Esquenet ("Esquenet") is a Maryland citizen and an Attorney with FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP ("Finnegan") having its primary place of business in Washington, DC 20001. Esquenet and her associates at Finnegan represent the defendants in THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES, v MULTIMEDIA SYSTEM DESIGN, INC. Case 1:20-cv-07269 ("NATAS v MSD")

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

44. Non-party David George Sweigert is a professional hacker, vexatious cyber stalker and serial harasser who has made public statements against his own interest about his family history of medically diagnosed and pharmaceutically treated schizophrenia. https://odysee.com/@CounterSpoliation:6/CIA-Dave-Acton-court-testimony-George-Webb-part1of2:c.  Goodman continues to allege Sweigert provoked litigation between Plaintiff and Defendants and assisted Defendants throughout, with intent to harm Goodman.  Sweigert harassed and intimated Goodman's corporation's attorney forcing withdrawal and leaving Goodman unable to replace counsel despite strenuous efforts.  Sweigert also continually shared strategically valuable information with Defendants which was incorporated into litigation and used to harm Goodman.

## JURISDICTION AND VENUE

45. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000 and because the parties are diverse.

46. This Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of New York pursuant to New York Not-For-Profit Law, 47 U.S. Code § 230, 26 U.S. Code § 501 and New York Judiciary Law - JUD § 487 because the plaintiff is being harmed in this District; Defendants are domiciled in this District; Defendants' agent can be found in this District; Defendants are conducting business in this District; and Defendants are violating the Plaintiff's rights in this District. New York's Long Arm Statute gives the Court jurisdiction over Scherma because he transacts business regularly in New York both through ATAS and Radical Media and because the conspiracy to harm Goodman committed tortious acts within New York.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 9

**LEGAL RESPONSIBILITIES OF NONPROFIT BOARDS OF DIRECTORS**

47. Unlike their counterparts in for profit corporations, board members, trustees, executives, employees, or any other agents of tax-exempt corporations are legally bound to act only in furtherance of the authorized organizational purpose for which the entity has been granted tax exempt status.  Activities that do not support the authorized organizational purpose are considered prohibited activities and no board member or any other agent may engage in any such activity in the name of the non-profit pursuant to 26 U.S. Code § 501(c)(6), New York Not-For-Profit Law and the New York Non-profit Revitalization Act of 2013.

48. New York case law precedent has made the responsibilities of being on a nonprofit board essentially the same as being on a corporate board of directors with some important differentiating factors. These areas of legal responsibility govern the actions of nonprofit board members.

(1) Duty of Care

Board directors, trustees and executives are obliged to give the same care and concern to their board responsibilities as any reasonable ordinary person would. Board members legal obligations to the entity include monitoring the nonprofit's activities and actively working with other trustees to adhere only to the organization's authorized tax-exempt purpose.  Board directors should be able to read and understand financial reports and be willing to question expenditures particularly in cases where there is reasonable suspicion of prohibited activity.

(2) Duty of Loyalty

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 10

Board directors, trustees and executives must always place financial and other interests of the non-profit entity ahead of their own.  All board members, trustees, and executives are required to publicly disclose any conflicts of interests or potential conflicts such as activities in the private for-profit sector.  Board members, trustees and executives must not use their positions with the tax-exempt entity as a means for personal or commercial gain.

(3) Duty of Obedience

Board directors, trustees, and executives must ensure that the nonprofit is abiding by all applicable laws and regulations and doesn't engage in illegal or unauthorized prohibited activities. The organization must carry out its mission in accordance with the authorized organizational purpose ratified in the articles of incorporation for which the entity is granted nonprofit status.

49. Although non-profit board members and executives are generally indemnified from liability arising from good faith decisions and actions, there are notable exceptions.

50. Nonprofit board members and executives are not indemnified from liabilities arising from actions and activity that intentionally cause injury, harm or damage.

51. Nonprofit board members and executives are not indemnified from personal participation in tortious conduct or conduct that would otherwise subject the actor to civil or criminal liability under the law.

52. Nonprofit board members and executives are not indemnified from knowing approval of criminal acts or active involvement in criminal activities by the organization.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 11

53. Nonprofit board members and executives are not indemnified from personal involvement in a contract involving the nonprofit that is tainted by fraud.

54. Nonprofit board members and executives are not indemnified from participation in transactions approved by the board with an entity in which the board member had a substantial personal or financial interest.

55. Sharp's failure to disclose personal financial interest in Sharp Things, coupled with his personal political motivation for attacking Goodman's corporation to harm Goodman make this exception one of particular importance.

### DEFENDANTS AND THEIR WRONGFUL ACTS

56. Defendant Sharp is the President and CEO of NATAS and Director, CEO and Agent of Record for Sharp Things, a privately-owned for-profit Connecticut Limited Liability Corporation that claims on its website www.sharpthings.io to operate "at the intersection of media, politics and technology". Sharp was an executive at Twitter from 2010 through 2016 and is a self-proclaimed "political operative".

57. Sharp has failed to disclose his personal ownership of, or income from Sharp Things, in NATAS public IRS 990 filings as required by the tax-exempt laws under which NATAS and ATAS are organized and NATAS' own conflict of interest policy. Evidence in the public domain indicates Sharp may currently have, or has in the past had, business relationships with numerous prominent Democrat Party politicians including Andrew Cuomo, Barack Obama and Joe Biden.

58. Fed. R. Civ. P. Rule 17(b)(2) states that a corporation can only have the capacity to sue or be sued "by the law under which it was organized". This inherently excludes

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 12

cases in which a CEO in ongoing violation of tax-exempt laws for failure to disclose his private for-profit activities as required commences legal action for the entity.

59. Sharp exceeded his legal authority as CEO of the tax-exempt entity when he failed to obtain the required consent of the board of trustees and proceeded to sue with intent to harm Goodman and without the knowledge of chairmen O'Reilly and Scherma.

60. O'Reilly and Scherma have failed in their roles as board chairmen to ensure that corporate tax-exempt funds were used only in the best financial interests of the tax-exempt corporations and only for authorized tax-exempt purposes as required by law.

61. Defendants will fail to produce minutes from board meetings or any communications indicating the required number of trustees had the opportunity to weigh the value of Goodman's pre-litigation statements against the cost of suing in view of the financial interests of the tax-exempt entities as required by New York Not-For-Profit Law.

62. In violation of the laws by which tax-exempt ATAS is organized, defendant Sharp unilaterally acted on behalf of ATAS without the knowledge or consent of board chairman and CEO Scherma.

63. During a phone call in January 2022, Scherma told Goodman he was unaware of him or the NATAS v MSD lawsuit and was not represented by Esquenet or Finnegan and that Sharp had no legal authority to act on behalf of ATAS.

64. Defendants Sharp and Esquenet engaged in collusion intended to deceive the Court. Esquenet's firm did not legally represent ATAS as claimed and still does not.

65. Defendant Sharp wrongfully used his role as CEO of the non-profit for personal inurement in furtherance of his own personal political goals and those of his private,

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 13

for-profit business.  Sharp did so knowingly and in violation of fiduciary, ethical and legal obligations to the tax-exempt corporations NATAS and ATAS and taxpayers.

66. Sharp became CEO of NATAS in May of 2018.  At the time of this writing, to the best of plaintiff's knowledge, no NATAS public 990 filings have been made with the IRS, New York Attorney General or Secretary of State for 2019, 2020 or 2021.

67. Prior to becoming President and CEO of NATAS, Sharp was employed at Twitter as Head of Government and non-profits.  Sharp later became Head of News Government and Elections.  He has publicly stated that he is a political operative.  He maintains an active for-profit business that is as a tool for political operatives and their objectives. Sharp presents himself as an expert in all these fields and should be familiar with the legal and ethical requirements of an executive in his position.

68. On January 29, 2011, The New York Times said Sharp was "the human embodiment of Twitter" (https://www.nytimes.com/2011/01/30/us/politics/30twitter.html)

69. On September 30, 2011, a New York magazine article reported on Sharp's direct negotiation with Barack Obama's closest advisors in organizing the historic first "Twitter Town Hall" in which the President of the United States publicly communicated via the nascent digital platform for the first time ever. (https://nymag.com/news/media/twitter-2011-10/)

70. Twitter stock began publicly trading later in 2013.  The initial public offering made many Twitter executives, which Sharp was at the time, exceedingly wealthy, despite the company's inability to operate profitably until two years after Sharp's departure.

https://www.cnn.com/2019/02/07/tech/twitter-earnings-q4/index.html

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 14

71. A photograph on the front page of Sharp Things's website www.sharpthings.io shows Defendant Sharp in direct personal communication with Barack Obama, advertising Sharp's unusually close relationship with the former President.

72. In October 2020, shortly after Sharp's malicious YouTube complaint against the Jason Goodman YouTube channel, Twitter suspended The New York Post's Twitter account ("@NYPOST") in direct response to the Newspaper's publication of contents from a laptop attributed to Hunter Biden, the cocaine addicted son of then candidate Joe Biden.  The information on the laptop has subsequently been corroborated by firsthand testimony from decorated U.S. Navy officer Anthony Bobulinski, the New York Times, and the Washington Post.  Despite the newsworthiness and veracity of this information, Twitter acted in furtherance of its own political interest, just as Sharp has, to block unfavorable but true information and to suppress protected first amendment activities by perceived political opponents.

73. On January 8, 2021, amid claims of election tampering, including allegations citing Twitter's suppression of Biden's laptop, Twitter permanently suspended then U.S. President Donald Trump ("@realDonaldTrump").  Throughout its history, Twitter has engaged in numerous overt demonstrations of a corporate culture that bends or even break laws and ethical norms to suppress political opposition.  Sharp played a key role in forming that corporate culture in his six years at Twitter during its founding.

74. During congressional testimony in or around November 2020, former Twitter CEO Jack Dorsey called the removal of @NYPOST a "total mistake" affirming the legitimacy of claims made by the newspaper and his own company's illegitimate

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 15

removal of the content.  Dorsey fell short of attributing the mistake to any specific individual or ascribing a motive to the action.

75. As the keynote speaker at Millennium Alliance's 2017 Digital Marketing Transformation Assembly, Sharp claimed his professional background was as a "Political Operative" among other things.  The statement remains online published on Sharp Things' YouTube channel (https://youtu.be/yB-IvtJ56NE).

76. On or around August 2020, Sharp acting without consent or knowledge of the boards of trustees or consideration of fair use pursuant to the Digital Millennium Copyright Act ("DMCA"), or the best financial interests of the non-profit corporation he represents, filed a complaint with YouTube alleging a video on the Jason Goodman YouTube channel infringed on NATAS copyright and diluted its trademark.

77. Plaintiff does not deny Sharp was within his rights to file a claim with YouTube, but it is empirically untrue to say it was his only choice.  Further, a claim with YouTube is NOT a lawsuit, and having a right to do something does not necessarily make it the right thing to do.  Anyone has a right to complain about anything they do not like.  As a social media expert, Sharp would be aware he selected the most aggressive approach available and his complaint would harm plaintiff, terminating access to live broadcasting and disrupting normal business operations.

78. Sharp's claim should have been given extraordinarily careful consideration because it would damage a company operating in the business space that NATAS is organized to protect and nurture.  It cannot be denied that Sharp could have chosen to contact Goodman first and ask to remove the disputed image without filing a complaint.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 16

79. Outside his role as NATAS CEO and owner of Sharp Things, in his capacity as a private individual Sharp operates a YouTube channel called the Roger Sharp Archive ("RSA") http://www.rogersharparchive.com.  Approximately sixty-seven videos chronicle the broadcasting career of Sharp's deceased father, Roger Sharp.  Sharp does not own the copyrights to this material but alleges fair use in a disclaimer published on the site.  *"Description – A non-commercial archive of work by late ABC and CBS television newsman Roger Sharp (1935-1986), compiled and maintained by his son Adam.  All broadcast clips are the intellectual property of their respective networks and/or stations and are believed to be used here under the fair use and library/archive exceptions to U.S. copyright law.  If you are the proper copyright holder of any of these works and object to my use of them, please contact me."* (https://www.youtube.com/user/rogersharparchive/about)

80. The disclaimer demonstrates that Sharp has a clear understanding of copyright law and the consequences of posting disputed material on social media platforms.  Notably, Sharp requests the courtesy of contact prior to legal action should a dispute arise.  Sharp deliberately and maliciously denied Plaintiff that courtesy.

81. Sharp was aware his complaint to YouTube alleging copyright infringement had a high likelihood of resulting in punishment up to and including disabling the YouTube channel permanently.  In YouTube's terminology this type of complaint is expected to result in one "strike" in a "three strikes you're out" system.  The least damage expected from one strike is the loss of live broadcasting and uploading of new videos.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 17

82. Sharp was aware his action would have an immediate negative impact on Plaintiff's normal business operations and would be likely to stop plaintiff from broadcasting.

83. Statements in the description and disclaimer on the RSA indicate that Sharp was aware copyright complaints against a user could result in the removal of content and could restrict or eliminate the violator's future access to YouTube.

84. On information and belief, plaintiff alleges Sharp deliberately misused a properly served civil procedure for an ulterior motive and improper purpose to penalize plaintiff because he is a popular conservative social media influencer and Sharp did not want him broadcasting.  Like his comrades at Twitter, Sharp was willing to engage in unethical and even illegal action to stop perceived political opponents from broadcasting during the period leading up to the 2020 Presidential election.

85. After plaintiff submitted an appropriate appeal to YouTube, counterclaiming parody fair use, negotiations between plaintiff and defendant Margaret Esquenet began.

86. In a phone call prior to any legal action, plaintiff offered to remove all occurrences of the alleged infringement if defendants withdrew their unnecessary YouTube complaint and restored plaintiff's business to its normal operating status.  Irrespective of the merits of the complaint, its withdrawal was a mandatory prerequisite to any equitable and timely settlement of the dispute.  Had Goodman withdrawn his appeal as demanded, he would have forfeited all rights and been left with no remedy.  The reverse was not true for defendants, withdrawal of their complaint would not eliminate any of their rights or defenses.  Esquenet refused the offer immediately without consulting Sharp or the NATAS or ATAS boards of trustees, and demanded

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 18

Plaintiff first withdraw the counterclaim and pay legal fees.  This illogical demand would have caused Plaintiff to permanently abandon his rights to appeal and would leave his YouTube channel inactive until the period after the 2020 election.  Conversely, if Defendant withdrew their initial complaint, no remedy would be lost.  In violation of New York Not-For-Profit Law, no good faith effort was made by defendant to entertain plaintiff's good faith no-cost offer.  Defendant has repeatedly deceived the court claiming they had "no choice" but to sue which is untrue and indefensible.  Defendants failed to evaluate the financial interest of their tax-exempt corporations when considering Goodman's offer and voluntarily chose to proactively sue in violation of the tax-exempt laws by which they are organized.

87. On or around August 23, 2021, Plaintiff inadvertently included Esquenet and numerous other individuals on an email response intended only for Goodman's friend non-party Larry Klayman ("Klayman"). The message included an email address defendants allege violated the SOP.  On or around August 24, 2021, Defendant sent a letter to the court (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 108) claiming Plaintiff violated the SOP and provoking a show cause hearing (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 112).

88. During a teleconference that took place on April 30, 2021 at 2:00 PM defendant Esquenet's associate Eichner said, *"Your Honor, it was an e-mail **[REDACTED]**@ **[REDACTED]**.com. That is the e-mail address of the person who notified the television academies of the image."* Even though this conference was between the parties and judge Caproni, its contents including the unredacted email address were

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 19

published to the public on the docket on May 15, 2021 and remain there as of this filing. (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 69 page 42 line 22).

89. The transcript reveals what Goodman could not recall during interrogation at the show cause hearing.  Eichner's comments placed the email address in the public domain for months before Goodman allegedly exposed it.  Defendant made no effort whatsoever to have it redacted from the transcript, but instead made an overt and deceptive effort to ensnare the unrepresented plaintiff in a damaging show cause trap.

90. Rule 3.3 of the D.C. Bar Association of which Esquenet is a member addresses Candor Toward the Tribunal.  Rule 3.3(d) states in part "a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."  Esquenet had an ethical obligation to be accountable for her own team's irresponsible failures and alert the Court that it was Eichner that violated the SPO not Goodman.

91. Financing of this legal action is outside the purview of the tax-exempt entity's authorized organizational purpose.  Defendants will fail to demonstrate that the unnecessary lawsuit is not a prohibited activity.  These allegations should be referred to the IRS for immediate investigation including revocation of the tax-exempt status of the entity and criminal prosecution of any individual party to the violation.

92. Sharp's abuse of process was not intended to cure the alleged injury of copyright infringement, but rather, served his ulterior purpose of preventing Goodman from broadcasting during the 2020 Presidential election and damaging his business.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 20

93. As an attorney and counsel to defendants, Esquenet had an ethical obligation to inform her clients of the laws that govern their ability to sue.  Pursuant to Fed. R. Civ. P. Rule 17(b)(2) a corporation may only sue in accordance with "the law under which it was organized".  The Defendant's tax-exempt corporation is organized pursuant to 26 U.S. Code § 501(c)(6) and New York Not-For-Profit Law and is prohibited from engaging in activity that does not "advance the arts and sciences of television, and [to] foster creative leadership in the television industry for artistic, cultural, educational, and technological progress" pursuant to their articles of incorporation.

94. Defendant will fail to demonstrate that the lawsuit legitimately advanced the television industry in any way.  In fact, the action undermines the tax-exempt entity's authorized purpose.  The mere threat of legal action chills first amendment activity and hurts the artistic and cultural development of parody as a form of expression in television by creating the impression that endeavors in that area put the creator at risk.

95. Defendants O'Reilly and Scherma as chairmen of the boards failed to uphold their personal fiduciary and other legal obligations by failing to shield the tax-exempt entities from the Sharp's prohibited activities.  Irrespective of their knowledge at the outset, upon learning of the misdeeds, they failed to cure defects and instead joined in the abuse of process in violation of their own personal legal obligations, New York Not-For-Profit Law and the laws by which the tax-exempt entities are organized.

## INJURY TO THE PUBLIC AND PLAINTIFF

96. Defendant's decision to complain to YouTube about Goodman and then to sue his corporation rather than seek rapid, no cost settlement, harms taxpayers whose funds

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 21

subsidize the activities of the Defendants.  The decision to sue Goodman's corporation with intent to harm Goodman personally and for Sharp's private inurement when a clear path to a zero-cost settlement was available constitutes prohibited activity pursuant to the New York Nonprofit Revitalization Act of 2013 by the non-profit and is an abuse of regularly issued civil legal process.

97. The mere threat of a lawsuit of this nature damages the public's ability to engage in free, first amendment protected discourse including the use of parody.  By sending a public signal that the defendants will challenge and financially punish attempts at parody it finds unfavorable, Defendants have violated their mandate of promoting development and leadership in the broadcast television industry, countermanding the authorized purpose for which they are granted tax-exempt status.  Suing Goodman's corporation to exercise leverage over Goodman is a further abuse of process. Lawsuits of this nature have a chilling effect on public discourse, discouraging others from freely exercising their first amendment rights, discouraging leadership, and undermining the legally authorized organizational purpose of the tax-exempt entities.

98. Because Plaintiff uses video broadcasting as the medium to exercise his First Amendment rights, Defendant had a special obligation to handle this matter in a way that would not damage the television or broadcast industry and would allow them to act in accordance with their authorized organizational tax-exempt purpose.

99. Defendant Sharp is a social media and political expert who knew his actions would damage Plaintiff's ability to broadcast during the 2020 presidential election.

100.    Sharp's personal political disposition favored President Joe Biden.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 22

101.    Sharp and Twitter have a track record of engaging in deceitful efforts to take malicious, harmful action against political opponents.

102.    Sharp violated New York Not-For-Profit Law and wrongfully used his position of power as the CEO of NATAS in violation of 47 U.S. Code § 230 to deliberately harm Plaintiff's ability to participate in public discourse pertaining to the 2020 election and harmed the public by denying them access to Plaintiff's broadcasts.

103.    In violation of New York Not-For-Profit Law and other federal and state laws Defendants used tax-exempt funds for legal fees and other expenses related to a lawsuit intended to personally inure Sharp and further his personal political interests to benefit his private, for-profit company, at the expense of Goodman.

104.    In violation of New York Judiciary Law - JUD § 487, Margaret Esquenet deceived the court in the course of litigation, falsely stating that Sharp was no longer a political operative, and his private, for-profit company Sharp Things was no longer active.  This was done solely to harm Goodman.  Documentation on file with the Connecticut Secretary of State proves this statement to be false.  **(EXHIBIT A)**

105.    When officers of the court engage in deceit it undermines public confidence in the legal system and is inherently damaging to the service of justice.  It also violates JUD § 487 which makes it a misdemeanor for attorneys to engage in deception.

106.    Esquenet additionally deceived the court claiming Plaintiff accused the deceased father of Defendant Sharp of being involved in CIA mind control experiments involving drugs and torture.  No such statement whatsoever was made by Plaintiff.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 23

This purely fabricated deception intended to smear Plaintiff and cause the court and public to believe he was associated with loathesome "conspiracy theories".

107.    Defendant's actions have directly damaged Plaintiff's ability to broadcast on YouTube and earn income.  Defendant's efforts to terminate Plaintiff's broadcasts correspond to a steady decline in Plaintiff's income since the initiating event.

108.    Plaintiff has incurred substantial legal fees and suffered loss of business, loss of reputation and loss of income because of Defendant's abuse of process.

## ABUSE OF PROCESS

Abuse of process, an intentional tort, is defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process (Curiano v. Suozzi, 63 NY2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324; Board of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assn., 38 NY2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278).

The four elements of abuse of process are

(1) regularly issued legal process, civil or criminal, compelling performance or forbearance of some act,

(2) the person activating the process was moved by an ulterior purpose to do harm, without economic or social excuse or justification,

(3) the person activating the process sought some collateral advantage or [*4] corresponding detriment to the plaintiff that is outside the legitimate ends of the process, and

(4) actual or special damage, (Board of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO, 38 NY2d 397, 380 NYS2d 635, 343 NE2d 278 (1975).

Ulterior purpose - the third element of this cause of action - is the intent to cause harm without excuse or justification, (Curiano v Suozzi, 63 NY2d 113, 480 NYS2d 466, 469 NE2d 1324 (1984); Board of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO, 38 NY2d 397, 380 NYS2d 635, 343 NE2d 278 (1975). Even where defendant acts out of spite or with a malicious motive this is not alone sufficient to sustain a cause of action for abuse of process, Curiano v Suozzi, supra; Place v Ciccotelli, 121 AD3d 1378, 995 NYS2d 348 (3d Dept 2014); Liss v Forte, 96 AD3d 1592, 947 NYS2d 270 (4th Dept 2012).

Even though the Court found the defendants' rights were infringed, and the lawsuit justified, defendants' rights would have been infringed by Goodman, not the corporation.  Despite the Court's finding that there was a valid excuse and justification for defendants to sue, there was no excuse or justification to sue a corporation for content provided by Goodman except the ulterior motive to deliberately cause harm to Goodman.

### UNJUST ENRICHMENT

The doctrine of unjust enrichment allows a plaintiff to recover from a defendant, in cases where the defendant has unfairly benefited from the plaintiff's efforts or at the plaintiff's expense.  In New York, the elements of an unjust enrichment claim are "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 25

equity and good conscience to permit the other party to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y. 3d 173, 182 (2011).

In this case, Defendants violated of 47 U.S. Code § 230 when they sought to enrich Sharp's private for-profit company Sharp Things and Sharp's attorney Esquenet, by suing Goodman's corporation for content published by Goodman. It is not disputed, as reported in the New York Times, that Sharp has or had personal and business relationships with several well-known U.S. Politicians including former President Barack Obama and current President Joe Biden. It is equally well known that Sharp was an aggressive advocate for Democrat political candidates in his role at Twitter and after as a Democrat political operative as he has publicly admitted. Sharp and his co-conspirators misused tax-exempt funds for the bad faith purpose of unjustly enriching Sharp's private for-profit LLC and Esquenet's law firm Finnegan at Goodman's expense.

## NOERR – PENNINGTON DOCTRINE

Defendants attempt a bad faith claim of immunity under the Noerr–Pennington Doctrine. In California Motor Transport v. Trucking Unlimited,[3] the United States Supreme Court limited the expanded scope of the doctrine when it held that Noerr–Pennington did not apply where defendants had sought to intervene in licensing proceedings for competitors, because the intervention was not based on a good-faith effort to enforce the law but was solely for the purpose of harassing their competitors. Defendants also seek to allow their abuse of process to stand to limit Goodman's ability to compete with constituents who support defendants' tax-exempt funding model of corporate sponsored television advertising. Specifically, Goodman's business model of

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 26

delivering broadcast information and entertainment via a direct to viewer sponsorship model challenges the tradition of corporate advertiser supported television and threatens the financial future of the Defendants.  Defendant's action against Goodman's corporation was not brought in good faith, but rather was an assault against Goodman disguised as a good faith effort to defend their trademark.  Defendants fail the "good faith" test as described by New York Not-For-Profit Corporation Law and the American Bar Association.  Just as the First Amendment does not protect all speech, where some may consider protected parody to be an infringement, the Noerr-Pennington doctrine is not a catchall.  Plaintiff's complaint pleads sufficient facts, and the evidence submitted to the Court is sufficient to satisfy the allegation that defendants deliberately presented false claims and made fraudulent representations which were material to the defendants obtaining governmental action.  In this case Goodman's cause of action should overcome the assertion of a Noerr-Pennington defense under the sham exception.

## FIRST CLAIM FOR RELIEF

### Unjust enrichment – 47 U.S. Code § 230 Indemnifies Providers of Interactive Services

109.    Plaintiff repeats and realleges every allegation set forth above

110.    Esquenet should have known defendants could not sue a corporation for content provided by Goodman pursuant to 47 U.S. Code § 230(c)(1) "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Section 230 considers a corporation a provider or a user of interactive computer services and Goodman as another information content provider.  Section 230 indemnifies providers from being treated as

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 27

publishers of information or held liable for content.  Defendants' interpretation of 47 U.S. Code § 230(e)(2) is incompetent if not disingenuous.  There is no carve out allowing providers to be treated as publishers in any claim.  There was no justification apart from intent to cause harm to Goodman by suing his corporation rather than Goodman himself.

111.    Esquenet calculated that suing Goodman's corporation compelled him to hire counsel at tremendous cost.  She would have also calculated that this was likely to deplete financial resources and hinder Goodman's ability to defend his rights.  This was done in violation of the Rules of Professional Conduct Rule 3.3(d) which says, "In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."  Esquenet had a legal and ethical obligation to inform the Court and her clients about substantial defects in their claims that should have prevented the tax-exempt entitles and their officers from participating in the abuse of process.

## SECOND CLAIM FOR RELIEF

### Abuse of Process – Defendants violated the laws by which they are organized

112.    Fed R. Civ. P. Rule 11(b)(2) states a corporation can only sue or be sued "by the law under which it was organized."

113.    Sharp abused regularly issued legal process and acted in violation of Fed R. Civ. P. Rule 11(b)(2) and New York Not-For-Profit Law when he failed to follow state and federal laws that govern tax-exempt entities and their officers.  Sharp's violation of rule 11 and abuse of process should have disqualified NATAS as a plaintiff, but Sharp chose to do this in service of his ulterior purpose with intent to harm Goodman.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 28

114.    Sharp violated the laws by which tax-exempt corporations are governed and was personally inured by abusing the regular legal process to sue Goodman's Corporation in pursuit of his own personal, political, and financial goals.

115.    Defendants ignored warnings about vexatious outside interference, ignored Goodman's settlement offer, failed to hold a board meeting to weigh these options and chose to sue a corporation without excuse or reason aside from the ulterior motive to harm Goodman, this violated laws by which the tax-exempt entities are organized.

116.    Each trustee and employee is legally bound by New York Not-For-Profit Law to ensure that they only act in the financial best interest of the tax-exempt entity. Defendants will fail to prove refusal of Goodman's no-cost, pre-action settlement offer was in their tax-exempt corporations' best financial interest.  The action was a malicious abuse of process intended to harm plaintiff and inure Sharp and Esquenet in violation of New York Not-For-Profit Corporation Law.

**THIRD CLAIM FOR RELIEF**

**New York Judiciary Law - JUD § 487 – Misconduct by attorneys**

117.    New York Judiciary Law - JUD § 487 defines misconduct by attorneys.  New York Case law recognizes this cause of action almost exclusively for Plaintiff's seeking to redress their own attorneys misdeeds, but the law refers to "An attorney or counselor who: [is] guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" finding that attorney "guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 29

118.    The meaningful parties being deceived in this instance are the Court, the tax-exempt NATAS and ATAS and U.S. taxpayers who subsidize the activities of all non-profit corporations with their hard-earned tax dollars.  Through this deceit, harm has come to Goodman.  It has financially damaged Goodman causing expenses incurred in paying legal fees for his corporation and has degraded his ability to broadcast and earn a living by causing deliberate permanent, seemingly irreversible damage to his personal property, the Jason Goodman YouTube channel.  Defendant's harmful malicious acts have damaged Goodman's public reputation and subjected him to sanctions further limiting his rights to access the Courts.

119.    In this case, plaintiff is the party most grievously injured by defendants' collusion and deceit.  Goodman seeks treble damages in this action both for the legal and other expenses he has borne and the loss of business and reputation due to defendants' acts.

120.    Esquenet deceived the Court when she declared Sharp's privately-owned for-profit LLC was inactive.  This was said in furtherance of a conspiracy to hide Sharp's ulterior political motive, to unjustly enrich Sharp and Esquenet and conceal their malicious intent.  Esquenet would know it could be fatal to her case if the Court learned the CEO of tax-exempt NATAS had a politically partisan, for-profit LLC that might be motivating improper decisions.  Esquenet deceived the Court in her effort to maliciously and intentionally harm Goodman personally by wrongfully suing his corporation in violation of 47 U.S. Code § 230 and lying about the true motive in violation of NYCL – JUD § 487.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 30

121.    Esquenet engaged in a pattern and practice of deceiving the court with the

deliberate intention of harming Goodman.

## PRAYER FOR RELEIF

Plaintiff requests that this Court enter judgment in his favor on each claim for relief set

forth above and award him relief including, but not limited to, the following:

A.  An Order declaring that defendant abused civil process by suing a provider of

interactive computer services for information published by another provider,

Goodman, and vacating all sanctions and judgements resulting from the abuse.

B.  An Order demanding the Defendants compensate Plaintiff for special damages

attributed to the abuse of process including but not limited to legal fees incurred by

Goodman (not less than $180,000) and additional remuneration for loss of business

that resulted from defendants' malicious abuse of process.

C.  An Order declaring false statements by Margaret Esquenet made to the court during

litigation violated NYCL - JUD § 487 and awarding Plaintiff treble damages for legal

fees, loss of recurring revenue from monthly subscribers, loss of business

opportunities, damage to reputation and any other relief the Court deems appropriate.

D.  An Order referring these allegations to the IRS for an immediate investigation of

Defendants for violating IRC 501(c)(6) and other state and federal laws.

E.  Any further relief as the Court may deem just and appropriate.

## CONCLUSION

For the reasons set forth herein, pro se plaintiff Goodman respectfully requests the Court issue an

order finding Defendants engaged in unjust enrichment and abuse of process at the expense of

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 31

Goodman, in violation of New York Not-For-Profit Law, NYCL JUD § 487 and for the other

reasons set forth herein and for any other reasons the Court deems appropriate.


Signed this 14th day of April 2022

Respectfully submitted,

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 32

**(EXHIBIT A)**

SECRETARY OF THE STATE OF CONNECTICUT

Annual Report

165 CAPITOL AVENUE
P.O. BOX 150470
HARTFORD, CT 06115-0470

```
FILING #0007146658 PG 1 OF 3
        VOL A-00689 PAGE 1967
    FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT
```

1.  Name of Limited Liability Company:        SHARP THINGS, LLC

2.  Business ID:                              1224702

3.  Report due in the month of:              March, 2020

4.  NAICS Code:                              NONE

    Changes:
    541990 (All Other Professional, Scientific, and
    Technical Services)

5.  This Limited Liability Company is:       DOMESTIC
    Fee is:                                  $80.00
    Business Name:                           SHARP THINGS, LLC

6.  Mailing Address:                         50 DOWNS AVE.
                                             STAMFORD,CT 06902

    Changes:
    50 DOWNS AVE.
    STAMFORD,CT 06902 USA

7.  Principal Office Address:                50 DOWNS AVE.
                                             STAMFORD,CT 06902

    Changes:
    50 DOWNS AVE.
    STAMFORD,CT 06902 USA

8.  Address Required in State of Formation
    (Foreign Limited Liability Company):

    Changes:

FILING #0007146658 PG 2 OF 3
VOL A-00689 PAGE 1968
FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT

9. Agent Information

| | |
|---|---|
| Agent Type: | INDIVIDUAL |
| Agent Name: | ADAM MIKAEL SHARP |
| Agent's Business Address: | 50 DOWNS AVE.<br>STAMFORD,CT 06902-7803 |
| Agent's Residence Address: | 50 DOWNS AVE.<br>STAMFORD,CT 06902-7803 |
| Agent's Mailing Address: | |

Agent's Business Address Changes:
50 DOWNS AVE.
STAMFORD,CT 06902 USA

Agent's Residence Address Changes:
50 DOWNS AVE.
STAMFORD,CT 06902 USA

Agent's Mailing Address Changes:
50 DOWNS AVE.
STAMFORD,CT 06902 USA

Name of person accepting appointment:
Title:
Signature Accepting Appointment:

(if agent is a business also print name and title of person signing)

10. Date: 02/11/2021

11. Email Address: adam@sharpthings.io

12. I hereby certify and state, under penalties of false statement, that all of the information set forth on this annual report is true. I hereby electronically sign this report.
Print Capacity: MEMBER / CHAIRMAN & CEO

13. Signature of Authorizer: ADAM SHARP

Report Officers/Directors
Business ID : 1224702

```
FILING #0007146658 PG 3 OF 3
      VOL A-00689 PAGE 1969
    FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT
```

1. Full Legal Name:      ADAM MIKAEL SHARP
   Title(s):             MEMBER / CHAIRMAN & CEO
   Residence Addr:       50 DOWNS AVE.
                         STAMFORD,CT 06902

   Business Addr:        50 DOWNS AVE.
                         STAMFORD,CT 06902

   Res Changes:          _____
                         _____
                         _____
   Bus Changes:          _____
                         _____
                         _____

2. Full Legal Name:      CYNTHIA LYNN SHARP
   Title(s):             MEMBER
   Residence Addr:       50 DOWNS AVE.
                         STAMFORD,CT 06902

   Business Addr:        50 DOWNS AVE.
                         STAMFORD,CT 06902

   Res Changes:          _____
                         _____
                         _____
   Bus Changes:          _____
                         _____
                         _____

**(EXHIBIT B)**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

JASON GOODMAN

        Plaintiff,

vs.

ADAM SHARP, TERRANCE O'REILLY,
FRANK SCHERMA, MARGARET
ESQUENET, ACADEMY OF TELEVISION
ARTS AND SCIENCES, INC.,

        Defendants

Case No.: 1:21-cv-10627-VEC

PROPOSED THIRD AMENDED
COMPLAINT FOR UNJUST
ENRICHMENT, ABUSE OF PROCESS
AND MISCONDUCT BY ATTORNEYS

JURY TRIAL DEMANDED

Pro Se Plaintiff Jason Goodman ("Goodman") alleges as follows, upon actual knowledge with respect to himself and his own acts, and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1. This action is for unjust enrichment, abuse of process, and misconduct by attorneys in violation of New York Not-For-Profit Corporation Law, 47 U.S. Code § 230, and New York Consolidated Law NYCL JUD § 487.

2. Plaintiff seeks compensatory damages, in an amount not less than $180,000, and punitive damages to be determined at trial.

3. Defendants Adam Sharp ("Sharp"), Terrance O'Reilly, ("O'Reilly "), Frank Scherma, ("Scherma"), Margaret Esquenet ("Esquenet"), and Academy Of Television Arts And Sciences, Inc. ("ATAS") jointly and severally acted in cooperation with one another and other non-parties, outside the scope of their legal authority in violation of New York Not-For-Profit Corporation Law, Federal law, and their respective

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 1

fiduciary, and other legal and ethical obligations, to unjustly enrich Sharp at Goodman's expense.

4.  It would be against equity and good conscience to permit a wealthy corporate entity to use hundreds of thousands of dollars in tax-exempt funds and a team of legal professionals to sue a sole proprietorship in violation of 47 U.S. Code § 230 for content published by another information provider.  This is particularly egregious given the non-profit in this case is legally authorized only to promote and nurture companies in the broadcast industry, not to discretionarily sue them into oblivion.

5.  Defendants conspired, communicated, and cooperated, directly or indirectly, with one another and third parties, to abuse the legal process and misuse tax-exempt funds for their own personal inurement and unjust enrichment at Goodman's expense.

6.  Defendants used the law for a purpose for which it was not intended, in furtherance of an ulterior motive and to unjustly enrich themselves Goodman's expense.

7.  Defendants conspired ab initio with non-party D. George Sweigert ("Sweigert") and continuously up to and including today to disrupt Goodman's daily business activities, overwhelm Goodman with frivolous legal filings, frustrate Goodman's ability to mount a legal defense and to deny Goodman's right to due process, a fair trial and impartial justice from the Court.

8.  Prior to any formal legal dispute, Goodman offered to remove the alleged infringement in exchange for removal of a malicious YouTube complaint against Goodman personally.  Defendants proceeded with malicious intent, knowing the complaint would disrupt normal business and do permanent irreversible damage to

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 2

---

**Deleted:** .

**Deleted:** to

**Deleted:** tax-exempt

**Deleted:** corporations that employ

**Deleted:** and U.S. Taxpayers subsidizing their corporate

**Deleted:** and violated the laws by which the corporations are organized by

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

Goodman's personal property, the Jason Goodman YouTube Channel.  Goodman's

Corporation had and has no claim to, or ownership of this property.  Removal of the

complaint would not have prevented Defendants from accessing any of their rights or

any defense.  Defendants took malicious action against Goodman personally, prior to

suing his corporation, for their personal inurement and unjust enrichment.

9.   Goodman's corporation had no ownership of the Jason Goodman YouTube channel,

or any intellectual property created by him and uploaded to the YouTube Channel.

10. Goodman has alleged that non-party Sweigert was in email communication with

Defendants prior to commencing their legal action against Goodman's corporation.

11. Defendants learned of Goodman's corporation and maliciously targeted it to prevent

pro se defense after formulating this strategy through cooperation with Sweigert.

12. Defendants have jealously protected the owner of an anonymous email Goodman

alleges to be Sweigert, claiming Goodman revealed confidential discovery material

which was in fact not confidential at the time due to gross negligence by defendants.

13. After their malicious YouTube complaint but prior to suing Goodman's corporation,

Defendants were warned that Sweigert was provoking an expensive protracted legal

battle specifically to harm Goodman, which would in turn harm their client.

Defendants ignored this, failed to share the warning with board directors O'Reilly and

Scherma, and declined to consider the financial best interest of the tax-exempt entities

as required by New York Not-For-Profit Corporation Law.

14. New York Not-For-Profit Corporation Law considers board directors or executives to

be operating in good faith when they "rely on information, opinions, reports or

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 3

**Deleted:** Multimedia System Design, Inc., ("MSD") without proper authority of the

**Deleted:** of trustees or board chairmen

**Deleted:** .

**Deleted:** PROPOSED
**Formatted:** Pleading title
**Formatted:** Font: 12 pt, Font color: Black
**Formatted:** Font: 12 pt, Font color: Black

statements [from] counsel, public accountants or other persons as to matters which the directors or officers believe to be within such person's professional or expert competence" NPC § 717(b)(2).

15. No good faith effort was made to explore Goodman's well-founded warning about vexatious agitation or to consider the financial best interest of the tax-exempt entities.

16. Defendants did not consider the most expeditious or economical way to exercise the tax-exempt entitles' rights to defend their trademark as required by New York Not-For-Profit Corporation Law.  Instead, defendants acted in service of their ulterior motive and sued Goodman's corporation to damage Goodman, gain advantage for Sharp's private for-profit political consulting firm and generate fees for Esquenet.

17. Defendants used regularly issued civil process against a corporation to compel Goodman, an individual, to act.  Defendants wrongfully sought to force Goodman to remove videos which were his personal property, not owned by the corporation, while simultaneously conspiring with Sweigert to deny Goodman the right to legal defense.

18. Defendants Sharp and Esquenet violated New York Not-For-Profit Corporation Law when they failed to inform board chairman O'Reilly, or the requisite quorum of trustees, before abusing the legal process for their ulterior purpose.

19. Defendants deceived the Court when they claimed to represent ATAS and Scherma.

20. Defendants O'Rielly, Scherma, and ATAS became complicit with this conspiracy when they failed to end the unjust enrichment and abuse of process.

21. Defendants calculated their economic attack in coordination with Sweigert, with the intent to bankrupt Goodman's corporation despite knowing that 47 U.S. Code § 230

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 4

expressly indemnifies a provider of interactive computer services, such as Goodman's Corporation, from being treated as a publisher of information, in this case Goodman.

22. The action against Goodman's corporation was without economic or social excuse or justification, except as an unjust financial and legal attack on Goodman personally. It was an artful attempt to manipulate the circumstances and the law, to sue Goodman's corporation for actions taken by Goodman. Financially destroying the corporation was intended to financially destroy Goodman and terminate his broadcasts. This also effectively tied Goodman's hands preventing him from defending himself pro se and depleting the corporation's finances prior to counsel's forced withdrawal.

23. Defendants gained additional advantage when Goodman's corporation's attorney was abused and intimated into withdrawing by non-party co-conspirator Sweigert.

24. Defendants ulterior motive wrongfully sought financial and political gain outside the legitimate ends of the process and had a corresponding detrimental effect on plaintiff who suffered actual and special damages in the form of lost business, lost revenue, the destruction of unrecoverable personal property and legal costs and expenses.

25. ATAS acted outside the scope of its tax-exempt status and legal authority when it participated in a civil suit in violation of the laws under which it is organized without the knowledge and consent of the board of trustees.

26. Defendants jointly and severally acted maliciously and with bad faith, in a manner and for a purpose for which the law was not designed, to block plaintiff from broadcasting during the 2020 U.S. Presidential election, damage his business, and destroy his public reputation for their own unjust financial and political enrichment.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 5

27. Defendant Sharp acted outside the scope of his legal authority and in violation of his fiduciary and other legal and ethical obligations to his non-profit employer and U.S. taxpayers when he failed to disclose ownership of a private for-profit company Sharp Things, LLC ("Sharp Things") in mandatory public IRS 990 filings.

28. Defendant Sharp acted outside the scope of his legal authority and in violation of his fiduciary and other legal and ethical obligations when he unilaterally took legal action on behalf of ATAS without the knowledge or consent of board chairman Scherma.

29. Defendants engaged in collusion with intent to deceive the Court in violation of New York Consolidated Laws, Judiciary Law - JUD § 487 by falsely stating Sharp Things was inactive at the time legal action against Goodman's corporation commenced.

30. Defendants engaged in collusion with intent to deceive the Court in violation of New York Consolidated Laws, Judiciary Law - JUD § 487 by falsely stating they legally represented ATAS and Scherma, when in fact they did not according to Scherma.

31. Defendants engaged in deceit and collusion with intent to deceive the Court in violation of NYCL- JUD § 487 by falsely claiming Goodman violated a stipulated order of protection ("SOP") when their own associate Samuel Eichner ("Eichner") violated the SOP with comments published to the public on the ECF docket on May 15, 2021, *See THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC., et al., v. MULTIMEDIA SYSTEM DESIGN, INC. ECF No. 69.*

32. Defendants deceived the Court with the malicious intention of harming Goodman.

33. New York courts have held that a claim under JUD § 487 exists if there is a 'chronic and extreme pattern of legal delinquency.' Solow Management Corp. v. Seltzer, 18

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 6

**Deleted:** failed to disclose his ownership of a private for-profit company Sharp Things, LLC ("Sharp Things") in mandatory public IRS 990 filings for NATAS

**Deleted:** on the record that

**Deleted:** while this

**Deleted:** PROPOSED
**Formatted:** Pleading title
**Formatted:** Font: 12 pt, Font color: Black
**Formatted:** Font: 12 pt, Font color: Black

AD3d 399 (1st Dept. 2005), citing to Jaroslawicz v. Cohen, 12 AD3d 160 (1st Dept. 2004); Cohen v. Law Offices of Leonard and Robert Shapiro, 18 AD3d 219 (1st Dept. 2005). Some courts have held "a single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability [under Judiciary Law Section 487]. Trepel v. Dippold, 2005 WL 1107010 (SDNY 2005).

34. Defendants conspired with one another and additional non-parties to abuse regularly issued legal process and deprive Plaintiff of his right to due process and a fair trial.

35. Defendants abused regularly issued legal process and conducted themselves in a manner and for a purpose for which the law was not designed.

36. Defendants had an ulterior motive to disrupt Plaintiff's business and force him to stop broadcasts of news, opinion, parody, and other first amendment protected activity and to deprive him of other rights for their own unjust enrichment and personal inurement in violation of New York Not-For-Profit Law, 47 U.S. Code § 230 and other laws.

### PARTIES AND NON-PARTIES

37. Plaintiff – Pro se Plaintiff Jason Goodman is a New York citizen and the sole owner of all Crowdsource the Truth ("CSTT") intellectual property ("IP").  Goodman also owns Multimedia System Design, Inc ("MSD") a New York corporation with its primary place of business in New York, NY 10001.

38. Defendant – Adam Sharp is a Connecticut citizen, President and CEO of The National Academy of Television Arts and Sciences ("NATAS") a 501(c)(6) tax-exempt business association, and owner and CEO of Sharp Things, LLC ("Sharp

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 7

Deleted: operations

Deleted: , information

Deleted: PROPOSED

Formatted: Pleading title

Formatted: Font: 12 pt, Font color: Black

Formatted: Font: 12 pt, Font color: Black

Things") a privately owned for profit political social media strategic consulting company having its primary place of business in Stamford, CT.

39. Defendant Terry O'Reilly is a Pennsylvania citizen and Chairman of the Board of trustees of NATAS a 501(c)(6) tax-exempt business association and CEO of Pittsburgh Community Broadcasting Corporation, an independent, locally owned, and community-supported public media organization.

40. Defendant – Frank Scherma is a California resident and the CEO and Chairman of the board of ATAS a 501(c)(6) tax-exempt business association.  Scherma is also President and co-founder of Radical Media, Inc. a company whose website lists their primary address at 435 Hudson St. 6th Floor New York, NY 10014.

41. Defendant – The National Academy of Television Arts and Sciences, Inc., is a New York 501(c)(6) not-for-profit corporation with its principal place of business in New York, New York 10016.

42. Defendant – Academy of Television Arts & Sciences, is a California not-for-profit corporation with its principal place of business in N Hollywood, California 91601.

43. Defendant – Margaret Esquenet ("Esquenet") is a Maryland citizen and an Attorney with FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP ("Finnegan") having its primary place of business in Washington, DC 20001. Esquenet and her associates at Finnegan represent the defendants in THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES, v MULTIMEDIA SYSTEM DESIGN, INC. Case 1:20-cv-07269 ("NATAS v MSD")

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 8

**Deleted:** Citizen

**Deleted:** d' efendants

**Deleted:** PROPOSED
**Formatted:** Pleading title
**Formatted:** Font: 12 pt, Font color: Black
**Formatted:** Font: 12 pt, Font color: Black

44. Non-party David George Sweigert is a professional hacker, vexatious cyber stalker and serial harasser who has made public statements against his own interest about his family history of medically diagnosed and pharmaceutically treated schizophrenia. https://odysee.com/@CounterSpoliation:6/CIA-Dave-Acton-court-testimony-George-Webb-part1of2:c.  Goodman continues to allege Sweigert provoked litigation between Plaintiff and Defendants and assisted Defendants throughout, with intent to harm Goodman.  Sweigert harassed and intimated Goodman's corporation's attorney forcing withdrawal and leaving Goodman unable to replace counsel despite strenuous efforts.  Sweigert also continually shared strategically valuable information with Defendants which was incorporated into litigation and used to harm Goodman.

**JURISDICTION AND VENUE**

45. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000 and because the parties are diverse.

46. This Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of New York pursuant to New York Not-For-Profit Law, 47 U.S. Code § 230, 26 U.S. Code § 501 and New York Judiciary Law - JUD § 487 because the plaintiff is being harmed in this District; Defendants are domiciled in this District; Defendants' agent can be found in this District; Defendants are conducting business in this District; and Defendants are violating the Plaintiff's rights in this District. New York's Long Arm Statute gives the Court jurisdiction over Scherma because he transacts business regularly in New York both through ATAS and Radical Media and because the conspiracy to harm Goodman committed tortious acts within New York.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 9

Deleted: pursuant to 47 U.S. Code § 230, 26 U.S. Code § 501

Deleted: New York Judiciary Law - JUD § 487

Deleted: Defendant's

Deleted: Defendant is

Deleted: Defendant is

Deleted: PROPOSED

Formatted: Pleading title

Formatted: Font: 12 pt, Font color: Black

Formatted: Font: 12 pt, Font color: Black

**LEGAL RESPONSIBILITIES OF NONPROFIT BOARDS OF DIRECTORS**

47. Unlike their counterparts in for profit corporations, board members, trustees, executives, employees, or any other agents of tax-exempt corporations are legally bound to act only in furtherance of the authorized organizational purpose for which the entity has been granted tax exempt status.  Activities that do not support the authorized organizational purpose are considered prohibited activities and no board member or any other agent may engage in any such activity in the name of the non-profit pursuant to 26 U.S. Code § 501(c)(6), New York Not-For-Profit Law and the New York Non-profit Revitalization Act of 2013.

48. New York case law precedent has made the responsibilities of being on a nonprofit board essentially the same as being on a corporate board of directors with some important differentiating factors. These areas of legal responsibility govern the actions of nonprofit board members.

(1) Duty of Care

Board directors, trustees and executives are obliged to give the same care and concern to their board responsibilities as any reasonable ordinary person would.  Board members legal obligations to the entity include monitoring the nonprofit's activities and actively working with other trustees to adhere only to the organization's authorized tax-exempt purpose.  Board directors should be able to read and understand financial reports and be willing to question expenditures particularly in cases where there is reasonable suspicion of prohibited activity.

(2) Duty of Loyalty

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 10

Deleted: ) under any circumstance

Deleted: PROPOSED
Formatted: Pleading title
Formatted: Font: 12 pt, Font color: Black
Formatted: Font: 12 pt, Font color: Black

Board directors, trustees and executives must always place financial and other interests of the non-profit entity ahead of their own.  All board members, trustees, and executives are required to publicly disclose any conflicts of interests or potential conflicts such as activities in the private for-profit sector.  Board members, trustees and executives must not use their positions with the tax-exempt entity as a means for personal or commercial gain.

(3) Duty of Obedience

Board directors, trustees, and executives must ensure that the nonprofit is abiding by all applicable laws and regulations and doesn't engage in illegal or unauthorized prohibited activities. The organization must carry out its mission in accordance with the authorized organizational purpose ratified in the articles of incorporation for which the entity is granted nonprofit status.

49. Although non-profit board members and executives are generally indemnified from liability arising from good faith decisions and actions, there are notable exceptions.

50. Nonprofit board members and executives are not indemnified from liabilities arising from actions and activity that intentionally cause injury, harm or damage.

51. Nonprofit board members and executives are not indemnified from personal participation in tortious conduct or conduct that would otherwise subject the actor to civil or criminal liability under the law.

52. Nonprofit board members and executives are not indemnified from knowing approval of criminal acts or active involvement in criminal activities by the organization.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 11

**Deleted:** <#>Additionally, a strict inurement prohibition prevents a tax-exempt organization, its board members, trustees, executives, employees, or agents from using income or assets of the entity to excessively benefit an individual that has a close relationship with the tax-exempt organization or can exercise significant influence over it.  Inurement is not limited to pecuniary benefits but rather any tangible benefit whatsoever including personal, political, or any other benefit.¶

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

53. Nonprofit board members and executives are not indemnified from personal involvement in a contract involving the nonprofit that is tainted by fraud.

54. Nonprofit board members and executives are not indemnified from participation in transactions approved by the board with an entity in which the board member had a substantial personal or financial interest.

55. Sharp's failure to disclose personal financial interest in Sharp Things, coupled with his personal political motivation for attacking Goodman's corporation to harm Goodman make this exception one of particular importance.

## DEFENDANTS AND THEIR WRONGFUL ACTS

56. Defendant Sharp is the President and CEO of NATAS and Director, CEO and Agent of Record for Sharp Things, a privately-owned for-profit Connecticut Limited Liability Corporation that claims on its website www.sharpthings.io to operate "at the intersection of media, politics and technology".  Sharp was an executive at Twitter from 2010 through 2016 and is a self-proclaimed "political operative".

57. Sharp has failed to disclose his personal ownership of, or income from Sharp Things, in NATAS public IRS 990 filings as required by the tax-exempt laws under which NATAS and ATAS are organized and NATAS' own conflict of interest policy.  Evidence in the public domain indicates Sharp may currently have, or has in the past had, business relationships with numerous prominent Democrat Party politicians including Andrew Cuomo, Barack Obama and Joe Biden.

58. Fed. R. Civ. P. Rule 17(b)(2) states that a corporation can only have the capacity to sue or be sued "by the law under which it was organized".  This inherently excludes

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 12

cases in which a CEO in ongoing violation of tax-exempt laws for failure to disclose

his private for-profit activities as required commences legal action for the entity.

59. Sharp exceeded his legal authority as CEO of the tax-exempt entity when he failed to

obtain the required consent of the board of trustees and proceeded to sue with intent

to harm Goodman and without the knowledge of chairmen O'Reilly and Scherma.

60. O'Reilly and Scherma have failed in their roles as board chairmen to ensure that

corporate tax-exempt funds were used only in the best financial interests of the tax-

exempt corporations and only for authorized tax-exempt purposes as required by law.

61. Defendants will fail to produce minutes from board meetings or any communications

indicating the required number of trustees had the opportunity to weigh the value of

Goodman's pre-litigation statements against the cost of suing in view of the financial

interests of the tax-exempt entities as required by New York Not-For-Profit Law.

62. In violation of the laws by which tax-exempt ATAS is organized, defendant Sharp

unilaterally acted on behalf of ATAS without the knowledge or consent of board

chairman and CEO Scherma.

63. During a phone call in January 2022, Scherma told Goodman he was unaware of him

or the NATAS v MSD lawsuit and was not represented by Esquenet or Finnegan and

that Sharp had no legal authority to act on behalf of ATAS.

64. Defendants Sharp and Esquenet engaged in collusion intended to deceive the Court.

Esquenet's firm did not legally represent ATAS as claimed and still does not.

65. Defendant Sharp wrongfully used his role as CEO of the non-profit for personal

inurement in furtherance of his own personal political goals and those of his private,

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 13

---

**Deleted:** Upon learning of this legal action,

**Deleted:** action settlement offer versus

**Deleted:** NATAS and

**Deleted:** are

**Deleted:** Frank

**Deleted:** and

**Deleted:** when they sued MSD

**Deleted:** <#>In violation of the laws by which NATAS and ATAS are organized, defendant Scherma became a co-conspirator when he failed to discontinue ATAS participation in NATAS v MSD and failed to obtain consent from the ATAS board of trustees to proceed with ATAS as a co-plaintiff in the ongoing abuse of process.¶

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

for-profit business.  Sharp did so knowingly and in violation of fiduciary, ethical and

legal obligations to the tax-exempt corporations NATAS and ATAS and taxpayers.

66. Sharp became CEO of NATAS in May of 2018.  At the time of this writing, to the

best of plaintiff's knowledge, no NATAS public 990 filings have been made with the

IRS, New York Attorney General or Secretary of State for 2019, 2020 or 2021.

67. Prior to becoming President and CEO of NATAS, Sharp was employed at Twitter as

Head of Government and non-profits.  Sharp later became Head of News Government

and Elections.  He has publicly stated that he is a political operative.  He maintains an

active for-profit business that is as a tool for political operatives and their objectives.

Sharp presents himself as an expert in all these fields and should be familiar with the

legal and ethical requirements of an executive in his position.

68. On January 29, 2011, The New York Times said Sharp was "the human embodiment

of Twitter" (https://www.nytimes.com/2011/01/30/us/politics/30twitter.html)

69. On September 30, 2011, a New York magazine article reported on Sharp's direct

negotiation with Barack Obama's closest advisors in organizing the historic first

"Twitter Town Hall" in which the President of the United States publicly

communicated via the nascent digital platform for the first time ever.

(https://nymag.com/news/media/twitter-2011-10/)

70. Twitter stock began publicly trading later in 2013.  The initial public offering made

many Twitter executives, which Sharp was at the time, exceedingly wealthy, despite

the company's inability to operate profitably until two years after Sharp's departure.

https://www.cnn.com/2019/02/07/tech/twitter-earnings-q4/index.html

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 14

Deleted: PROPOSED

Formatted: Pleading title

Formatted: Font: 12 pt, Font color: Black

Formatted: Font: 12 pt, Font color: Black

71. A photograph on the front page of Sharp Things's website www.sharpthings.io shows Defendant Sharp in direct personal communication with Barack Obama, advertising Sharp's unusually close relationship with the former President.

72. In October 2020, shortly after Sharp's malicious YouTube complaint against the Jason Goodman YouTube channel, Twitter suspended The New York Post's Twitter account ("@NYPOST") in direct response to the Newspaper's publication of contents from a laptop attributed to Hunter Biden, the cocaine addicted son of then candidate Joe Biden. The information on the laptop has subsequently been corroborated by firsthand testimony from decorated U.S. Navy officer Anthony Bobulinski, the New York Times, and the Washington Post. Despite the newsworthiness and veracity of this information, Twitter acted in furtherance of its own political interest, just as Sharp has, to block unfavorable but true information and to suppress protected first amendment activities by perceived political opponents.

73. On January 8, 2021, amid claims of election tampering, including allegations citing Twitter's suppression of Biden's laptop, Twitter permanently suspended then U.S. President Donald Trump ("@realDonaldTrump"). Throughout its history, Twitter has engaged in numerous overt demonstrations of a corporate culture that bends or even break laws and ethical norms to suppress political opposition. Sharp played a key role in forming that corporate culture in his six years at Twitter during its founding.

74. During congressional testimony in or around November 2020, former Twitter CEO Jack Dorsey called the removal of @NYPOST a "total mistake" affirming the legitimacy of claims made by the newspaper and his own company's illegitimate



Deleted: Things, LLC's

Deleted: .

Deleted: controversial

Deleted: the account of

Deleted: willing to bend

Deleted: formative days

Deleted: PROPOSED

Formatted: Pleading title

Formatted: Font: 12 pt, Font color: Black

Formatted: Font: 12 pt, Font color: Black

removal of the content.  Dorsey fell short of attributing the mistake to any specific

individual or ascribing a motive to the action.

75. As the keynote speaker at Millennium Alliance's 2017 Digital Marketing

Transformation Assembly, Sharp claimed his professional background was as a

"Political Operative" among other things.  The statement remains online published on

Sharp Things' YouTube channel (https://youtu.be/yB-IvtJ56NE).

76. On or around August 2020, Sharp acting without consent or knowledge of the boards

of trustees or consideration of fair use pursuant to the Digital Millennium Copyright

Act ("DMCA"), or the best financial interests of the non-profit corporation he

represents, filed a complaint with YouTube alleging a video on the Jason Goodman

YouTube channel infringed on NATAS copyright and diluted its trademark.

77. Plaintiff does not deny Sharp was within his rights to file a claim with YouTube, but

it is empirically untrue to say it was his only choice.  Further, a claim with YouTube

is NOT a lawsuit, and having a right to do something does not necessarily make it the

right thing to do.  Anyone has a right to complain about anything they do not like.  As

a social media expert, Sharp would be aware he selected the most aggressive

approach available and his complaint would harm plaintiff, terminating access to live

broadcasting and disrupting normal business operations.

78. Sharp's claim should have been given extraordinarily careful consideration because it

would damage a company operating in the business space that NATAS is organized

to protect and nurture.  It cannot be denied that Sharp could have chosen to contact

Goodman first and ask to remove the disputed image without filing a complaint.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 16

**Deleted:** created by

**Deleted:** it

**Deleted:**  likely

**Deleted:** could

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

79. Outside his role as NATAS CEO and owner of Sharp Things, in his capacity as a private individual Sharp operates a YouTube channel called the Roger Sharp Archive ("RSA") http://www.rogersharparchive.com.  Approximately sixty-seven videos chronicle the broadcasting career of Sharp's deceased father, Roger Sharp.  Sharp does not own the copyrights to this material but alleges fair use in a disclaimer published on the site. *"Description – A non-commercial archive of work by late ABC and CBS television newsman Roger Sharp (1935-1986), compiled and maintained by his son Adam.  All broadcast clips are the intellectual property of their respective networks and/or stations and are believed to be used here under the fair use and library/archive exceptions to U.S. copyright law.  If you are the proper copyright holder of any of these works and object to my use of them, please contact me."* (https://www.youtube.com/user/rogersharparchive/about)

80. The disclaimer demonstrates that Sharp has a clear understanding of copyright law and the consequences of posting disputed material on social media platforms.  Notably, Sharp requests the courtesy of contact prior to legal action should a dispute arise.  Sharp deliberately and maliciously denied Plaintiff that courtesy.

81. Sharp was aware his complaint to YouTube alleging copyright infringement had a high likelihood of resulting in punishment up to and including disabling the YouTube channel permanently.  In YouTube's terminology this type of complaint is expected to result in one "strike" in a "three strikes you're out" system.  The least damage expected from one strike is the loss of live broadcasting and uploading of new videos.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 17

**Deleted:** specifically

**Deleted:** denies

**Deleted:** very same

**Deleted:** Plaintiff's

**Deleted:** video

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

82. Sharp was aware his action would have an immediate negative impact on Plaintiff's normal business operations and would be likely to stop plaintiff from broadcasting.

83. Statements in the description and disclaimer on the RSA indicate that Sharp was aware copyright complaints against a user could result in the removal of content and could restrict or eliminate the violator's future access to YouTube.

84. On information and belief, plaintiff alleges Sharp deliberately misused a properly served civil procedure for an ulterior motive and improper purpose to penalize plaintiff because he is a popular conservative social media influencer and Sharp did not want him broadcasting.  Like his comrades at Twitter, Sharp was willing to engage in unethical and even illegal action to stop perceived political opponents from broadcasting during the period leading up to the 2020 Presidential election.

85. After plaintiff submitted an appropriate appeal to YouTube, counterclaiming parody fair use, negotiations between plaintiff and defendant Margaret Esquenet began.

86. In a phone call prior to any legal action, plaintiff offered to remove all occurrences of the alleged infringement if defendants withdrew their unnecessary YouTube complaint and restored plaintiff's business to its normal operating status.  Irrespective of the merits of the complaint, its withdrawal was a mandatory prerequisite to any equitable and timely settlement of the dispute.  Had Goodman withdrawn his appeal as demanded, he would have forfeited all rights and been left with no remedy.  The reverse was not true for defendants, withdrawal of their complaint would not eliminate any of their rights or defenses.  Esquenet refused the offer immediately without consulting Sharp or the NATAS or ATAS boards of trustees, and demanded

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 18

**Deleted:** withdrew

**Deleted:** .

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

Plaintiff first withdraw the counterclaim and pay legal fees.  This illogical demand would have caused Plaintiff to permanently abandon his rights to appeal and would leave his YouTube channel inactive until the period after the 2020 election. Conversely, if Defendant withdrew their initial complaint, no remedy would be lost. In violation of New York Not-For-Profit Law, no good faith effort was made by defendant to entertain plaintiff's good faith no-cost offer.  Defendant has repeatedly deceived the court claiming they had "no choice" but to sue which is untrue and indefensible.  Defendants failed to evaluate the financial interest of their tax-exempt corporations when considering Goodman's offer and voluntarily chose to proactively sue in violation of the tax-exempt laws by which they are organized.

87. On or around August 23, 2021, Plaintiff inadvertently included Esquenet and numerous other individuals on an email response intended only for Goodman's friend non-party Larry Klayman ("Klayman"). The message included an email address defendants allege violated the SOP.  On or around August 24, 2021, Defendant sent a letter to the court (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 108) claiming Plaintiff violated the SOP and provoking a show cause hearing (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 112).

88. During a teleconference that took place on April 30, 2021 at 2:00 PM defendant Esquenet's associate Eichner said, *"Your Honor, it was an e-mail [REDACTED]@ [REDACTED].com. That is the e-mail address of the person who notified the television academies of the image."* Even though this conference was between the parties and judge Caproni, its contents including the unredacted email address were

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 19

published to the public on the docket on May 15, 2021 and remain there as of this filing. (*See* NATAS v MSD 1:20-cv-07269-VEC-OTW ECF No. 69 page 42 line 22).

89. The transcript reveals what Goodman could not recall during interrogation at the show cause hearing.  Eichner's comments placed the email address in the public domain for months before Goodman allegedly exposed it.  Defendant made no effort whatsoever to have it redacted from the transcript, but instead made an overt and deceptive effort to ensnare the unrepresented plaintiff in a damaging show cause trap.

90. Rule 3.3 of the D.C. Bar Association of which Esquenet is a member addresses Candor Toward the Tribunal.  Rule 3.3(d) states in part "a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."  Esquenet had an ethical obligation to be accountable for her own team's irresponsible failures and alert the Court that it was Eichner that violated the SPO not Goodman.

91. Financing of this legal action is outside the purview of the tax-exempt entity's authorized organizational purpose.  Defendants will fail to demonstrate that the unnecessary lawsuit is not a prohibited activity.  These allegations should be referred to the IRS for immediate investigation including revocation of the tax-exempt status of the entity and criminal prosecution of any individual party to the violation.

92. Sharp's abuse of process was not intended to cure the alleged injury of copyright infringement, but rather, served his ulterior purpose of preventing Goodman from broadcasting during the 2020 Presidential election and damaging his business.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 20

93. As an attorney and counsel to defendants, Esquenet had an ethical obligation to inform her clients of the laws that govern their ability to sue. Pursuant to Fed. R. Civ. P. Rule 17(b)(2) a corporation may only sue in accordance with "the law under which it was organized". The Defendant's tax-exempt corporation is organized pursuant to 26 U.S. Code § 501(c)(6) and New York Not-For-Profit Law and is prohibited from engaging in activity that does not "advance the arts and sciences of television, and [to] foster creative leadership in the television industry for artistic, cultural, educational, and technological progress" pursuant to their articles of incorporation.

94. Defendant will fail to demonstrate that the lawsuit legitimately advanced the television industry in any way. In fact, the action undermines the tax-exempt entity's authorized purpose. The mere threat of legal action chills first amendment activity and hurts the artistic and cultural development of parody as a form of expression in television by creating the impression that endeavors in that area put the creator at risk.

95. Defendants O'Reilly and Scherma as chairmen of the boards failed to uphold their personal fiduciary and other legal obligations by failing to shield the tax-exempt entities from the Sharp's prohibited activities. Irrespective of their knowledge at the outset, upon learning of the misdeeds, they failed to cure defects and instead joined in the abuse of process in violation of their own personal legal obligations, New York Not-For-Profit Law and the laws by which the tax-exempt entities are organized.

**INJURY TO THE PUBLIC AND PLAINTIFF**

96. Defendant's decision to complain to YouTube about Goodman and then to sue his corporation rather than seek rapid, no cost settlement, harms taxpayers whose funds

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 21

---

**Deleted:** as ratified in Defendant's

**Deleted:** could advance

**Deleted:** it contradicts

**Deleted:** Defendant Terry

**Deleted:** chairman

**Deleted:** board of trustees has also

**Deleted:** his

**Deleted:** entity

**Deleted:** personally motivated,

**Deleted:** of CEO Sharp.

**Deleted:** O'Reilly's

**Deleted:** of these facts

**Deleted:** Sharp's

**Deleted:** O'Reilly

**Deleted:** rectify these

**Deleted:** Sharp and Esquenet

**Deleted:** perpetuating this abuse of process.¶ Defendant Frank Scherma as chairman of the board of trustees and CEO of ATAS has also failed to uphold his fiduciary and other legal obligations by failing to shield

**Deleted:** tax-exempt entity from the personally motivated, prohibited activities of Sharp. Irrespective of Scherma's knowledge of these facts at the outset, upon learning of Sharp's misdeeds, he failed to rectify the issue by terminating ATAS involvement or obtaining board consent and instead has joined Sharp, Esquenet and O'Reilly in perpetuating this

**Deleted:** his

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

subsidize the activities of the Defendants.  The decision to sue Goodman's corporation with intent to harm Goodman personally and for Sharp's private inurement when a clear path to a zero-cost settlement was available constitutes prohibited activity pursuant to the New York Nonprofit Revitalization Act of 2013 by the non-profit and is an abuse of regularly issued civil legal process.

97. The mere threat of a lawsuit of this nature damages the public's ability to engage in free, first amendment protected discourse including the use of parody.  By sending a public signal that the defendants will challenge and financially punish attempts at parody it finds unfavorable, Defendants have violated their mandate of promoting development and leadership in the broadcast television industry, countermanding the authorized purpose for which they are granted tax-exempt status.  Suing Goodman's corporation to exercise leverage over Goodman is a further abuse of process. Lawsuits of this nature have a chilling effect on public discourse, discouraging others from freely exercising their first amendment rights, discouraging leadership, and undermining the legally authorized organizational purpose of the tax-exempt entities.

98. Because Plaintiff uses video broadcasting as the medium to exercise his First Amendment rights, Defendant had a special obligation to handle this matter in a way that would not damage the television or broadcast industry and would allow them to act in accordance with their authorized organizational tax-exempt purpose.

99. Defendant Sharp is a social media and political expert who knew his actions would damage Plaintiff's ability to broadcast during the 2020 presidential election.

100.    Sharp's personal political disposition favored President Joe Biden.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 22

101.    Sharp and Twitter have a track record of engaging in deceitful efforts to take

malicious, harmful action against political opponents.

102.    Sharp violated New York Not-For-Profit Law and wrongfully used his position of

power as the CEO of NATAS in violation of 47 U.S. Code § 230 to deliberately harm

Plaintiff's ability to participate in public discourse pertaining to the 2020 election and

harmed the public by denying them access to Plaintiff's broadcasts.

103.    In violation of New York Not-For-Profit Law and other federal and state laws

Defendants used tax-exempt funds for legal fees and other expenses related to a

lawsuit intended to personally inure Sharp and further his personal political interests

to benefit his private, for-profit company, at the expense of Goodman.

104.    In violation of New York Judiciary Law - JUD § 487, Margaret Esquenet

deceived the court in the course of litigation, falsely stating that Sharp was no longer

a political operative, and his private, for-profit company Sharp Things was no longer

active.  This was done solely to harm Goodman.  Documentation on file with the

Connecticut Secretary of State proves this statement to be false.  **(EXHIBIT A)**

105.    When officers of the court engage in deceit it undermines public confidence in the

legal system and is inherently damaging to the service of justice.  It also violates JUD

§ 487 which makes it a misdemeanor for attorneys to engage in deception.

106.    Esquenet additionally deceived the court claiming Plaintiff accused the deceased

father of Defendant Sharp of being involved in CIA mind control experiments

involving drugs and torture.  No such statement whatsoever was made by Plaintiff.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 23

---

**Deleted:** to

**Deleted:** 26 U.S. Code § 501(c)(6)

**Deleted:** Sharp's own

**Deleted:** and

**Deleted:** Sharp Things, LLC

**Deleted:** during NATAS v MSD

**Deleted:** , LLC

**Deleted:** Margaret

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

This purely fabricated deception intended to smear Plaintiff and cause the court and public to believe he was associated with loathesome "conspiracy theories".

107.    Defendant's actions have directly damaged Plaintiff's ability to broadcast on YouTube and earn income.  Defendant's efforts to terminate Plaintiff's broadcasts correspond to a steady decline in Plaintiff's income since the initiating event.

108.    Plaintiff has incurred substantial legal fees and suffered loss of business, loss of reputation and loss of income because of Defendant's abuse of process.

**ABUSE OF PROCESS**

Abuse of process, an intentional tort, is defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process (Curiano v. Suozzi, 63 NY2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324; Board of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assn., 38 NY2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278).

The four elements of abuse of process are

(1) regularly issued legal process, civil or criminal, compelling performance or forbearance of some act,

(2) the person activating the process was moved by an ulterior purpose to do harm, without economic or social excuse or justification,

(3) the person activating the process sought some collateral advantage or [*4] corresponding detriment to the plaintiff that is outside the legitimate ends of the process, and

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 24

(4) actual or special damage, (Board of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO, 38 NY2d 397, 380 NYS2d 635, 343 NE2d 278 (1975).

Ulterior purpose - the third element of this cause of action - is the intent to cause harm without excuse or justification, (Curiano v Suozzi, 63 NY2d 113, 480 NYS2d 466, 469 NE2d 1324 (1984); Board of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO, 38 NY2d 397, 380 NYS2d 635, 343 NE2d 278 (1975). Even where defendant acts out of spite or with a malicious motive this is not alone sufficient to sustain a cause of action for abuse of process, Curiano v Suozzi, supra; Place v Ciccotelli, 121 AD3d 1378, 995 NYS2d 348 (3d Dept 2014); Liss v Forte, 96 AD3d 1592, 947 NYS2d 270 (4th Dept 2012).

Even though the Court found the defendants' rights were infringed, and the lawsuit justified, defendants' rights would have been infringed by Goodman, not the corporation. Despite the Court's finding that there was a valid excuse and justification for defendants to sue, there was no excuse or justification to sue a corporation for content provided by Goodman except the ulterior motive to deliberately cause harm to Goodman.

**UNJUST ENRICHMENT**

The doctrine of unjust enrichment allows a plaintiff to recover from a defendant, in cases where the defendant has unfairly benefited from the plaintiff's efforts or at the plaintiff's expense. In New York, the elements of an unjust enrichment claim are "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 25

**Deleted:** even if for a malicious purpose,

**Deleted:** MSD.

**Deleted:** to protect their rights

**Deleted:** MSD

**Deleted:** and express intent to

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

equity and good conscience to permit the other party to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y. 3d 173, 182 (2011).

In this case, Defendants violated of 47 U.S. Code § 230 when they sought to enrich Sharp's private for-profit company Sharp Things and Sharp's attorney Esquenet, by suing Goodman's corporation for content published by Goodman.  It is not disputed, as reported in the New York Times, that Sharp has or had personal and business relationships with several well-known U.S. Politicians including former President Barack Obama and current President Joe Biden.  It is equally well known that Sharp was an aggressive advocate for Democrat political candidates in his role at Twitter and after as a Democrat political operative as he has publicly admitted.  Sharp and his co-conspirators misused tax-exempt funds for the bad faith purpose of unjustly enriching Sharp's private for-profit LLC and Esquenet's law firm Finnegan at Goodman's expense.

### NOERR – PENNINGTON DOCTRINE

Defendants attempt a bad faith claim of immunity under the Noerr–Pennington Doctrine.  In California Motor Transport v. Trucking Unlimited,[3] the United States Supreme Court limited the expanded scope of the doctrine when it held that Noerr–Pennington did not apply where defendants had sought to intervene in licensing proceedings for competitors, because the intervention was not based on a good-faith effort to enforce the law but was solely for the purpose of harassing their competitors.  Defendants also seek to allow their abuse of process to stand to limit Goodman's ability to compete with constituents who support defendants' tax-exempt funding model of corporate sponsored television advertising.  Specifically, Goodman's business model of

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 26

delivering broadcast information and entertainment via a direct to viewer sponsorship model challenges the tradition of corporate advertiser supported television and threatens the financial future of the Defendants.  Defendant's action against Goodman's corporation was not brought in good faith, but rather was an assault against Goodman disguised as a good faith effort to defend their trademark.  Defendants fail the "good faith" test as described by New York Not-For-Profit Corporation Law and the American Bar Association.  Just as the First Amendment does not protect all speech, where some may consider protected parody to be an infringement, the Noerr-Pennington doctrine is not a catchall.  Plaintiff's complaint pleads sufficient facts, and the evidence submitted to the Court is sufficient to satisfy the allegation that defendants deliberately presented false claims and made fraudulent representations which were material to the defendants obtaining governmental action.  In this case Goodman's cause of action should overcome the assertion of a Noerr-Pennington defense under the sham exception.

### FIRST CLAIM FOR RELIEF

**Unjust enrichment – 47 U.S. Code § 230 Indemnifies Providers of Interactive Services**

109.    Plaintiff repeats and realleges every allegation set forth above

110.    Esquenet should have known defendants could not sue a corporation for content provided by Goodman pursuant to 47 U.S. Code § 230(c)(1) "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Section 230 considers a corporation a provider or a user of interactive computer services and Goodman as another information content provider.  Section 230 indemnifies providers from being treated as

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 27

Deleted: Other Parties for Content Published By Goodman
Deleted: Because
Deleted: is an attorney, she
Deleted: NATAS and ATAS
Deleted: MSD
Deleted: information
Deleted: which states
Deleted: both MSD to be
Deleted: and
Deleted: also recognizes
Deleted: , even in his role
Deleted: CEO of MSD, to be a separate legal entity, an
Deleted: or
Deleted: expressly
Deleted: MSD
Deleted: PROPOSED
Formatted: Pleading title
Formatted: Font: 12 pt, Font color: Black
Formatted: Font: 12 pt, Font color: Black

publishers of information or held liable for content.  Defendants' interpretation of 47 U.S.

Code § 230(e)(2) is incompetent if not disingenuous.  There is no carve out allowing

providers to be treated as publishers in any claim.  There was no justification apart from

intent to cause harm to Goodman by suing his corporation rather than Goodman himself.

111.    Esquenet calculated that suing Goodman's corporation compelled him to hire

counsel at tremendous cost.  She would have also calculated that this was likely to

deplete financial resources and hinder Goodman's ability to defend his rights.  This was

done in violation of the Rules of Professional Conduct Rule 3.3(d) which says, "In an ex

parte proceeding, a lawyer shall inform the tribunal of all material facts known to the

lawyer that will enable the tribunal to make an informed decision, whether or not the

facts are adverse."  Esquenet had a legal and ethical obligation to inform the Court and

her clients about substantial defects in their claims that should have prevented the tax-

exempt entitles and their officers from participating in the abuse of process.

### SECOND CLAIM FOR RELIEF

**Abuse of Process – Defendants violated the laws by which they are organized**

112.    Fed R. Civ. P. Rule 11(b)(2) states a corporation can only sue or be sued "by the

law under which it was organized."

113.    Sharp abused regularly issued legal process and acted in violation of Fed R. Civ.

P. Rule 11(b)(2) and New York Not-For-Profit Law when he failed to follow state and

federal laws that govern tax-exempt entities and their officers.  Sharp's violation of rule

11 and abuse of process should have disqualified NATAS as a plaintiff, but Sharp chose

to do this in service of his ulterior purpose with intent to harm Goodman.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF
PROCESS AND MISCONDUCT BY ATTORNEYS - 28

114.     Sharp violated the laws by which tax-exempt corporations are governed and was personally inured by abusing the regular legal process to sue Goodman's Corporation in pursuit of his own personal, political, and financial goals.

115.     Defendants ignored warnings about vexatious outside interference, ignored Goodman's settlement offer, failed to hold a board meeting to weigh these options and chose to sue a corporation without excuse or reason aside from the ulterior motive to harm Goodman, this violated laws by which the tax-exempt entities are organized.

116.     Each trustee and employee is legally bound by New York Not-For-Profit Law to ensure that they only act in the financial best interest of the tax-exempt entity. Defendants will fail to prove refusal of Goodman's no-cost, pre-action settlement offer was in their tax-exempt corporations' best financial interest.  The action was a malicious abuse of process intended to harm plaintiff and inure Sharp and Esquenet in violation of New York Not-For-Profit Corporation Law.

### THIRD CLAIM FOR RELIEF

### New York Judiciary Law - JUD § 487 – Misconduct by attorneys

117.     New York Judiciary Law - JUD § 487 defines misconduct by attorneys.  New York Case law recognizes this cause of action almost exclusively for Plaintiff's seeking to redress their own attorneys misdeeds, but the law refers to "An attorney or counselor who [is] guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" finding that attorney "guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 29

---

**Deleted:** MSD for an ulterior motive and

**Deleted:** When defendants

**Deleted:** no cost

**Deleted:** the option

**Deleted:** MSD

**Deleted:** they

**Deleted:** the

**Deleted:** their

**Deleted:** corporate entities

**Deleted:** are

**Deleted:** to test

**Deleted:** 26 U.S. Code § 501(c)(6).

**Deleted:** .

**Deleted:** precedent

**Deleted:** :"

**Deleted:** "

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black

118.    The meaningful parties being deceived in this instance are the Court, the tax-exempt NATAS and ATAS, and U.S. taxpayers who subsidize the activities of all non-profit corporations with their hard-earned tax dollars.  Through this deceit, harm has come to Goodman.  It has financially damaged Goodman causing expenses incurred in paying legal fees for his corporation and has degraded his ability to broadcast and earn a living by causing deliberate permanent, seemingly irreversible damage to his personal property, the Jason Goodman YouTube channel.  Defendant's harmful malicious acts have damaged Goodman's public reputation and subjected him to sanctions further limiting his rights to access the Courts.

119.    In this case, plaintiff is the party most grievously injured by defendants' collusion and deceit.  Goodman seeks treble damages in this action both for the legal and other expenses he has borne and the loss of business and reputation due to defendants' acts.

120.    Esquenet deceived the Court when she declared Sharp's privately-owned for-profit LLC was inactive.  This was said in furtherance of a conspiracy to hide Sharp's ulterior political motive, to unjustly enrich Sharp and Esquenet and conceal their malicious intent.  Esquenet would know it could be fatal to her case if the Court learned the CEO of tax-exempt NATAS had a politically partisan, for-profit LLC that might be motivating improper decisions.  Esquenet deceived the Court in her effort to maliciously and intentionally harm Goodman personally by wrongfully suing his corporation in violation of 47 U.S. Code § 230 and lying about the true motive in violation of NYCL – JUD § 487.

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 30

Deleted: and
Deleted: .
Deleted: wholly owned
Deleted: .  It has
Deleted: said on the record that
Deleted: company
Deleted: Esquenet
Deleted: this
Deleted: her collusion with Sharp
Deleted: his
Deleted:
Deleted: disguise
Deleted: knew that
Deleted: the
Deleted: consulting firm
Deleted: help
Deleted: PROPOSED
Formatted: Pleading title
Formatted: Font: 12 pt, Font color: Black
Formatted: Font: 12 pt, Font color: Black

121.    Esquenet engaged in a pattern and practice of deceiving the court with the deliberate intention of harming Goodman.

**PRAYER FOR RELEIF**

Plaintiff requests that this Court enter judgment in his favor on each claim for relief set forth above and award him relief including, but not limited to, the following:

A. An Order declaring that defendant abused civil process by suing a provider of interactive computer services for information published by another provider, Goodman, and vacating all sanctions and judgements resulting from the abuse.

B. An Order demanding the Defendants compensate Plaintiff for special damages attributed to the abuse of process including but not limited to legal fees incurred by Goodman (not less than $180,000) and additional remuneration for loss of business that resulted from defendants' malicious abuse of process.

C. An Order declaring false statements by Margaret Esquenet made to the court during litigation violated NYCL - JUD § 487 and awarding Plaintiff treble damages for legal fees, loss of recurring revenue from monthly subscribers, loss of business opportunities, damage to reputation and any other relief the Court deems appropriate.

D. An Order referring these allegations to the IRS for an immediate investigation of Defendants for violating IRC 501(c)(6) and other state and federal laws.

E. Any further relief as the Court may deem just and appropriate.

**CONCLUSION**

For the reasons set forth herein, pro se plaintiff Goodman respectfully requests the Court issue an order finding Defendants engaged in unjust enrichment and abuse of process at the expense of

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 31



Goodman, in violation of New York Not-For-Profit Law, NYCL JUD § 487 and for the other reasons set forth herein and for any other reasons the Court deems appropriate.

Signed this 14th day of April 2022

Respectfully submitted,

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

PROPOSED THIRD AMENDED COMPLAINT FOR UNJUST ENRICHMENT, ABUSE OF PROCESS AND MISCONDUCT BY ATTORNEYS - 32

**Deleted:** 27th

**Deleted:** February

**Deleted:** PROPOSED

**Formatted:** Pleading title

**Formatted:** Font: 12 pt, Font color: Black

**Formatted:** Font: 12 pt, Font color: Black